**No. 02-1041 T**
Consolidated with 04-1598 T
(Judge Eric G. Bruggink)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

LYMAN F. BUSH, *et al.*,

PLAINTIFFS

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT WITH RESPECT TO HIS MOTION FOR SUMMARY JUDGMENT**

---

THOMAS E. REDDING, Lead Attorney
SALLIE W. GLADNEY
TERESA J. WOMACK
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Lyman F. Bush and Lyman F. Bush,
Personal Representative for the Estate of
Beverly J. Bush

# TABLE OF CONTENTS


Table of Authorities . . . . . . . . . . iii

Motion for Summary Judgment . . . . . . . . . . 1

Statement of Questions Involved . . . . . . . . . . 2

Argument . . . . . . . . . . 4

1. General Principles of Contract Law Control Interpretation of the Closing Agreement . . . . . . . . . . 4

2. The Closing Agreements are Unambiguous . . . . . . . . . . 4

3. An Introduction to TEFRA's Partnership/Nonpartnership Item Structure . . . . . . . . . . 7

   a. "Partnership Item" and "Nonpartnership Item" are Terms of Art Defined by Statute . . . . . . . . . . 9

   b. Adjustments to Partnership Items are Controlled by Subchapter C . . . . . . . . . . 12

   c. Adjustments to Nonpartnership Items are Controlled by Subchapter B . . . . . . . . . . 12

4. The Closing Agreements Contained No Waiver of §6230(a)(2)(A)(i) . . . . . . . . . . 14

5. The Tax Deficiencies Could Not be Assessed as a Computational Adjustment . . . . . . . . . . 17

Conclusion . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

*Barlow v. Commissioner*,
301 F.3d 714 (6th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Barton v. Commissioner*,
97 T.C. 548 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Buesing v. United States*,
47 Fed. Cl. 621 (Fed. Cl. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Callaway v. Commissioner*,
231 F.3d 106 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Cinema '84 v. Commissioner*,
294 F.3d 432 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

*Cinema '84 v. Commissioner*,
412 F.3d 366 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cinema '85 v. Commissioner*,
T.C. Memo. 1998-213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cmty. Heating & Plumbing Co. v. Kelso,*
987 F.2d 1575 (Fed.Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Conway v. United States*,
50 Fed.Cl. 273 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dial U.S.A., Inc., v. Commissioner*,
95 T.C. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Field v. United States*,
381 F.3d 109 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*First Blood Associates v. Commissioner*,
T.C. Memo. 1998-228 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*First Blood Associates v. Commissioner*,
T.C. Memo. 1998-138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Foley Co. v. United States,*
11 F.3d 1032 (Fed.Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gingerich, et. al. v. United States*,
2003 WL 22854662, **4,
92 A.F.T.R.2d 2003-7224 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Greenberg Bros. Partnership #12 v. Commissioner*,
T.C. Memo. 1998-198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2



R:\DOCS\TAXCONT.T\TGWMD106.BU1.wpd

*Greenberg Bros. Partnership #12 v. Commissioner*,
T.C. Memo. 1998-146 . . . . . . . . . . 2

*Greenberg Brothers Partnership #4 v. Commissioner*,
111 T.C. 198 (1998) . . . . . . . . . . 2, 11

*Hambrose Leasing v. Commissioner,*
99 T.C. 298 (1992) . . . . . . . . . . 6, 11

*Maxwell v. Commissioner*,
87 T.C. 783 (1986) . . . . . . . . . . 7, 8, 13

*Monahan v. Commissioner*,
321 F.3d 1063 (11th Cir. 2003) . . . . . . . . . . 10

*N.C.F. Energy Partners v. Commissioner,*
89 T.C. 741 (1987) . . . . . . . . . . 6, 10, 11

*NVT Technologies., Inc. v. United States,*
370 F.3d 1153 (Fed.Cir.2004) . . . . . . . . . . 4

*Olson v. United States*,
172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . 9-10

*Olson v. United States*,
37 Fed.Cl. 727 (1997) . . . . . . . . . . 8, 10, 12, 14

*Parma v. United States*,
45 Fed.Cl. 124 (1999) . . . . . . . . . . 8

*Robbins Tire & Rubber Co. v. Commissioner,*
52 T.C. 420 (1969) . . . . . . . . . . 4

*Roberts v. Commissioner*,
94 T.C. 853 (1990) . . . . . . . . . . 6, 10, 11

*Treaty Pines Invs. P'ship v. Commissioner*,
967 F.2d 206 (5th Cir.1992) . . . . . . . . . . 4, 8

*Univ. Heights at Hamilton Corp v. Commissioner*,
97 T.C. 278 (1991) . . . . . . . . . . 10

