***No. 02-1041 T Consolidated No. 04-1598 T***
***(Judge Eric G. Bruggink)***

---

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

LYMAN F. BUSH, et al.,

Plaintiffs

v.

THE UNITED STATES,

Defendant

# MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
BENJAMIN C. KING, JR.
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

**Page**

## TABLE OF CONTENTS

Memorandum in Support of Defendant's Cross-Motion for Partial Summary Judgment . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. *Plaintiff's original returns* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. *Tax Court TEFRA proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. *The closing agreements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. *Closing Agreements paragraphs 1-4 (Relevant)* . . . . . . . . . . . . . . 6

2. *Closing Agreements paragraph 8 (Relevant)* . . . . . . . . . . . . . . . . . 7

3. *Closing Agreements paragraph 6 (Irrelevant)* . . . . . . . . . . . . . . . . 7

4. *Closing Agreements paragraph 7 (Irrelevant)* . . . . . . . . . . . . . . . . 8

5. *Closing Agreements paragraph 9 (Irrelevant)* . . . . . . . . . . . . . . . . 9

6. *Closing Agreements paragraph 15 (Irrelevant)* . . . . . . . . . . . . . . . 9

D. *The adjustments and claims for refund* . . . . . . . . . . . . . . . . . . . . 10

II. Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Attachments:

<u>Exhibit</u> <u>Description</u>

1. Plaintiffs' Individual Income Tax Return for the Period Ending December 31, 1985

2. Plaintiffs' Individual Income Tax Returns for the Period Ending December 31, 1986

3. Plaintiffs' Individual Income Tax Returns for the Period Ending December 31, 1987

4. IRS work papers related to the adjustments to plaintiffs' 1985 tax year resulting from the closing agreements.

5. IRS work papers related to the adjustments to plaintiffs' 1986 tax year resulting from the closing agreements.

6. IRS work papers related to the adjustments to plaintiffs' 1987 tax year resulting from the closing agreements.

7. IRS work papers related to the at-risk amount for Cinema 84.

8. IRS work papers related to the at-risk amount for LWM

## TABLE OF AUTHORITIES

**Cases:**

*Bob Hamrick Chevrolet v. United States, 849 F. Supp. 500 (W.D. Tex. 1994)* . . . . . . . . . . 15

*Cummings v. Commissioner*, T.C. Memo. 1996-282, 1996 WL 334418 (1996) . . . . . . . 14

*Dial USA, Inc. v. Commissioner, 95 T.C. 1 (1990)* . . . . . . . . . . 14

*Field v. United States*, 2002 WL 1300249 (S.D.N.Y. 2002) . . . . . . . . . . 15

*Hambrose Leasing v. Commissioner, 99 T.C. 298 (1992)* . . . . . . . . . . 14

*Harrris v. Commissioner, 99 T.C. 121 (1992)* . . . . . . . . . . 13

*Maxwell v. Commissioner, 87 T.C. 783 (1986)* . . . . . . . . . . 14

*N.F.C. Energy Partners v. Commissioner, 89 T.C. 741 (1987)* . . . . . . . . . . 14

*Olson v. United States, 172 F.3d 1311 (Fed.Cir. 1999)* . . . . . . . . . . 3, 12-17

*Powell v. Commissioner, 96 T.C. 707 (1991)* . . . . . . . . . . 12

*Roberts v. Commissioner*, 94 T.C. 853 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*University Heights at Hamilton Corp. v. Commissioner*, 95 T.C. 218 (1991) . . . . . . . . 14

**Statutes:**

Internal Revenue Codes of 1986 (26 U.S.C.):

§ 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 15, 17

§ 6213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

§ 6223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 12, 14, 15

§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§§ 6221-6234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

**Page**

**Miscellaneous:**

Treas. Reg. 301.6231(a)(6)-1T(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

52 FR 6679, 1987-1 C.B. 325, 1987 WL 860309 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1041, consolidated with,
No. 04-1598 T

(Judge Bruggink)

LYMAN F. BUSH, et al.,

Plaintiffs

v.