*Woody v. Commissioner*,
95 T.C. 193 (1990) . . . . . . . . . . 9

**STATUTES**

26 U.S.C. §213 . . . . . 10, 13
26 U.S.C. §465 . . . . . 5, 6, 11, 13, 17
26 U.S.C. §6031 . . . . . 7
26 U.S.C. §6212 . . . . . 1, 3, 11-16, 18
26 U.S.C. §6213 . . . . . 1, 3, 11-16, 18
26 U.S.C. §6222 . . . . . 7
26 U.S.C. §6223 . . . . . 7
26 U.S.C. §6224(b) . . . . . 14, 15
26 U.S.C. §6224(c) . . . . . 14-15
26 U.S.C. §6225(a) . . . . . 14, 16
26 U.S.C. §6226 . . . . . 3, 8, 12, 16
26 U.S.C. §6229(f) . . . . . 1
26 U.S.C. §6230(a)(1) . . . . . 10, 13
26 U.S.C. §6230(a)(2)(A)(i) . . . . . 3, 11-14, 16, 18
26 U.S.C. §6231(a)(3) . . . . . 9
26 U.S.C. §6231(a)(4) . . . . . 9, 11
26 U.S.C. §6231(a)(5) . . . . . 9, 11
26 U.S.C. §6231(a)(7) . . . . . 7
26 U.S.C. §6402(a) . . . . . 17
26 U.S.C. §6404 . . . . . 1
26 U.S.C. §6601(f) . . . . . 17
26 U.S.C. §6621(c) . . . . . 13
26 U.S.C. §6651(a)(1) . . . . . 10
26 U.S.C. §701 . . . . . 7
26 U.S.C. §702 . . . . . 7

## RULES AND REGULATIONS

Rules of the United States Court of Federal Claims, Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Temporary Proced. & Admin. Regs.,
52 Fed.Reg. 6790 (Mar. 5, 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

Treas. Reg. §1.6031-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Treas. Reg. §1.701-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Treas. Reg. §1.702-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Treas. Reg. §301.6231(a)(3)- 1(a)(1)(vi)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Treas. Reg. §301.6231(a)(3)-1(a)(1)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Treas. Reg. §301.6231(a)(5)-1T(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Treas. Reg. §301.6231(a)(5)-IT(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

## MOTION FOR SUMMARY JUDGMENT

Pursuant to RCFC 56, Plaintiffs Lyman F. Bush ("Bush") and Beverly J. Bush, deceased, here represented by Lyman F. Bush as Personal Representative for the Estate of Beverly J. Bush (together "the Bushes") move for summary judgment because the Internal Revenue Service ("IRS") failed to issue a statutory notice of deficiency, as required by §§6212 and 6213(a),[1] before it assessed against them for tax years 1985, 1986, and 1987 based on adjustments to Bush's nonpartnership items. Those assessments were, therefore, invalid and their payments must be refunded.

The Bushes believe that the uncontested facts and established legal precedent are sufficient to support this motion for summary judgment. But if the Court does not agree, then it must address the following fact intensive issues:

- Whether the IRS assessed more than one year after the settlement became effective such that the assessments were untimely under §6229(f);
- Whether the IRS breached the terms of its agreement with the Bushes when it failed to properly apply or refund the amounts requested by the Bushes pursuant to paragraphs 7 and 8 of the Form 906 Closing Agreement; and
- Whether the IRS improperly failed, pursuant to §6404, to abate interest accrued due to errors or delays by IRS personnel.

These and any other grounds for recovery by the Bushes in the complaint are not addressed in this preliminary motion and will remain for discovery and possible trial should this Court not grant this motion.

---

[1] Unless otherwise indicated all references to section, §, IRC, and the Code are to the Internal Revenue Code at 26 U.S.C.

## STATEMENT OF QUESTIONS INVOLVED

The Bushes settled with the IRS regarding Bush's investment in the Cinema '84 partnership ("Cinema '84") and Greenberg Brothers Partnership #12, a.k.a. Lone Wolf McQuade Associates ("LWM"). This federal income tax refund case addresses whether, as a matter of law, the IRS was required to issue a statutory notice of deficiency before it assessed tax liabilities against the Bushes related to those settlements. The resolution of this motion involves complex TEFRA[2] partnership procedural issues.

## STATEMENT OF THE CASE AND SUMMARY OF ARGUMENT

Lyman F. Bush was a limited partner in LWM for tax years 1983 through 1995, inclusive, and a limited partner in Cinema '84 for tax years 1984 to 1995, inclusive. [Exh:4,5,10,11][3] LWM and Cinema '84 were both part of the Greenberg Brothers partnership group, all of which were subject to the TEFRA partnership provisions.[4] The IRS proposed to adjust the partnership items of LWM and Cinema '84 and issued separate Notices of Final Partnership Administrative Adjustment ("FPAAs") for LWM's partnership tax years 1983 through 1986, inclusive, and for Cinema '84's partership tax years 1984 through 1989, inclusive. [Exh:6,7] The then-tax matters partner ("TMP") for both LWM

---

2 Partnership procedures codified at 26 U.S.C. §§6221-6233, as enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 ("TEFRA"), and as thereafter amended.