UNITED STATES,

Defendant

MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT

Defendant, the United States, has cross-moved for partial summary judgment. For the reasons set forth below, and based on the defendant's proposed findings of uncontroverted fact and plaintiffs' proposed findings of uncontroverted fact, and the parties' exhibits, the defendant respectfully submits that it is entitled to judgment as a matter of law, dismissing plaintiffs' claims based on their contention that the assessments of additional tax and interest at issue in 1985-1987 were invalid because no notice of deficiency was issued prior to those assessments.

INTRODUCTION

Plaintiffs' motion for partial summary judgment, and defendant's cross-motion for partial summary judgment, address plaintiffs' claims for refund for 1985-1987. The original returns for the years in issue were joint returns filed by Lyman F. Bush and Beverly J. Bush. (Dx. 1-3.) Subsequent to the years in issue, Beverly Bush died and on June 16, 1999, Lyman F. Bush was appointed executor of her estate. (Px. 16 at 167.) Hereinafter, defendant will use the term "Bush" to refer collectively to Lyman F. Bush individually, and in his capacity as executor of the estate of Beverly Bush.

On August 7, 1999, Bush entered into two closing agreements with the Internal Revenue Service to resolve all issues related to two partnerships in which he was a partner. (Px. 10, 11.) The two partnerships at issue in this motion were Lone Wolf McQuade Associates (hereinafter, "LWM") and Cinema 84. (Px. 10, 11.) Those partnerships were subject to the provisions of the Tax Equity and Financial Responsibility Act (hereinafter, "TEFRA"), 26 U.S.C. §§ 6221-6234.[1] Pursuant to the closing agreements the IRS computed the amount of additional tax and interest Bush owed for 1985-1987. (Px. 12-14.) Bush paid the tax and filed claims for refund.

In his claims for refund Bush does not dispute the accuracy of the IRS computations or that the application of his settlement agreements with the IRS resulted in the additional tax and interest he paid. Bush contends that he should be refunded the additional tax and interest he paid because the IRS did not properly assess that additional tax and interest. (P. Binding 16.) Bush contends that the IRS was required by § 6230(a)(2)(A)(i) to issue a notice of deficiency pursuant to § 6213 before assessing the additional tax resulting from his settlement agreements with the

---

[1]Citations to the Internal Revenue Code are to the provisions of the Code in effect during the years at issue in this case.

IRS.[2] Bush acknowledges, however, that the purpose of a 90-day letter is to give "taxpayers a pre-payment right to challenge proposed adjustments in the Tax Court." (P. Brief at 12.) Thus, in this case, a notice of deficiency would serve no purpose since Bush could not file a petition in the United States Tax Court to contest the deficiency, because he had already stipulated and agreed in the closing agreements that he owed the additional amounts of tax and interest resulting from the application of those agreements.

Moreover, § 6230(a)(2)(A)(i) does not apply in this case because no substantive factual determination at the partner level was required before the provisions of the closing agreements could be applied to Bush's 1985-1987 tax years. *Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999). Bush has not presented any evidence to establish that the IRS was required to make a partner-level factual determination in order to compute the amount of additional tax Bush owed. The only relevant partner-level fact needed for the IRS to compute the additional tax amounts at issue here was the amount for which Bush was at risk under § 465. That fact was resolved and stipulated to in paragraphs 2-4 of the closing agreements.[3] (Px. 10 at 149, Px. 11, at 152.) Since the IRS did not have to make any partner-level factual determination in order to apply the terms of the closing agreements to 1985-1987 by means of a computational adjustment, no notice of deficiency was required before the IRS could assess the agreed upon additional tax and interest owed for those years. § 6230(a)(i); *Olson*, 172 F.3d at 1318.

---

[2]Section 6230(a0(2)(A)(i) provides that Subchapter B deficiency procedures apply to deficiencies attributable to affected items that require substantive partner-level determinations.

[3]Bush's contention that the deficiencies could not be assessed without a partner-level factual determination is based solely on paragraph 15 of the closing agreements. (P. Brief at 17.) As discussed below, paragraph 15 is irrelevant.