3 References to [Exh:x] are to Exhibit "x" attached to the Plaintiffs' Statement of Uncontroverted Facts, filed simultaneously with this motion. For a complete fact statement, see Plaintiffs' Statement of Uncontroverted Facts.

4 See *Cinema '84 v. Commissioner*, 294 F.3d 432 (2nd Cir. 2002); *Cinema '84 v. Commissioner*, 412 F.3d 366 (2nd Cir. 2005); *Greenberg Brothers Partnership #4 v. Commissioner*, 111 T.C. 198 (1998); *First Blood Associates v. Commissioner*, T.C. Memo. 1998-228; *Cinema '85 v. Commissioner*, T.C. Memo. 1998-213; *Greenberg Bros. Partnership #12 v. Commissioner*, T.C. Memo. 1998-198; *Greenberg Bros. Partnership #12 v. Commissioner*, T.C. Memo. 1998-146; *First Blood Associates v. Commissioner*, T.C. Memo. 1998-138.

and Cinema '84 filed separate §6226 partnership-level petitions in the Tax Court challenging the IRS's proposed adjustments. [Exh:6-9]

While those cases were pending, on August 7, 1999, the Bushes settled with the IRS, on separate Forms 906 Closing Agreements ("the Closing Agreements"), all of their LWM and Cinema '84 issues through 1995, including (i) the partnership items then before the Tax Court, (ii) the nonpartnership items over which the Tax Court did not have jurisdiction in the TEFRA partnership-level cases, and (iii) partnership items and nonpartnership items for tax years through 1995 not then before the Tax Court. [Exh:10, 11]

The Closing Agreements stated that there would be "no adjustment" to Bush's partnership items for tax years 1983 through 1995 for LWM and tax years 1984 to 1995 for Cinema '84. [Exh:10 ¶1, 11 ¶1] Based on the Closing Agreements, the IRS assessed tax and interest against the Bushes for tax years 1985, 1986, and 1987. Before it assessed, the IRS did not issue any 90-day statutory notice of deficiency (referred to interchangeably as a "90-Day Letter," a "Notice of Deficiency," and a "Stat Notice"), as defined for purposes of §§6212 and 6213(a).

If the assessments were attributable to partnership item adjustments then the IRS was not required to issue a 90-Day Letter before it assessed. However, the assessments were attributable to nonpartnership item adjustments and §§6230(a)(2)(A)(i), 6212 and 6213(a) require that the IRS issue a 90-Day Letter before it can validly assess. The Closing Agreements unambiguously stated that "[n]o adjustment to the partnership items shall be made for the taxable years 1983 [for LWM and 1984 for Cinema '84] through 1995" but that Bush's at-risk amount, a nonpartnership item, would be specifically adjusted. *Ergo*, there were no adjustments to Bush's partnership items and the adjustments that gave rise to the assessments were adjustments to nonpartnership items. The IRS failed to issue 90-Day Letters as required by §§6230(a)(2)(A)(i), 6212 and 6213(a). The assessments were, therefore, invalid

and the Bushes' overpayments must be refunded.

## ARGUMENT

### 1. General Principles of Contract Law Control Interpretation of the Closing Agreement

Tax settlements are contracts governed by general principles of contract law.[5] Accordingly, the familiar maxims of contract interpretation apply when interpreting the Closing Agreement.

Contract interpretation begins with the plain language of the written agreement.[6] As with all contracts, whether a provision in a tax settlement agreement is ambiguous is a question of law.[7] If the language of the agreement is unambiguous, extrinsic evidence is not considered and will not be admitted to expand, vary, or explain the terms of the written agreement and the meaning of the agreement will be determined from the terms encompassed within the proverbial four corners of the agreement.[8]

### 2. The Closing Agreements are Unambiguous

The Closing Agreements unambiguously state:

> NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that:
>
> 1. **No adjustment to the partnership items shall be made for the taxable years 1983 [for LWN and 1984 for Cinema' 84] through 1995 for purposes of this settlement**.

---

5 *See Treaty Pines Invs. P'ship v. Commissioner*, 967 F.2d 206, 211 (5th Cir.1992); *Gingerich, et. al. v. United States*, 2003 WL 22854662, **4, 92 A.F.T.R.2d 2003-7224 (Fed. Cir. 2003); *Buesing v. United States*, 47 Fed. Cl. 621 (Fed. Cl. 2000) ("*Buesing II*").

6 *Foley Co. v. United States,* 11 F.3d 1032, 1034 (Fed.Cir.1993).

7 *NVT Technologies., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed.Cir.2004) (*citing Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir.1993)).

8 *Buesing II* at 630, *citing Robbins Tire & Rubber Co. v. Commissioner,* 52 T.C. 420, 435-436 (1969).

2. The taxpayers are entitled to claim their distributive share of the partnership losses for 1983 [for LWM and 1984 for Cinema '84] through 1995 only to the extent they are at risk under I.R.C. § 465.

3. The taxpayers' amount at risk for 1983 through 1986 [for LWM and 1984 through 1989 for Cinema '84] is their capital contribution to the partnership.