I. FACTUAL BACKGROUND

A. *Plaintiff's original returns.*

Attached to each of Bush's original returns for 1985-1987 was a Schedule E, "Supplemental Income Schedule." For *1985*, the Schedule E reported losses from LWM in the amount of $33,442.00, and losses from Cinema 84 in the amount of $21,553.00. (D. Finding 1.) Those losses were reported as a negative entry on line 18 of Bush's 1985 Form 1040, reducing his adjusted gross income for that year. (D. Finding 1.) The schedule E attached to Bush's *1986* original return reported losses from LWM in the amount of $34,003.00 and losses from Cinema 84 in the amount of $20,079.00, which losses were reported as a negative entry on line 18 of Bush's 1986 return, reducing his adjusted gross income for that year. (D. Finding 2.) The schedule E attached to Bush's *1987* original return reported income from LWM in the amount of $398.00 and losses from Cinema 84 in the amount of $25,733.00 . (D. Finding 3.) The income and losses reported on Bush's 1987 Schedule E resulted in a net loss in the amount of $19,769.00, which was reported as a negative entry on line 18 of Bush's 1987 original return, reducing his adjusted gross income for that year. (D. Finding 3.)

B. *The Tax Court TEFRA proceedings.*

On July 8, 1991, the IRS, pursuant to § 6223(d), issued Notices of Final Partnership Administrative Adjustment (hereinafter, "FPAA") to LWM related to its 1983-1986 tax years. (Px. 6 at 24-55.) In the FPAAs the IRS proposed disallowing all the deductions reported on LWM's 1983-1986 partnership returns. (Px. 6 at 24-55.) The adjustments proposed by the IRS would have eliminated most, if not all, of Bush's distributive share of LWM's losses reported on the Schedule E attached to his 1985 and 1986 returns. (Dx. 1-3.) On October 7, 1991, LWM,

pursuant to § 6226(a), filed a petition in the United States Tax Court to contest the adjustments set out in the FPAA. (Px. 6.) On February 8, 1995, Bush, pursuant to § 6226(b), filed a notice of election to participate in the Tax Court proceeding involving LWM. (Px. 9 at 139.)

On October 15, 1991, the IRS, pursuant to § 6223(d), issued FPAAs for Cinema 84's 1985-1989 tax years. (Px. 7 at 79-121.) In the FPAAs the IRS proposed disallowing all the deductions reported on Cinema 84's 1985-1989 partnership returns. (Px. 7 at 79-121.) Those adjustments would have eliminated most, if not all, of Bush's distributive share of Cinema 84's losses reported on the Schedule E attached to his 1985-1987 returns. (Dx. 1-3.) On January 8, 1992, Cinema 84, pursuant to § 6226(a), filed a petition in the United States Tax Court to contest the adjustments set out in the FPAA. (Px. 7.) On December 2, 1994, Bush, pursuant to § 6226(d), filed a notice of election to participate in the Tax Court proceeding involving Cinema 84. (Px. 8 at 124.)

On August 7, 1999, while the Tax Court TEFRA proceedings involving LWM and Cinema 84 were pending, Bush entered into closing agreements with the IRS to settle all matters related to the two partnerships for his 1983-1995 tax years. (Px. 10, 11.) On June 23, 2000, the IRS filed a notice of settlement in the Cinema 84 TEFRA case, notifying the Tax Court that Bush and the IRS had finally settled all disputes regarding Cinema 84 for the years before the Tax Court. (Px. 8 at 134.) On July 21, 2000, the IRS filed a notice of settlement in the LWM TEFRA case, notifying the Tax Court that the IRS and Bush had finally settled all disputes regarding LWM for the years before the Tax Court. (Px. 9 at 147.) On September 1, 2000, the Tax Court issued orders dismissing Bush as a party in both the LWM and Cinema 84 TEFRA proceedings. (Px. 8 at 134, Px. 9 at 148.)

C. *The closing agreements.*

The closing agreements Bush entered into with the IRS for the LWM and Cinema 84 partnerships were substantially the same. (Px. 10, 11.) The agreement for LWM covered years 1983-1995, while the agreement for Cinema 84 covered years 1984-1995. (Px 10 at 152, Px. 11 at 149.) Bush's brief focuses on paragraphs 1-9 and 15 of the closing agreements. (P. Brief at 4-5, 17.) Defendant submits that the only provisions of the closing agreements which are relevant to the issues raised by the parties' motions are paragraphs 1-4 and 8. The following is a synopsis of those closing agreement terms.