. . . .

6. The taxpayers are not at risk under I.R.C. § 465 for any partnership notes, entered into by the partnership to acquire rights in the motion pictures Lone Wolf McQuade and Strange Invaders [for LWM and Terminator, Perfect Strangers, Special Effects, Return of the Living Dead, A Breed Apart and Howling II for Cinema '84], whether or not assumed by the taxpayers. Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used to offset the taxpayers' pro rata share of any income earned by the partnership and/or other income in accordance with the operation of I.R.C. § 465.

7. To the extent the taxpayers make additional cash contributions to the capital of the partnership after 1986 [for LWM and 1989 for Cinema '84], the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.

8. To the extent the partnership earns net income the taxpayers' at risk will be increased in accordance with I.R.C. § 465.

9. **To the extent the taxpayers make cash payments on the partnership notes after the date of execution of this agreement by the Commissioner and the taxpayers, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.**

. . . .

This agreement is final and conclusive except:

(1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

(2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions notwithstanding any other law or rule of law except Code Section 7122; and

(3) if it relates to a taxable period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

[Exh:10-11] Emphasis added.

Section 465 provides, as stated in paragraph 2 of the Closing Agreements, that despite a partner's distributive share of the partnership items, including partnership deductions, he can only claim deductions on his personal tax return to the extent he is "at-risk." Here the Closing Agreements are unambiguous, the parties agreed that there would be no adjustments to partnership items. They agreed instead that Bush's amount at risk would be determined by a complex formula including his cash investment [¶2], additional capital contributions made after 1986 for LWM and 1989 for Cinema '84 [¶7], and other adjustments as prescribed under §465 [¶8], but exclusive of any portion of the partnership notes [¶6], whether or not Bush assumed any personal liability, except to the extent of any actual payments by Bush on those notes [¶¶6 and 9] (**which payments cannot be determined at the partnership level**). Paragraphs 6 and 9 are an agreed modification to §465 which would normally include in the "at-risk" computation any portion of the partnership notes assumed by the partner, not just payments made on the notes. As a consequence of the agreement as to Bush's amount at-risk, a portion of his original deductions would be disallowed to the extent that he was not at-risk in that tax year and deferred until his amount at-risk increased. This is generally referred to as an "at-risk settlement."

The only adjustments agreed to in the Closing Agreements were to Bush's amounts at risk under §465. Under TEFRA, it is well settled that a §465 at-risk adjustment is an adjustment to *non*partnership items.[9] Therefore, it is unambiguous that Bush's settlements gave rise to tax deficiencies based on adjustments to *non*partnership items. The agreed formula for computing Bush's amount at-risk makes

---

[9] *Roberts v. Commissioner*, 94 T.C. 853, 861 (1990); *N.C.F. Energy Partners v. Commissioner,* 89 T.C. 741, 743-745 (1987); *Hambrose Leasing v. Commissioner,* 99 T.C. 298, 312 (1992); Treas. Reg. §301.6231(a)(5)-IT(c), Temporary Proced. & Admin. Regs., 52 Fed.Reg. 6790 (Mar. 5, 1987).

clear that it could not be determined at the partnership level, from the partnership's records, or based solely on statutorily defined "partnership items."

An understanding of the bifurcation of "partnership items" and "nonpartnership items" under TEFRA is central to the issues in this case.

**3. <u>An Introduction to TEFRA's Partnership/Nonpartnership Item Structure</u>**

Partnerships generally do not pay tax.[10] They file information returns.[11] The partner's current share of partnership income, gains, losses, deductions, *etc*., are reported and recognized on their individual returns.[12]

Prior to 1982, to adjust an item on a partnership return the IRS had to examine each partner's individual return and could not ensure consistent adjustments among partners. In response, Congress enacted TEFRA (*a.k.a.* subchapter C of the IRC), which established new partnership audit and adjustment procedures.[13]

Under TEFRA, partners generally must report their "partnership items" consistently with the partnership[14] or face penalties if they do not.[15]

Under TEFRA, if the IRS wants to adjust any partnership item it must issue an FPAA.[16] Judicial review at the partnership level is restricted to "partnership items," the adjustments to partnership items

---

10 §701; Treas. Reg. §1.701-1. *Conway v. United States*, 50 Fed.Cl. 273, 276 (2001).

11 §6031; Treas. Reg. §1.6031-1. *Conway*, at 276.

12 §§701, 702; Treas. Reg. §1.702-1(a).*Conway*, at 276.

13 *Conway*, at 276; *Maxwell v. Commissioner*, 87 T.C. 783, 787 (1986).

14 §6222.

15 §6222(d).