1. *Closing Agreements paragraphs 1-4 (Relevant).*

Paragraph 1 of the closing agreements provides that there will be no adjustment to the partnerships' income, losses, or credits in the years covered by the agreements. Paragraph 2 provides that Bush could claim on his tax returns for the years covered by the agreements distributive losses and credits from the partnerships only "to the extent they are at risk under I.R.C. § 465." (Px. 10 at 149, Px. 11 at 152.) In paragraphs 3 and 4 of the LWM agreement, Bush agrees that for 1983-1986, he was at risk pursuant to § 465 to the extent of $50,000. (Px. 11 at 152.) In paragraphs 3 and 4 of the Cinema 84 agreement, Bush agreed that for 1984-1989, he was at risk pursuant to § 465 to the extent of $50,000.00. (Px. 10 at 149.) (Paragraph 5 provides that the same limit will apply to computing investment tax credits.) (Px. 10 at 149, Px. 11 at 152.) The parties, therefore, stipulated and agreed as to the at-risk amount under § 465 in the closing agreements. No factual level determination was required to apply the provisions of paragraphs 2-4 of the closing agreements to Bush's 1985-1987 tax years.

2. *Closing Agreements paragraph 8 (Relevant).*

Paragraph 8 of both closing agreements provides that the at-risk amount is increased by any income reported by the partnership. Cinema 84 did not report any income on the K-1's issued to Bush for 1985-1987. LWM did not report any income on the K-1's issued to Bush for 1985 or 1986, but did report income in the amount of $398.00 on the K-1 issued Bush for 1987. (Dx. 1-3.) Pursuant to paragraph 8 of the LWM closing agreement, the $398.00 in income increased the amount Bush was at risk under § 465. That adjustment was taken into account by the IRS in its computational adjustment of the tax Bush owed for 1987. (Px. 14 at 159, Dx. 5.) Bush's distributive share of LWM income in 1987 was set forth in the K-1 issued to him by the partnership and attached to his original return for that year. That amount was also reported on the Schedule E attached to his 1987 return. (D. Finding 3.) Therefore, no factual determination at the partner level was required to apply the provisions of paragraph 8 of the LWM closing agreement to Bush's 1987 tax year.

3. *Closing Agreements paragraph 6 (Irrelevant).*

Paragraph 6 merely clarifies that only cash contributions will increase the amount at risk and restates the provisions of § 465, that losses disallowed as a result of application of the at-risk rules in one year are suspended, and may be recovered by offsetting income reported in a succeeding tax year, to the extent the taxpayer's at-risk amount increases to allow recovery of the losses. (Px. 10 at 149, Px. 11 at 152.) Section 465(a)(2) provides that any partnership losses disallowed by application of the at-risk rules can be claimed as a deduction in any subsequent year to offset any income reported by the partnership. Under § 465(a), once a partner's distributive share of partnership losses exceeds the amount for which that partner is at risk in the

partnership, no further partnership losses can be deducted in any year, unless the partner's amount at risk is increased.

For the Cinema 84 partnership, Bush was allowed losses in the amount of $45,187.00 for 1984. (D. Finding 4.) Therefore, for 1985, Bush could only deduct $4,813.00 of the $21,553.00 of Cinema 84 partnership losses reported in that year. For 1986 and 1987, none of the losses were deductible. (D. Finding 4.) For the LWM partnership, Bush was allowed losses in the amount of $50,000 in 1983. For 1985 and 1986, Bush was not allowed any partnership losses pursuant to the at-risk limitation agreed to in the closing agreements. (D. Finding 5.) For 1987, Bush's allocable share of the LWM partnership income was $398.00. Pursuant to § 465(a)(2), Bush was allowed to use the previously disallowed losses to offset that income. (D. Finding 5.)