16 §§6223(a) and (d)(2); §6231(a)(7).

under the FPAA, and partnership item allocation among the partners.[17] Once the partnership-level determinations are concluded under the TEFRA procedures of subchapter C – either by settlement as to an individual partner (as in this case) or by decision (as to all partners who did not previously settle) – then any *non*partnership items are addressed in separate partner-level deficiency proceedings under the subchapter B procedures.[18]

There are four ways that a taxpayer can settle his partnership items with the IRS:

(i) if his partnership items for that tax year are pending before the Tax Court, then they can settle those partnership items, and only those partnership items, by letters of offer and acceptance between the taxpayer, or his counsel, and the IRS's attorney of record in the Tax Court case,[19]

(ii) they could settle his partnership items, but only his partnership items, on a separate Form 870-P(AD) for each tax year,[20]

(iii) they could settle his partnership items *and* his nonpartnership items on a separate Form 870-L(AD) for each tax year,[21] or

(iv) they could settle all partnership items and nonpartnership items, regardless of how many tax years, on a single Form 906 Closing Agreement.

Here the IRS chose to settle all of Bush's LWM and Cinema '84 partnership items and nonpartnership items for tax years 1983 through 1995, as applicable, on a single Form 906 Closing

---

17 §§6226(a) and (f).

18 *Maxwell* at 788; *Callaway v. Commissioner*, 231 F.3d 106, 108 (2nd Cir. 2000).

19 *Treaty Pines, supra.*

20 *Parma v. United States*, 45 Fed.Cl. 124, 126 (1999).

21 *Olson v. United States*, 37 Fed.Cl. 727, 729 (1997).

Agreement for each partnership.

**a. "Partnership Item" and "Nonpartnership Item" are Terms of Art Defined by Statute**

Under TEFRA, "partnership item" is specifically defined by Congress in §6231(a)(3):[22]

> (3) PARTNERSHIP ITEM.—The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, [subtitle F] such item is more appropriately determined at the partnership level than at the partner level.

"Nonpartnership item" is likewise defined by Congress in §6231(a)(4):

> (4) NONPARTNERSHIP ITEM.—The term "partnership item" means an item which is (or is treated as) not a partnership item.

In general, there are two types of nonpartnership items: pure nonpartnership items and "affected items." Pure nonpartnership items are items such as a partner's rental income from property unrelated to the partnership. Adjustments to partnership items do not alter pure nonpartnership items and they are not relevant to this particular case. But "affected items" are.

"Affected items" are defined by Congress at §6231(a)(5):

> (5) AFFECTED ITEM.—The term "affected item" means any item to the extent such item is affected by a partnership item.

In turn, there are two types of affected items.[23] The first are "computational affected items" that require only a mathematical computation to determine the change in the affected item and the change in a partner's tax liability resulting from the proper treatment of partnership items once the partnership

---

22 See also Treas. Reg. §301.6231(a)(3)-1(a)(1)(i).

23 *See Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999) *citing Woody v. Commissioner*, 95 T.C. 193, 202 (1990).

proceeding is complete.[24] Examples include carryovers,[25] the threshold for deduction of medical expenses under §213, and alternative minimum tax ("AMT").[26] A change to a partner's adjusted gross income due to partnership item adjustments causes a mechanical change in the §213 threshold and/or AMT that can be computed mathematically without further determinations at the partner level.

The second type of affected items are referred to as "substantive affected items."[27] Liabilities arising from substantive affected items cannot be assessed automatically because they require additional fact determinations that can only be made at the partner level once the partnership-level proceeding is concluded.[28] Examples include "at risk," basis, and certain penalties.[29]

Tax arising from adjustments to purely computational affected items can be assessed without further notice at the conclusion of the partnership level proceedings or settlement of the partner's partnership items.[30] But the IRS must follow the subchapter B deficiency procedures and issue a 90-

---

[24] *See Olson*, 172 F.3d at 1317.

[25] *See Olson*, 172 F.3d at 1318.

[26] *See* Treas. Reg. §301.6231(a)(5)-1T(a).

[27] *Olson*, 37 Fed. Cl. at 732.

[28] *See Olson*, 172 F.3d at 1317-8, *citing N.C.F. Energy* at 744.

[29] *Roberts*, at 861 ("At risk" was a substantive affected item because the amount at risk depended on the operation of third party side agreements more appropriately determined at the partner level.); *Dial U.S.A., Inc., v. Commissioner*, 95 T.C. 1, 5-6 (1990) (Basis is not a partnership item because it is not required to be taken into account for the taxable year under subtitle A); *Univ. Heights at Hamilton Corp v. Commissioner*, 97 T.C. 278, 281-282 (1991) (Basis is a substantive affected item because a partner's basis is partially comprised of partnership items, such as debt.); *N.C.F. Energy* at 745-746 (Interest and penalties are "affected items" that relate to partnership items but must be determined at the individual level.); *Monahan v. Commissioner*, 321 F.3d 1063, 1066 (11th Cir. 2003) (§6651(a)(1) late filing penalty and §6653(a)(1) and (2) negligence penalties are affected items requiring an "affected item notice of deficiency.").

[30] §6230(a)(1).