4. *Closing Agreements paragraph 7 (Irrelevant).*

Paragraph 7 of the Cinema 84 closing agreement provides that to the extent Bush made an additional cash contribution to the partnership after 1989, his at-risk amount, specified in paragraph 4 to be $50,000.00, would be increased. (Px. 11 at 152.) However, the tax years at issue here are 1985-1987, so paragraph 7 of the Cinema 84 closing agreement does not apply to any of the assessments involved in this case. Paragraph 7 of the LWM closing agreement provides that Bush's at-risk amount would be increased to the extent he made an additional cash contribution to the partnership in 1987. (Px. 10 at 149.) However, Bush does not contend that he made any additional cash contribution to LWM in 1987. Further, the notice of adjustment issued to Bush for 1987 does not reflect any adjustment based on an additional cash contribution by Bush to LWM in that year. (Px. 14.) Therefore, paragraph 7 of the LWM closing agreement does not apply here.

5. *Closing Agreements paragraph 9 (Irrelevant).*

Paragraph 9 of both closing agreements provides that "to the extent the taxpayers make cash payments on the partnership notes after the date of execution of this agreement," their at-risk amount would be increased. (Px. 10 at 149, Px. 11 at 152.) The closing agreements were executed on August 7, 1999. (P. Finding 7.) Therefore, paragraph 9 only applies to tax years 1999 and after. Since the years at issue here are 1985-1987, paragraph 9 of the closing agreements has no relevance to this case.

6. *Closing Agreements paragraph 15 (Irrelevant).*

Paragraph 15 of both closing agreements provides that "any refund attributable to the operation of this agreement" will be allowed if filed within one year of the execution of the agreements, and that, if any such claims are filed within 120 days of the execution of the agreements, they will be allowed as offsets against any deficiencies resulting from the agreements. (Px 10 at 150; Px 11 at 153.) Bush argues that this paragraph prevents the IRS from applying the settlement to 1985-1987 by computational adjustment because "the IRS was obligated to consider any referenced refund claims of a partner filed within 120 days and allow them as an offset." (P. Brief at 17.) The closing agreements were fully executed on August 7, 1999. (Px 10 at 151; Px 11 at 154.) Thus, for any such refund claims to have had any offset effect on the computation, they would have had to have been filed no later than December 5, 1999. No such claims were filed within that 120-day period.

Moreover, the IRS notices of adjustment for the 1985-1987 tax years, the accuracy of which Bush does not dispute, show that the adjustments attributable to the operation of the agreements resulted in Bush's owing additional tax in each of the years in issue, in the respective

amounts that were assessed as deficiencies for those years on July 31, 2000. (Px 12-14; Px 16 at 181-183.) Indeed, the only refund claims filed after the execution of the closing agreements are the claims filed on July 18, 2002, based not on the "operation of the agreement" but on Bush's contention that the assessments are invalid because no notice of deficiency was issued. (P. Findings 13, 16; Px 16-21.) Thus, paragraph 15 does not support Bush's contention, and is simply irrelevant to the issue.

D. *The adjustments and claims for refund*.

On July 12, 2000, the IRS sent to Bush notices of adjustment related to his 1985-1987 tax years. (Px. 12-14; P. Finding 10.) The deficiencies reflected in the notices were assessed on July 31, 2000. (Px. 16 at 181-183.) The notice of adjustment for Bush's *1985* tax year provided for the disallowance of $16,740.00 of the losses claimed by Bush for Cinema 84 and $23,442.00 of the losses claimed by Bush for LWM. That disallowance increased Bush's 1985 adjusted gross income, which reduced by $2,063.00 the amount of itemized deductions he could claim for that year. (Px. 12 at 155.) As a result of those adjustments, Bush's 1985 tax liability was increased by $16,708.00. (Px. 12 at 155.) The interest owed on that additional tax liability was $44,685.02, and, pursuant to paragraph 11 of the closing agreements, the additional tax motivated interest was $16,269.63. (Px. 12 at 156.)

The notice of adjustment for Bush's *1986* tax year provided for the disallowance of $20,079.00 of the losses claimed by Bush for Cinema 84 and $34,003.00 of the losses claimed by Bush for LWM. (Px. 13 at 157.) As a result of those adjustments, Bush's 1986 tax liability was increased by $10,817.00. (Px. 13 at 157.) The interest owed on that additional tax liability was

$44,685.02, and, pursuant to paragraph 11 of the closing agreements, the additional tax motivated interest was $16,269.63. (Px. 13 at 158.)