Day Letter before assessing based on substantive affected items.[31]

It is well settled generally that a partner's amount at-risk under §465 is a nonpartnership, substantive affected item requiring factual determinations to be made at the partner level.[32] The Tax Court and Second Circuit specifically recognize that the amount at risk with respect to Cinema '84 is a nonpartnership, substantive affect item.[33]

---

31 §6230(a)(2)(A)(i), §6212, and §6213(a).

32 *Roberts* at 861; *N.C.F. Energy Partners, supra.*; *Hambrose Leasing* at 312; Treas. Reg. §301.6231(a)(5)-IT(c), Temporary Proced. & Admin. Regs., 52 Fed.Reg. 6790 (Mar. 5, 1987).

33 *Cinema '84*, 294 F.3d at 436. See also the related case of *Greenberg Bros. #4*, 111 T.C. at 201-202:

> A nonpartnership item is "an item which is (or is treated as) not a partnership item." Sec. 6231(a)(4). An "affected item" is "any item to the extent such item is affected by a partnership item." Sec. 6231(a)(5); see also *N.C.F. Energy Partners v. Commissioner,* 89 T.C. 741, 743-745, 1987 WL 45298 (1987); sec. 301.6231(a)(5)-IT(a), Temporary Proced. & Admin. Regs., 52 Fed.Reg. 6790 (Mar. 5, 1987). [FN6] The determination of a partner's amount at risk with respect to partnership liabilities personally assumed is an affected item. *Hambrose Leasing v. Commissioner,* 99 T.C. 298, 312, 1992 WL 210580 (1992); sec. 301.6231(a)(5)-IT(c), Temporary Proced. & Admin. Regs., 52 Fed.Reg. 6790 (Mar. 5, 1987). While there are partnership item components to the at risk calculation that affect that determination at the partner level, the determination of amounts at risk by individual partners is not a partnership item. *Hambrose Leasing v. Commissioner, supra* at 309-312; §301.6231(a)(3)- 1(a)(1)(vi)(C), Proced. & Admin. Regs. It follows, therefore, that the determinations of the amounts at risk with respect to partnership liabilities are also " nonpartnership items" within the meaning of section 6231(a)(4). Accordingly, for purposes here we refer to paragraph one of the original settlement agreement as the settlement of the partnership items provision and the remaining paragraphs referring to "at risk" as nonpartnership items settlement provisions.
>
> > [FN6] There are two types of affected items: (1) Those requiring factual determinations to be made at the partner level, and (2) a computational adjustment made to record the change in a partner's tax liability resulting from the proper treatment of partnership items. *N.C.F. Energy Partners v. Commissioner,* 89 T.C. 741, 744, 1987 WL 45298 (1987).
>
> Other footnotes omitted.

**b. Adjustments to Partnership Items are Controlled by Subchapter C**

Once the adjustments to a partner's partnership items are determined, either by settlement as to him or by a §6226 partnership-level decision in the Tax Court as to all unsettled partners, then the IRS may assess any tax deficiency resulting from those partnership item adjustments without further notice to the partner.[34] The IRS is not required to send the partner a 90-Day Letter or give the partner any other pre-payment forum to contest the adjustments to his partnership items.[35]

**c. Adjustments to Nonpartnership Items are Controlled by Subchapter B**

In non-TEFRA cases, and as to substantive affected items in TEFRA cases, the provisions at subchapter B require the IRS to issue a 90-Day Letter before it can assess additional tax.[36] A 90-Day Letter gives taxpayers a pre-payment right to challenge proposed adjustments in the Tax Court.[37]

Assessments based on adjustments to substantive affected items are specifically controlled by the procedures of subchapter B, including the requirements under §§6212 and 6213(a) that a 90-Day Letter be issued before assessment.[38] For the years in issue §6230(a)(2)(A)(i) expressly states:

> (a) COORDINATION WITH DEFICIENCY PROCEEDINGS.—
>
> . . . .
>
> (2) DEFICIENCY PROCEEDINGS APPLY IN CERTAIN CASES.—
>
> (A) Subchapter B shall apply to any deficiency attributable to—
>
> (i) affected items which require partner level determinations, ....

---

34 *Olson*, 37 Fed. Cl. at 732.

35 *Olson*, 37 Fed. Cl. at 732.

36 §6212.

37 §6213.

38 *Olson*, 37 Fed. Cl. at 732. ("Tax adjustments involving 'partnership items' require no [§§6212/6213(a)] notice of deficiency; those involving 'non-partnership items' do.").