The notice of adjustment for Bush's *1987* tax year provided for the disallowance of $25,733.00 of the losses claimed by Bush for Cinema 84. (Px. 14 at 159.) Pursuant to paragraph 8 of the closing agreement for LWM, the notice of adjustment recorded as a negative entry the income reported by LWM for 1987, $398.00, reducing the amount of additional tax liability Bush owed for 1987 by that amount. (Px. 14 at 159.) As a result of the disallowance of the Cinema 84 losses, Bush's 1987 adjusted gross income was increased, which resulted in reducing by $507.00 the amount of itemized deductions he could claim for that year. (Px. 14 at 159.) As a result of those adjustments, Bush's 1987 tax liability was increased by $9,645.00. (Px. 14 at 159.) The interest owed on that additional tax liability was $19,638.26, and, pursuant to paragraph 11 of the closing agreements, the additional tax motivated interest was $7,384.62. (Px. 14 at 160.)

On August 8, 2000, Bush paid the additional tax and interest shown on the notices of assessment for his 1985-1987 tax years. (P. Finding 11.) On July 18, 2002, Bush filed claims for refund seeking recovery of the additional tax and interest he paid with respect to his 1985-1987 tax years. (P. Finding 13, Px. 16-21.) The primary basis for those refunds was the contention that the assessments of amounts set out in the notices of adjustment were invalid because the IRS did not first issue Bush a notice of deficiency pursuant to § 6213. (P. Finding 16.) Bush did not contend in his claims for refund, or in his brief, that the IRS computations were not accurate or that they did not properly reflect the application of the terms of the closing agreements. (Px. 16 at 168, Px. 18 at 219, Px. 20 at 240.)

## II. LEGAL ARGUMENT

Section 6230(a) provides that the deficiency procedures in § 6213 do not apply to the assessment of any "computational adjustments." The term "computational adjustment" is defined in Treas. Reg. 301.6231(a)(6)-1T(a).[4] That regulation provides (emphasis added):

> A change in the tax liability of a partner to properly reflect the treatment of a partnership item under subchapter C of chapter 63 of the code is made through a computational adjustment. *A computational adjustment may include a change in tax liability that reflects a change in an affected item where that change is necessary to properly reflect the treatment of a partnership item*. However, if a change in a partner's tax liability cannot be made without making one or more partner-level determinations, that portion of the change in tax liability attributable to the partner-level determinations shall be made under the provisions of subchapter B of chapter 63 of the Code (relating to deficiency procedures). Thus, changes in a partner's tax liability with respect to affected items that do not require partner-level determinations (such as the threshold amount of medical deductions under § 213 that changes as a result of determinations made at the partner level) are included in the computational adjustment. However, changes in a partner's tax liability with respect to affected items that require partner-level determinations (such as a partner's *at risk amount that depends upon the source from which the partner obtained the funds that the partner contributed to the partnership)* are not included in a computational adjustment.

Tax adjustments based upon a partnership item or an affected item are not subject to the standard deficiency procedures and do not require a notice of deficiency. *Olson*, 172 F.3d at 1317. Section 6230(a)(2)(A)(ii) provides that items covered by a settlement of a TEFRA proceeding are not subject to the deficiency procedures. *Powell v. Commissioner*, 96 T.C. 707, 712 (1991). "The purpose of Section 6230(a)(2)(A)(ii) is to enable the Commissioner to collect

---

[4]During 1999-2000, the dates of the execution of the closing agreements and the assessments at issue in this case, the IRS had issued temporary regulations regarding the application of TEFRA, §§ 6221-6234. 52 FR 6779, 1987-1 C.B. 325, 1987 WL 860309. The regulations were not adopted in final form until October 4, 2001. Therefore, citations to the Treasury Regulations are to the Temporary Regulations in effect in 1999-2000.

amounts due as a result of settlements without the necessity of issuing a statutory notice of deficiency." *Harrris v. Commissioner*, 99 T.C. 121, 126 (1992).