There are only two exceptions to the §§6212/6213(a) requirement that a 90-Day Letter be issued prior to assessing based on adjustments to nonpartnership items: (i) if the adjustment is a computational affected item, *i.e.* if it is merely a computational adjustment requiring no partner-level determinations made to record the change in a partner's tax liability resulting from the adjustment of partnership items[39] then, under §6230(a)(1), the subchapter B procedures do not apply,[40] and (ii) imposition of the former §6621(c) penalty rate of interest is recognized as an anomaly in the IRC for which no 90-Day Letter is required before assessment even though partner-level determinations may be required.[41]

Here, the parties agreed that there would be no adjustments to Bush's partnership items, but there would be adjustments to the amount he is at-risk and, therefore, to the deductions he was allowed under the §465 at-risk rules [a nonpartnership substantive affected item]. Any assessments made pursuant to the Closing Agreements were, therefore, attributable to adjustments to nonpartnership items and could not have been attributable to adjustments to partnership items. The assessments made against the Bushes do not fall within any exception to §6230(a)(2)(A)(i). In paragraph 13(a) on page 3 of its

---

[39] *Callaway* at 110 n.4 ("An example of an affected item that requires no further factual determination at the partner level would be a partner's medical expense deduction, pursuant to I.R.C. § 213(a). The allowable deduction is a function of the partner's adjusted gross income, which in turn depends on the partner's distributive share of the partnership income or loss. Determining the allowed deduction is a mathematical calculation and requires no further factual finding. *See generally Maxwell,* 87 T.C. at 792 n. 7.").

[40] For the years in issue, §6230(a)(1) states:

> (a) COORDINATION WITH DEFICIENCY PROCEEDINGS.—
>
> (1) IN GENERAL.—Except as provided in paragraph (2), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.

[41] The former §6621(c) "penalty rate of interest" is recognized as an anomaly because it is assessed as interest, not tax or a formal penalty and, therefore, the subchapter B 90-Day Letter procedures and prepayment rights do not apply. *Field v. United States*, 381 F.3d 109, 113 (2nd Cir. 2004), *citing Barlow v. Commissioner*, 301 F.3d 714, 722 (6th Cir.2002) and *Barton v. Commissioner*, 97 T.C. 548, 551 (1991).

Answer filed in docketed case 04-1598, the government concedes that the IRS failed to issue a subchapter B §§6212/6213(a) 90-Day Letter before it assessed based on the adjustments to Bush's nonpartnership items. Therefore, the assessments were invalid and the Bushes' payments must be refunded.

**4. The Closing Agreements Contained No Waiver of §6230(a)(2)(A)(i)**

This Court recognizes as a general law that "[w]ithout a valid waiver, the IRS [is] required under §6213(a) to issue a notice of deficiency to plaintiffs before assessing [a nonpartnership substantive affected item]."[42] Here, each Closing Agreement expressly states that "[t]his agreement is final and conclusive ...." [Exh:10-11] Nowhere do the Closing Agreements address any waiver of the §§6212/6213(a) restrictions on assessment and collection as applicable via §6230(a)(2)(A)(i).

The only waiver stated in the Closing Agreements is in paragraph 16:

> 16. This agreement constitutes a settlement within the meaning of I.R.C. §6224(c) and the taxpayers' partnership items are converted to non partnership items effective as of the date of this closing agreement is accepted on behalf of the Commissioner. **The taxpayers, in accordance with the provisions of I.R.C. §6224(b), also waive the restrictions on assessment and collection of any deficiencies attributable to the converted partnership items with interest as provided by law in I.R.C. §6225(a) that results from this agreement**.

[Exh:10-11] Emphasis added.

Section 6224(c)[43] authorizes the IRS to settle with partners as to their partnership items,[44]

---

[42] *Olson*, 37 Fed. Cl. at 737.

[43] For the tax years at issue §6224 states, in pertinent part:

**§6224. PARTICIPATION IN ADMINISTRATIVE PROCEEDINGS; WAIVERS; AGREEMENTS.**

. . . .

(b) PARTNER MAY WAIVE RIGHTS.—

(1) IN GENERAL.—

establishes that the agreed terms as to partnership item "shall ... be binding on all parties to such agreement,"[45] and requires that the IRS give "consistent" settlement terms to any other partner who properly requests them.[46] Here, this means that the IRS was authorized to settle with Bush on the terms that there would be "[n]o adjustment to [his] partnership items" for 1983 through 1995, as applicable, that the Closing Agreements are binding on both Bush and the IRS, and that the IRS was required to offer "consistent" settlement terms to any of Bush's partners who properly requested them.

Section 6224(b) allows a partner to waive any right he may have under subchapter C or any subchapter C restriction on actions by the IRS. In the Closing Agreements the parties could *not* have used §6224(b) to expressly waive the §§6212/6213(a) requirement of a 90-Day Letter before assessing

---

(A) any right such partner has **under this subchapter [C]**, and

(B) any restriction **under this subchapter [C]** on action by the Secretary.

(2) FORM.—Any waiver under paragraph (1) shall be made by a signed notice in writing filed with the Secretary.

(c) SETTLEMENT AGREEMENT.—In the absence of a showing of fraud, malfeasance, or misrepresentation of fact—

(1) BINDS ALL PARTIES.—A settlement agreement between the Secretary and 1 or more partners in a partnership **with respect to the determination of partnership items** for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of partnership items for such partnership taxable year. ...

(2) OTHER PARTNERS HAVE RIGHT TO ENTER INTO CONSISTENT AGREEMENTS.—If the Secretary enters into a settlement agreement with any partner **with respect to partnership items** for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement. ....