An affected item is defined in § 6231(a)(5) as "any item to the extent such item is affected by a partnership item." Bush does not dispute that the adjustments at issue in this case, application of the § 465 at-risk limitation specified in the closing agreements, is an affected item with respect to the LWM and Cinema 84 partnerships. (P. Brief at 11.) Therefore, the question before the Court is not whether the assessments were based on partnership or non-partnership items, which is the focus of much of Bush's argument. (P. Brief at 7-11.) Rather, the question is whether any partner-level factual determination was required in order for the IRS to apply the terms of the closing agreements to plaintiff's 1985-1987 tax years. If not, then no notice of deficiency is required before assessment, even though the "at risk amount" is an affected item, not a partnership item. *Olson*, 172 F.3d at 1318.

Treas. Reg. 301.6231(a)(6)-1T(a) provides that a computational adjustment may include a change in an affected item. In describing a type of affected item that requires a substantive partner-level determination (and thus is not a computational adjustment), the regulation refers to a determination of an at-risk amount "that depends upon the source" of the funds contributed. This case does not present such an issue. Bush and the IRS stipulated and agreed in paragraphs 3 and 4 as to both the amount for which Bush was at-risk during the years at issue and the *source* of the amount at risk- -i.e., a cash contribution.[5] (Px. 10, 11.) Since all the facts regarding the

---

[5]Paragraph 7 of the LWM closing agreements provides the amount at risk, $50,000.00, will be increased by any cash contributions made in 1987. (Px. 10 at 149.) As noted in the factual discussion in this brief, Bush does not contend that he made any cash contribution to LWM in 1987. Therefore, the amount Bush was at-risk in 1987 with regard to LWM was the $50,000.00 specified in paragraph 4 of the LWM closing agreement. (Px. 10 at 149.) Paragraph

application of the at-risk limitation in § 465 to Bush's 1985-1987 tax years were stipulated and agreed to in the closing agreements, the application of that agreement to Bush's 1985-1987 tax returns requires only a computational adjustment and no notice of deficiency is required before the additional tax resulting from that computational adjustment can be assessed. *Olson*, 172 F.3d at 1318.

Bush asserts that a partner's amount at risk is a "substantive affected item requiring a factual determinations to be made at the partner level." (P. Brief at 11.) Bush relies on jurisprudence that states the general rule that the determination of the amount at risk is not a partnership issue. (P. Brief fn. 29 and 33.) Those cases are inapposite, since they all involved motions to dismiss Tax Court petitions on the ground that the at-risk issue should not be decided until the TEFRA partnership proceedings were concluded because it was either a partnership item, or an affected item. *Roberts v. Commissioner*, 94 T.C. 853 (1990); *N.F.C. Energy Partners v. Commissioner*, 89 T.C. 741 (1987); *Hambrose Leasing v. Commissioner*, 99 T.C. 298 (1992); *Dial USA, Inc. v. Commissioner*, 95 T.C. 1 (1990); *Univ. Heights at Hamilton Corp. v. Commissioner*, 95 T.C. 218 (1991)*; Maxwell v. Commissioner*, 87 T.C. 783 (1986).

None of the cases on which Bush relies involved the question of whether a notice of deficiency is required before assessments resulting from the application of a settlement agreement can be made, the issue before this Court. Most cases that have addressed that question have concluded that a notice of deficiency is not required before the additional tax resulting from a settlement of a TEFRA case can be assessed. *Olson*, 172 F.3d at 1319;

---

9 of the closing agreements provides that cash payments on partnership notes can also increase the amount at risk. However, that provision only applies to payments made after August 7, 1999, well after the years at issue in this case. (Px. 10 at 149, Px. 11 at 152.)

*Cummings v. Commissioner*, T.C. Memo. 1996-282, 1996 WL 334418, at 5 (1996); *Bob Hamrick Chevrolet v. United States*, 849 F.Supp. 500, 512 (W.D. Tex. 1994).