Emphasis added.

44 §6224(c).

45 §6224(c)(1).

46 §6224(c)(2).

deficiencies attributable to substantive affected items because §§6212 and 6213(a) are in subchapter B, not subchapter C.

The Closing Agreements included only a waiver of the restrictions on assessment under §6225(a).[47] Further the §6225(a) waiver referred only to the tax deficiencies "attributable to the converted partnership items." [Exh:10 ¶16, 11 ¶16] The Closing Agreements unambiguously stated that there would be no adjustments or changes to partnership items, therefore, there could be no deficiency "attributable to" changes to partnership items, whether those partnership items were converted or not. The tax deficiencies were solely attributable to the agreed changes to Bush's amount at-risk, a nonpartnership item.

The Closing Agreements were complex settlements addressing the tax years then before the Tax Court and numerous years not then before the Tax Court for each partnership. Thus, the restrictions under §6225(a)(1) applied to tax years not then before the Tax Court and the restrictions under §6225(a)(2) applied to the tax years then before the Tax Court relative to any deficiencies directly attributable to partnership items. The §6225(a) waiver in paragraph 16 has nothing to do with the §6230(a)(2)(A)(i) subchapter B restrictions on assessments arising from adjustments to substantive affected items such as the agreed adjustments to Bush's at-risk limits.

---

[47] For the tax years at issue §6225(a) states:

**§6225. ASSESSMENTS MADE ONLY AFTER PARTNERSHIP LEVEL PROCEEDINGS ARE COMPLETED**

(a) RESTRICTION ON ASSESSMENT AND COLLECTION.—Except as otherwise provided in this subchapter [C], **no assessment** of a deficiency **attributable to any partnership item** may be made ... before—

(1) the close of the 150th day after the day on which a notice of a final partnership administrative adjustment was mailed to the tax matters partner, and

(2) if a proceeding is begun in the Tax Court under section 6226 during such 150-day period, the decision of the court in such proceeding has become final.

**5. <u>The Tax Deficiencies Could Not be Assessed as a Computational Adjustment</u>**

Finally, the actual tax liability for any given year could not be determined and assessed without a further partner-level determination, because paragraph 15 of the Closing Agreements specifically provide:

> 15. Any refund claim attributable to the operation of this agreement shall be deemed to be timely filed and shall be allowed if it is filed with the IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue. Any refund claim so submitted pursuant to this paragraph within 120 days after the execution of this agreement on behalf of the Commissioner of Internal Revenue shall be allowed as an offset pursuant to I.R.C. §§6402(a) and 6601(f) against any tax deficiencies resulting from this agreement.

As a consequence, the IRS was obligated to consider any referenced refund claims of a partner filed within 120 days and allow them as an offset. Therefore, determining the net amount of tax to be assessed and the appropriate interest calculation required an intense partner-level review. The 120 day limit insured that the calculation could be done within the one year statute of limitations for issuance of the 90-day letter.

As discussed above, the IRS's breach of the Closing Agreements by failing to allow the claims the Bushes timely filed pursuant to paragraph 15 is an issue not directly addressed in this motion for summary judgment. But the fact that such a partner-level review was required and expressly addressed in the Closing Agreements confirms that a 90-day Letter was required.

## <u>CONCLUSION</u>

In the end this is a straightforward case of contract interpretation and statutory construction. The terms "partnership item" and "nonpartnership item" are defined by statute. The contract unambiguously states that there will be no adjustments to Bush's partnership items but that his amount at-risk under §465, a nonpartnership item, will be limited in a specified manner. Therefore, any assessments arising from the Bushes' settlements were attributable to nonpartnership item adjustments. The settlements did

not contain a waiver of the §6230(a)(2)(A)(i) requirement that assessments attributable to nonpartnership item adjustments must be made pursuant to the subchapter B procedural requirements for deficiencies. The IRS failed to issue any 90-Day Letters before it assessed pursuant to the Bushes' settlements as required by §§6212 and 6213(a) of subchapter B. Therefore, those assessments are invalid and the Bushes' payments of tax and all interest must be refunded.

WHEREFORE, Plaintiffs Lyman F. Bush and Beverly J. Bush, deceased, here represented by Lyman F. Bush as Personal Representative for the Estate of Beverly J. Bush, respectfully request that this Court grant this motion for summary judgment and render judgment in their favor and determine that they are entitled to refunds for tax years 1985, 1986, and 1987 because the IRS failed to issue notices of deficiency as required by §§6230(a)(2)(A)(i), 6212, and 6213(a) before it assessed against them based on adjustments to Bush's nonpartnership affected items.

Respectfully submitted,

December 29, 2006

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
Sallie W. Gladney
Teresa J. Womack
REDDING & ASSOCIATES, P.C.
P.O. Box 924328
Houston, Texas 77292-4328
(713) 965-9244
(713) 621-5227 Fax
Attorneys for Plaintiffs
Lyman F. Bush and Lyman F. Bush as
Personal Representative for the Estate of Beverly J. Bush