Bush does not identify any specific partner-level factual determination that he contends was required in this case in order for the IRS to apply the terms of the closing agreements to Bush's 1985-1987 tax returns. Instead, he merely argues that paragraph 15 of the closing agreements requires a partner level factual determination.[6] (P. Brief at 6, 17.) As discussed in the factual background above, paragraph 15 does not apply to the assessments at issue in this case. Hypothetical situations in which a partner-level factual determination might have to be made are not sufficient to establish that such a determination is actually required. *Olson*, 172 F.3d at 1319. Since Bush has not provided any evidence of a specific partner-level determination that was required in order for the IRS to compute the additional tax liability resulting from the closing agreements, he has failed to establish that a notice of deficiency was required in this case. *Olson*; *Cummings; Bob Hamrick Chevrolet; Field v. United States*, 2002 WL 1300249 at fn. 4 (S.D. N.Y. 2002).

The issue present in this case was addressed by the Federal Circuit in *Olson* and decided adversely to the taxpayer, affirming the Court of Federal Claims' rejection of the taxpayer's claim that the assessment was invalid because no notice of deficiency was issued. In *Olson* the IRS and the taxpayer entered into a settlement (Form 870-L(AD)) of a TEFRA partnership case. 172 F.3d at 1312. IRS assessed the additional tax resulting from the settlement and the taxpayer

---

[6]At page 6 of his brief, Bush briefly mentions paragraphs 6-9, appearing to suggest that they would require a partner level determination. The argument portion of his brief, however, relies for that proposition solely on paragraph 15. In the Factual Background section of this brief we demonstrate that none of those paragraphs of the closing agreements supports Bush's contention.

paid the tax. The taxpayer filed claims for refund based on the contention that the assessments were invalid because a notice of deficiency was not issued. 172 F.3d at 1315. The Federal Circuit rejected the taxpayer's claims because the closing agreements could be applied to the taxpayer's tax returns in issue by means of a computational adjustment. 172 F.3d at 1318. This is exactly the situation present here.

As in this case, in *Olsen,* the taxpayer asserted that partner-level factual determinations were required. In a discussion directly applicable to this case, the Federal Circuit rejected the taxpayer's argument stating (172 F.3d at 1318) (emphasis added):

> With respect to the taxes, the assessment appears to be a prime example of a mere computational adjustment because it apparently *entailed nothing more than reviewing the taxpayers' returns for the years in question, striking out the tax credits that had been improperly claimed, and re-summing the remaining figures*. Although the taxpayers alleged that the appropriate amounts to be used to calculate the adjustments would not be ascertainable without certain additional information, including the sources of certain amounts already on the returns, this does not alter our analysis. That the IRS has to ask the taxpayer for a pertinent figure or for the source of a figure does not make the adjustment non-computational. Indeed, despite the fact that the IRS may need assistance as to the derivation of certain figures on the tax returns, no individualized factual determination takes place as to the correctness of the originally declared figures or any other factual matter such as the state of mind of the taxpayer upon filing. *The critical question of fact– that is, the amount of tax credits improperly claimed as carrybacks and carryforwards– has already been resolved and stipulated to in a settlement agreement among the parties*. The application of that stipulated fact to the tax returns in question requires only computational action.

This case is substantially analogous to the facts considered by the Federal Circuit in *Olson*. In this case, the parties resolved and stipulated in the closing agreements to the facts relevant to the application of the at-risk provisions in § 465. In this case, like the situation in *Olson*, all that was required was for the IRS to remove the losses disallowed as a result of the application of the $50,000.00 at-risk limitation specified in the closing agreements and re-sum the remaining figures on the returns for the years at issue. (Px. 12-14.) In this case, unlike

*Olson*, the IRS did not even have to obtain any additional information from Bush in order to make the computational adjustments. All the facts necessary were in the closing agreements and on the original returns. Therefore, pursuant to § 6230(a)(1), no notice of deficiency is required before the additional tax and interest resulting from the application of the closing agreements to Bush's 1985-1987 tax years can be assessed.

CONCLUSION

For the reasons set forth above, defendant, the United States, respectfully moves this Court for judgment in its favor granting defendant's motion for partial summary judgment, and denying plaintiff's motion for partial summary judgment.

Respectfully submitted,

s/Benjamin C. King, Jr.
BENJAMIN C. KING, JR.
Attorney of Record

U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/Mary M. Abate
Of Counsel

May 3, 2007