IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RECEIVED
OCT 25 2004
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LYMAN F. BUSH, INDIVIDUALLY and LYMAN F. BUSH, PERSONAL REPRESENTATIVE OF THE ESTATE OF BEVERLY J. BUSH | § | 04-1598T |
| Plaintiff, | § | |
| vs. | § | DOCKET NO. ____________ |
| | § | JUDGE: ____________ |
| UNITED STATES OF AMERICA | § | |
| Defendant. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

1. Plaintiffs Lyman F. Bush and Lymon Bush, Personal Representative of the Estate of Beverly J. Bush (collectively "Bush") is citizen of the United States of America whose mailing address and residence is 1217 122nd Street, Court E, Tacoma, Washington 98445.

2. The Defendant is the United States of America.

3. This is a suit arising under Sections 7422, 6401, 6402, 6230(c), 6601, 6621(d) of the Internal Revenue Code[1] and the laws of the United States for the refund of income taxes collected from Bush. This is also a suit for breach of contract under 28 U.S.C. §1491(a)(1).

4. Jurisdiction is conferred upon the Court by Title 28, Sections 1346(a)(1) and 1491(a), of the United States Code.

---

[1]References to Section, §, and the Internal Revenue Code are to Title 26 of the United States Code.

PLAINTIFF'S EXHIBIT 30

R:\DOCS\TAXCONT.T\twwco204.bu1.wpd

COUNT ONE
Calendar Year 1985

5. The Bushes timely filed a joint federal income tax return for the calendar year 1985 and paid the taxes reported due on said return. Lyman F. Bush and Beverly J. Bush's taxpayer identification numbers reflected on the subject tax return are [redacted] and [redacted], respectively.

6. Bush was a limited partner in the Greenberg Brothers Partnership #4, aka Lone Wolf McQuade, ("Lone Wolf") and Cinema 84 partnership ("Cinema 84") for 1985.

7. A dispute arose between the IRS and Lone Wolf and Cinema 84 as to certain partnership items reported on the partnerships' tax returns.

8. On either July 22, 1999 or August 7, 1999, Bush and the IRS entered into Closing Agreements with respect to the Lone Wolf and Cinema 84 disputes. A copy of the Closing Agreement is included as Exhibit A to Exhibit 2 attached.

9. Allegedly on July 31, 2000, the IRS made a "Quick Assessment" of tax of $16,708.00 and an assessment of interest of $42,660.44 to the Bush 1985 tax account. On September 11, 2000, the IRS made an additional interest assessment of $95.20. See the transcript of account attached as Exhibit 1.

10. Effective as of March 9, 1987, Bush made a payment of $5,271.33 to the 1985 tax account. On August 8, 2000, Bush made a payment of $53,323.11. Effective as of April 17, 1989, the IRS transferred an overpayment of $774.00 from the Bush 1988 account to the 1985 account. On October 4, 2000, Bush made a payment of $95.20 to the 1985 account.

11. On July 18, 2002, Bush filed claims for refund of $16,708.00 in tax and $42,660.44 for interest for 1985. See Exhibits 2 and 3 (because the attachments for the claims at Exhibits 3 and

Exhibits 5-8 are voluminous and identical to the attachments to Exhibit 2, the attachments are not included for Exhibits 3 or for Exhibits 5-8).

12. On October 23, 2002, the IRS denied those claims. See Exhibit 4.

13. As grounds for recovery in this action, Bush restates and incorporates herein the grounds for refund set out in those claims:

a. Each settlement entered into by Closing Agreement provided there was no change to partnership items, but agreed that for purposes of determining the taxpayers' correct tax liability for every partnership year from inception to termination (i) the taxpayers' amount at risk regarding their Partnership investment would be determined based on several factors set forth in the agreement, (ii) "any deficiency in tax determined under this agreement will be subject to adjustments arising from a carryback or carryforward from other taxable years of any loss, credit or other tax attributable as allowed by the Internal Revenue Code," (iii) the taxpayers could limit the amount of any income that would be or had been recognized related to any cancellation of any partnership notes, (iv) the taxpayers could limit recognition of their distributive share of any partnership income or gains for certain years to the amount of the partnership distribution or previously suspended partnership loss and the at-risk rules, (v) the partners could assert any appropriate innocent spouse defense under §6015, and (vi) other factors would be considered. See Exhibit A to Exhibit 2. Therefore, it is clear that any resulting tax deficiency to the taxpayers is based upon agreed adjustments to affected items requiring a partner level determination and further subject to totally non-partnership item adjustments and defenses preserved in the settlement agreement. Any tax deficiency is subject to the notice of deficiency requirements under §§6212 and 6213. The IRS did not issue the statutory notice of deficiency with regard to the assessments sought to be refunded in this claim. An

assessment of a tax liability in violation of the restrictions on assessment set forth in §6213 is void and illegal. Therefore, all the amounts assessed, collected and sought to be refunded in this claim should be refunded. The agreement did not contain nor was there any separate waiver of the restrictions on assessment and collection under §6213.

b. The harm caused by the IRS' breach of the closing agreements is abundantly clear in light of the following facts:

(i) In accordance with paragraphs 12, 14, 15, 17 and 18 the taxpayers filed refund claims for 1988, 1990, 1991, 1992, 1993 and 1995 that should have been allowed and taken into account in computing the net tax deficiency, but which were instead summarily denied. See Exhibit C to Exhibit 2. Had the IRS issued a statutory notice of deficiency for 1985, 1986 and 1987 the taxpayers would have been entitled to raise these agreed offsets as a partial defense to the 1985, 1986 and 1987 liabilities prior to payment. Instead, the taxpayers have been forced (i) to file a separate lawsuit to obtain the refunds for 1988, 1990, 1991, 1992, 1993 and 1995, and (ii) pay the gross liability asserted by the IRS for 1985, 1986 and 1987 and then pursue these refund claims asserting defenses reserved or agreed in this closing agreement. The 1988, 1990, 1991, 1992 and 1993 refunds would have reduced the liability by well over $50,000.

(ii) Even the 1981 and 1988 overpayments the IRS determined and acknowledged by itself that should have offset against 1985, 1986 and 1987 liabilities were inexplicably offset against previously non-existent phantom liabilities for 1981 and

1988 essentially defrauding the taxpayers of the benefit of the offsets for those overpayments. See exhibit D to Exhibit 2.

c. The 1981, 1988, 1990, 1991, 1992, 1993, 1994 and 1995 overpayments discussed in Paragraph 2 should all have been applied directly to the 1985, 1986 and 1987 liabilities and therefore constitute an additional and separate ground for refund of the liability overpaid in 1985, 1986 and 1987 as a result of their denial.

d. If it is determined that the taxpayers are entitled to anything less than a full refund, the recomputation of interest must take into account the doctrine in *Avon Products v. Commissioner*, 78-2 U.S.T.C. ¶9821 (1978), pursuant to which it has been determined, and conceded by the government, that interest does not begin to run on a deficiency of tax until the date on which a refund was paid if no interest was paid with the original refund.

f. As an alternative, and in addition to the grounds set forth above, interest should be abated pursuant to §6404 as follows:

(i) First, interest should be abated for the period beginning with the commencement of the IRS' wrongful representation that the partners in this partnership would be entitled to request consistent settlements based upon those entered into by other partners, even providing the names and date of the settlements with respect to which the consistent settlements could be requested, the representation to the United States Tax Court that all of the cases then pending would be settled either based upon settlement documents that were in process or upon requests for consistent settlement, and then the subsequent refusal to enter into consistent settlements resulting in the delay from February 8, 1995 until the actual date that the above-referenced settlement agreement was entered into, all of which constituted

managerial or ministerial acts which were unreasonable errors and delays by officers or employees of the IRS acting in their official capacities. All such acts occurred after the IRS first contacted the partner in writing with regard to the civil partnership level return examination.

(ii) Second, if it is determined that there was a waiver of the restrictions under §6213, which the taxpayers assert there was not, then interest should be abated for the period beginning with a date 30 days after the date of such waiver in the Closing Agreement and ending on the date of assessment of the income tax liability. The failure to promptly assess the tax deficiency was clearly a managerial or ministerial act resulting in an unreasonable delay of the tax assessment, and further, such abatement is required under §6404.

e. As an alternative, and in addition to the grounds set forth above, the taxpayer(s) are entitled to the benefit of a net rate of interest of zero pursuant to §6621(d) and a refund of the interest paid on the portion of the deficiency equal to the amount of any refund with respect to which the taxpayer(s) were entitled to receive interest for the periods during which interest was charged on such portion of the deficiency and is payable on such refunds. Substantial refunds are due for 1981, 1988, 1990, 1991, 1992, 1993, 1994 and 1995 as a result of the settlement. This claim constitutes the taxpayer(s)' request that the Secretary apply §6621(d) to all such periods, which includes all periods from April 15, 1984 of the first year listed in the preceding sentence until the date of payment of the tax sought to be refunded under this claim. To the extent of equivalent amounts of underpayments or overpayments, the periods set forth under §5.063 of Rev. Proc. 99-43 have not previously been applied to obtain a net interest rate of zero under §6621(d).

f. As an alternative, the assessment made by the IRS was not made within two years of the date of the settlement and is, therefore, an invalid assessment which must be refunded. The settlement became final and binding either on July 22, 1999 or August 7, 1999. Which date is in dispute. The IRS mailed to the taxpayers statements for tax due (Forms 3552) that were patently fraudulent, representing that the "Assessment Date" was "07/31/2000" and were dated "07/31/2000." These notices were pure unadulterated fraudulently dated and serve as no evidence that a valid assessment was ever made. They were received by the taxpayers on 07/28/00, three days *before* the alleged assessment and date of the notices. See Exhibit B, p. 4-10 to Exhibit 2. They were faxed to the taxpayers' counsel on 7/28/00. It is the taxpayers' belief that the assessments were not actually made until late August. See the transcript of account at Exhibit 1.

14. Over six (6) months have elapsed since Bush filed the original claims for refund. Other than the disallowance described above, no action on the claims for refund has been taken by Congress or any agency of the United States, or in any judicial proceeding, including any in the Tax Court of the United States.

15. Lyman Bush, individually, and the Estate of Beverly J. Bush, are the sole owners of the claims asserted herein against the Defendant and have made no assignment of said claims.

COUNT TWO
Calendar Year 1986

16. The Bushes timely filed a joint federal income tax return for the calendar year 1986 and paid the taxes reported due on said return. Lyman F. Bush and Beverly J. Bush's taxpayer identification numbers reflected on the subject tax return are [redacted] and [redacted], respectively.

17. Bush was a limited partner in the Greenberg Brothers Partnership #4, aka Lone Wolf McQuade, ("Lone Wolf") and Cinema 84 partnership ("Cinema 84") for 1986.

18. A dispute arose between the IRS and Lone Wolf and Cinema 84 as to certain partnership items reported on the partnerships' tax returns.

19. On either July 22, 1999 or August 7, 1999, Bush and the IRS entered into Closing Agreements with respect to the Lone Wolf and Cinema 84 disputes. A copy of the Closing Agreement is included as Exhibit A to Exhibit 2 attached.

20. Allegedly on July 31, 2000, the IRS made a "Quick Assessment" of tax of $10,817.00 and an assessment of interest of $35,187.97 to the Bush 1986 tax account. See the transcript of account attached as Exhibit 1.

21. On August 8, 2000, Bush made a payment of $46,004.97 to the 1986 tax account.

22. On July 18, 2002, Bush filed claims for refund of $10,817.00 in tax and $35,187.97 for interest for 1986. See Exhibits 5 and 6 (because the attachments for the claims at Exhibits 5 and 6 are voluminous and identical to the attachments to Exhibit 2, the attachments are not included for Exhibits 5and 6).

23. On October 23, 2002, the IRS denied those claims. See Exhibit 4.

24. As grounds for recovery in this action, Bush restates and incorporates herein the grounds for refund set out in those claims:

a. Each settlement entered into by Closing Agreement provided there was no change to partnership items, but agreed that for purposes of determining the taxpayers' correct tax liability for every partnership year from inception to termination (i) the taxpayers' amount at risk regarding their Partnership investment would be determined based on several factors set forth in the agreement, (ii) "any deficiency in tax determined under this agreement will be subject to adjustments arising from a carryback or carryforward from other taxable years of any loss, credit or other tax attributable as

allowed by the Internal Revenue Code," (iii) the taxpayers could limit the amount of any income that would be or had been recognized related to any cancellation of any partnership notes, (iv) the taxpayers could limit recognition of their distributive share of any partnership income or gains for certain years to the amount of the partnership distribution or previously suspended partnership loss and the at-risk rules, (v) the partners could assert any appropriate innocent spouse defense under §6015, and (vi) other factors would be considered. See Exhibit A to Exhibit 2. Therefore, it is clear that any resulting tax deficiency to the taxpayers is based upon agreed adjustments to affected items requiring a partner level determination and further subject to totally non-partnership item adjustments and defenses preserved in the settlement agreement. Any tax deficiency is subject to the notice of deficiency requirements under §§6212 and 6213. The IRS did not issue the statutory notice of deficiency with regard to the assessments sought to be refunded in this claim. An assessment of a tax liability in violation of the restrictions on assessment set forth in §6213 is void and illegal. Therefore, all the amounts assessed, collected and sought to be refunded in this claim should be refunded. The agreement did not contain nor was there any separate waiver of the restrictions on assessment and collection under §6213.

b. The harm caused by the IRS' breach of the closing agreements is abundantly clear in light of the following facts:

(i) In accordance with paragraphs 12, 14, 15, 17 and 18 the taxpayers filed refund claims for 1988, 1990, 1991, 1992, 1993 and 1995 that should have been allowed and taken into account in computing the net tax deficiency, but which were instead summarily denied. See Exhibit C to Exhibit 2. Had the IRS issued a statutory notice of deficiency for 1985, 1986 and 1987 the taxpayers would have been entitled to raise

these agreed offsets as a partial defense to the 1985, 1986 and 1987 liabilities prior to payment. Instead, the taxpayers have been forced (i) to file a separate lawsuit to obtain the refunds for 1988, 1990, 1991, 1992, 1993 and 1995, and (ii) pay the gross liability asserted by the IRS for 1985, 1986 and 1987 and then pursue these refund claims asserting defenses reserved or agreed in this closing agreement. The 1988, 1990, 1991, 1992 and 1993 refunds would have reduced the liability by well over $50,000.

(ii) Even the 1981 and 1988 overpayments the IRS determined and acknowledged by itself that should have offset against 1985, 1986 and 1987 liabilities were inexplicably offset against previously non-existent phantom liabilities for 1981 and 1988 essentially defrauding the taxpayers of the benefit of the offsets for those overpayments. See exhibit D to Exhibit 2.

c. The 1981, 1988, 1990, 1991, 1992, 1993, 1994 and 1995 overpayments discussed in Paragraph 2 should all have been applied directly to the 1985, 1986 and 1987 liabilities and therefore constitute an additional and separate ground for refund of the liability overpaid in 1985, 1986 and 1987 as a result of their denial.

d. If it is determined that the taxpayers are entitled to anything less than a full refund, the recomputation of interest must take into account the doctrine in *Avon Products v. Commissioner*, 78-2 U.S.T.C. ¶9821 (1978), pursuant to which it has been determined, and conceded by the government, that interest does not begin to run on a deficiency of tax until the date on which a refund was paid if no interest was paid with the original refund.

f. As an alternative, and in addition to the grounds set forth above, interest should be abated pursuant to §6404 as follows:

(i) First, interest should be abated for the period beginning with the commencement of the IRS' wrongful representation that the partners in this partnership would be entitled to request consistent settlements based upon those entered into by other partners, even providing the names and date of the settlements with respect to which the consistent settlements could be requested, the representation to the United States Tax Court that all of the cases then pending would be settled either based upon settlement documents that were in process or upon requests for consistent settlement, and then the subsequent refusal to enter into consistent settlements resulting in the delay from February 8, 1995 until the actual date that the above-referenced settlement agreement was entered into, all of which constituted managerial or ministerial acts which were unreasonable errors and delays by officers or employees of the IRS acting in their official capacities. All such acts occurred after the IRS first contacted the partner in writing with regard to the civil partnership level return examination.

(ii) Second, if it is determined that there was a waiver of the restrictions under §6213, which the taxpayers assert there was not, then interest should be abated for the period beginning with a date 30 days after the date of such waiver in the Closing Agreement and ending on the date of assessment of the income tax liability. The failure to promptly assess the tax deficiency was clearly a managerial or ministerial act resulting in an unreasonable delay of the tax assessment, and further, such abatement is required under §6404.

e. As an alternative, and in addition to the grounds set forth above, the taxpayer(s) are entitled to the benefit of a net rate of interest of zero pursuant to §6621(d) and a refund of the interest paid on the portion of the deficiency equal to the amount of any refund with respect to which the taxpayer(s) were entitled to receive interest for the periods during which interest was charged on such portion of the deficiency and is payable on such refunds. Substantial refunds are due for 1981, 1988, 1990, 1991, 1992, 1993, 1994 and 1995 as a result of the settlement. This claim constitutes the taxpayer(s)' request that the Secretary apply §6621(d) to all such periods, which includes all periods from April 15, 1984 of the first year listed in the preceding sentence until the date of payment of the tax sought to be refunded under this claim. To the extent of equivalent amounts of underpayments or overpayments, the periods set forth under §5.063 of Rev. Proc. 99-43 have not previously been applied to obtain a net interest rate of zero under §6621(d).

f. As an alternative, the assessment made by the IRS was not made within two years of the date of the settlement and is, therefore, an invalid assessment which must be refunded. The settlement became final and binding either on July 22, 1999 or August 7, 1999. Which date is in dispute. The IRS mailed to the taxpayers statements for tax due (Forms 3552) that were patently fraudulent, representing that the "Assessment Date" was "07/31/2000" and were dated "07/31/2000." These notices were pure unadulterated fraudulently dated and serve as no evidence that a valid assessment was ever made. They were received by the taxpayers on 07/28/00, three days *before* the alleged assessment and date of the notices. See Exhibit B, p. 4-10 to Exhibit 2. They were faxed to the taxpayers' counsel on 7/28/00. It is the taxpayers' belief that the assessments were not actually made until late August. See the transcript of account at Exhibit 1.

25. Over six (6) months have elapsed since Bush filed the original claims for refund. Other than the notice of disallowance described above, no action on the claims for refund has been taken by Congress or any agency of the United States, or in any judicial proceeding, including any in the Tax Court of the United States.

26. Lyman Bush, individually, and the Estate of Beverly J. Bush, are the sole owners of the claims asserted herein against the Defendant and have made no assignment of said claims.

COUNT THREE
Calendar Year 1987

27. The Bushes timely filed a joint federal income tax return for the calendar year 1987 and paid the taxes reported due on said return. Lyman F. Bush and Beverly J. Bush's taxpayer identification numbers reflected on the subject tax return are [redacted] and [redacted], respectively.

28. Bush was a limited partner in the Greenberg Brothers Partnership #4, aka Lone Wolf McQuade, ("Lone Wolf") and Cinema 84 partnership ("Cinema 84") for 1987.

29. A dispute arose between the IRS and Lone Wolf and Cinema 84 as to certain partnership items reported on the partnerships' tax returns.

30. On either July 22, 1999 or August 7, 1999, Bush and the IRS entered into Closing Agreements with respect to the Lone Wolf and Cinema 84 disputes. A copy of the Closing Agreement is included as Exhibit A to Exhibit 2 attached.

31. Allegedly on July 31, 2000, the IRS made a "Quick Assessment" of tax of $9,635.00 and an assessment of interest of $26,729.62 to the Bush 1987 tax account.

32. On August 8, 2000, Bush made a payment of $36,364.62 to the 1987 tax account.

33. On July 18, 2002, Bush filed claims for refund of $9,635.00 in tax and $26,729.62 for interest for 1987. See Exhibits 7 and 8 (because the attachments for the claims at Exhibits 7and 8

are voluminous and identical to the attachments to Exhibit 2, the attachments are not included for Exhibits 7and 8).

34. On October 23, 2002, the IRS denied those claims. See Exhibit 4.

35. As grounds for recovery in this action, Bush restates and incorporates herein the grounds for refund set out in those claims:

a. Each settlement entered into by Closing Agreement provided there was no change to partnership items, but agreed that for purposes of determining the taxpayers' correct tax liability for every partnership year from inception to termination (i) the taxpayers' amount at risk regarding their Partnership investment would be determined based on several factors set forth in the agreement, (ii) "any deficiency in tax determined under this agreement will be subject to adjustments arising from a carryback or carryforward from other taxable years of any loss, credit or other tax attributable as allowed by the Internal Revenue Code," (iii) the taxpayers could limit the amount of any income that would be or had been recognized related to any cancellation of any partnership notes, (iv) the taxpayers could limit recognition of their distributive share of any partnership income or gains for certain years to the amount of the partnership distribution or previously suspended partnership loss and the at-risk rules, (v) the partners could assert any appropriate innocent spouse defense under §6015, and (vi) other factors would be considered. See Exhibit A to Exhibit 2. Therefore, it is clear that any resulting tax deficiency to the taxpayers is based upon agreed adjustments to affected items requiring a partner level determination and further subject to totally non-partnership item adjustments and defenses preserved in the settlement agreement. Any tax deficiency is subject to the notice of deficiency requirements under I.R.C. §§6212 and 6213. The IRS did not issue the statutory notice of deficiency with regard to the assessments sought to be refunded in this claim. An

assessment of a tax liability in violation of the restrictions on assessment set forth in §6213 is void and illegal. Therefore, all the amounts assessed, collected and sought to be refunded in this claim should be refunded. The agreement did not contain nor was there any separate waiver of the restrictions on assessment and collection under §6213.

b. The harm caused by the IRS' breach of the closing agreements is abundantly clear in light of the following facts:

(i) In accordance with paragraphs 12, 14, 15, 17 and 18 the taxpayers filed refund claims for 1988, 1990, 1991, 1992, 1993 and 1995 that should have been allowed and taken into account in computing the net tax deficiency, but which were instead summarily denied. See Exhibit C to Exhibit 2. Had the IRS issued a statutory notice of deficiency for 1985, 1986 and 1987 the taxpayers would have been entitled to raise these agreed offsets as a partial defense to the 1985, 1986 and 1987 liabilities prior to payment. Instead, the taxpayers have been forced (i) to file a separate lawsuit to obtain the refunds for 1988, 1990, 1991, 1992, 1993 and 1995, and (ii) pay the gross liability asserted by the IRS for 1985, 1986 and 1987 and then pursue these refund claims asserting defenses reserved or agreed in this closing agreement. The 1988, 1990, 1991, 1992 and 1993 refunds would have reduced the liability by well over $50,000.

(ii) Even the 1981 and 1988 overpayments the IRS determined and acknowledged by itself that should have offset against 1985, 1986 and 1987 liabilities were inexplicably offset against previously non-existent phantom liabilities for 1981 and

1988 essentially defrauding the taxpayers of the benefit of the offsets for those overpayments. See exhibit D to Exhibit 2.

c. The 1981, 1988, 1990, 1991, 1992, 1993, 1994 and 1995 overpayments discussed in Paragraph 2 should all have been applied directly to the 1985, 1986 and 1987 liabilities and therefore constitute an additional and separate ground for refund of the liability overpaid in 1985, 1986 and 1987 as a result of their denial.

d. If it is determined that the taxpayers are entitled to anything less than a full refund, the recomputation of interest must take into account the doctrine in *Avon Products v. Commissioner*, 78-2 U.S.T.C. ¶9821 (1978), pursuant to which it has been determined, and conceded by the government, that interest does not begin to run on a deficiency of tax until the date on which a refund was paid if no interest was paid with the original refund.

f. As an alternative, and in addition to the grounds set forth above, interest should be abated pursuant to §6404 as follows:

(i) First, interest should be abated for the period beginning with the commencement of the IRS' wrongful representation that the partners in this partnership would be entitled to request consistent settlements based upon those entered into by other partners, even providing the names and date of the settlements with respect to which the consistent settlements could be requested, the representation to the United States Tax Court that all of the cases then pending would be settled either based upon settlement documents that were in process or upon requests for consistent settlement, and then the subsequent refusal to enter into consistent settlements resulting in the delay from February 8, 1995 until the actual date that the above-referenced settlement agreement was entered into, all of which constituted

managerial or ministerial acts which were unreasonable errors and delays by officers or employees of the IRS acting in their official capacities. All such acts occurred after the IRS first contacted the partner in writing with regard to the civil partnership level return examination.

(ii) Second, if it is determined that there was a waiver of the restrictions under §6213, which the taxpayers assert there was not, then interest should be abated for the period beginning with a date 30 days after the date of such waiver in the Closing Agreement and ending on the date of assessment of the income tax liability. The failure to promptly assess the tax deficiency was clearly a managerial or ministerial act resulting in an unreasonable delay of the tax assessment, and further, such abatement is required under §6404.

e. As an alternative, and in addition to the grounds set forth above, the taxpayer(s) are entitled to the benefit of a net rate of interest of zero pursuant to §6621(d) and a refund of the interest paid on the portion of the deficiency equal to the amount of any refund with respect to which the taxpayer(s) were entitled to receive interest for the periods during which interest was charged on such portion of the deficiency and is payable on such refunds. Substantial refunds are due for 1981, 1988, 1990, 1991, 1992, 1993, 1994 and 1995 as a result of the settlement. This claim constitutes the taxpayer(s)' request that the Secretary apply §6621(d) to all such periods, which includes all periods from April 15, 1984 of the first year listed in the preceding sentence until the date of payment of the tax sought to be refunded under this claim. To the extent of equivalent amounts of underpayments or overpayments, the periods set forth under §5.063 of Rev. Proc. 99-43 have not previously been applied to obtain a net interest rate of zero under §6621(d).

f. As an alternative, the assessment made by the IRS was not made within two years of the date of the settlement and is, therefore, an invalid assessment which must be refunded. The settlement became final and binding either on July 22, 1999 or August 7, 1999. Which date is in dispute. The IRS mailed to the taxpayers statements for tax due (Forms 3552) that were patently fraudulent, representing that the "Assessment Date" was "07/31/2000" and were dated "07/31/2000." These notices were pure unadulterated fraudulently dated and serve as no evidence that a valid assessment was ever made. They were received by the taxpayers on 07/28/00, three days *before* the alleged assessment and date of the notices. See Exhibit B, p. 4-10 to Exhibit 2. They were faxed to the taxpayers' counsel on 7/28/00. It is the taxpayers' belief that the assessments were not actually made until late August. See the transcript of account at Exhibit 1.

36. Over six (6) months have elapsed since Bush filed the original claims for refund. No action on the claims for refund has been taken by Congress or any agency of the United States, or in any judicial proceeding, including any in the Tax Court of the United States.

37. Lyman Bush, individually, and The Estate of Beverly J. Bush, are the sole owners of the claims asserted herein against the Defendant and have made no assignment of said claims.

WHEREFORE, Plaintiffs Lyman F. Bush, Individually and Lyman F. Bush, Personal Representative of the Estate of Beverly J. Bush, pray for judgment against the Defendant the United States of America in the amount of $141,738.03, plus attorneys' fees, interest and costs allowed by law, and for such other and further relief as this Court may deem appropriate.

Respectfully,

Thomas E. Redding

Thomas E. Redding
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)
ATTORNEY FOR PLAINTIFFS

OF COUNSEL FOR PLAINTIFFS:
Teresa J. Womack
Sallie W. Gladney
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713)965-9244 Voice
(713)621-5227 Fax

**Department of the Treasury**
**Internal Revenue Service**
Austin, TX 73301

In reply refer to: 0644014086
March 22, 2002 LTR 387(ICP)
1040 000

REDDING & ASSOCIATES, P.C.
RE: Lyman F & Beverly J Bush
2914 WEST T.C. JESTER
HOUSTON, TX 77018-7010

Taxpayer Identification Number:

Form: 1040

Dear REDDING & ASSOCIATES, P.C.

Thank you for your inquiry dated March 07, 2002.

We have enclosed the record of accounts you requested. Please examine your records and let us know about any difference you find.

Sincerely,

Janice Carter

Janice Carter, CSD
Operations Manager 3, AMD

Enclosure(s): Record of accounts

PLAINTIFF'S EXHIBIT 1

PAGE NO-0001 IRS EMPLOYEE 0644014086

DATE REQUESTED 03-06-2002 PRINT DATE 03-06-2002

FORM NUMBER: 1040 TAX PERIOD: DEC 1985

TAXPAYER IDENTIFICATION NUMBER: [redacted]
** SPOUSE TAXPAYER IDENTIFICATION NUMBER: [redacted]

LYMAN F & BEVERLY J DECD BUSH

BODC-SB BODCLC-V

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

---- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ----

| | | |
|---|---|---|
| ACCOUNT BALANCE: | 0.00 | |
| ACCRUED INTEREST: | 0.00 | AS OF 01-01-2001 |
| ACCRUED PENALTY: | 0.00 | AS OF 01-01-2001 |
| ACCOUNT BALANCE PLUS ACCRUALS: | 0.00 | |

** EXEMPTIONS: 02 **FILING STATUS: MARRIED FILING JOINT

| | |
|---|---|
| ** ADJUSTED GROSS INCOME: | 122,637.00 |
| ** TAXABLE INCOME: | 106,245.00 |
| TAX PER RETURN: | 7,911.00 |

** PER RETURN OR AS ADJUSTED

04-15-1986 RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)
05-12-1986 PROCESSING DATE

TRANSACTIONS

| CODE | EXPLANATION | DATE | MONEY AMOUNT (IF APPLICABLE) |
|---|---|---|---|
| 150 | RETURN FILED AND TAX ASSESSED 29211105626376 | 05-12-1986 | 7,911.00 |
| 806 | CREDIT FROM WITHHELD TAXES & EXCESS FICA | 04-15-1986 | 26,453.00- |
| 846 | REFUND | 05-12-1986 | 18,542.00 |
| 977 | AMENDED RETURN FILED 29211-129-97913-7 | 04-16-1987 | 0.00 |
| 960 | RECEIVED POA/TIA | 01-22-1996 | |
| 962 | UPDATED POA/TIA | 11-02-1999 | |
| 961 | REMOVED POA/TIA | 01-17-2000 | |
| 977 | AMENDED RETURN FILED 29277-426-01682-0 | 12-31-1999 | 0.00 |
| 960 | RECEIVED POA/TIA | 02-21-2000 | |
| 670 | SUBSEQUENT PAYMENT | 03-09-1987 | 5,271.33- |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION 29247-615-08015-0 200032 | 08-21-2000 | 0.00 |
| 300 | QUICK ASSESSMENT 29251-213-13009-0 | 07-31-2000 | 16,708.00 |
| 340 | RESTRICTED INTEREST ASSESSED | 07-31-2000 | 42,660.44 |

******************************CONTINUED ON NEXT PAGE******************************

| | | | |
|---|---|---|---|
| | 200033 | | |
| 670 | SUBSEQUENT PAYMENT | 08-08-2000 | 53,323.11- |
| 340 | RESTRICTED INTEREST ASSESSED | 09-11-2000 | 95.20 |
| | 200035 | | |
| 290 | ADDITIONAL TAX ASSESSED | 09-11-2000 | 0.00 |
| | 29254-635-06724-0 200035 | | |
| 700 | OVERPAID CREDIT APPLIED | 04-17-1989 | 774.00- |
| | 1040 198812 | | |
| 670 | SUBSEQUENT PAYMENT | 10-04-2000 | 95.20- |

PAGE NO-0001 IRS EMPLOYEE 0644014086

DATE REQUESTED 03-06-2002 PRINT DATE 03-06-2002

FORM NUMBER: 1040 TAX PERIOD: DEC 1986

TAXPAYER IDENTIFICATION NUMBER: [redacted]
** SPOUSE TAXPAYER IDENTIFICATION NUMBER: [redacted]

LYMAN F & BEVERLY J DECD BUSH

BODC-SB BODCLC-V

<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>

--- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ---

ACCOUNT BALANCE: 0.00
ACCRUED INTEREST: 0.00 AS OF 01-01-2001
ACCRUED PENALTY: 0.00 AS OF 01-01-2001

ACCOUNT BALANCE
PLUS ACCRUALS: 0.00

** EXEMPTIONS: 02 **FILING STATUS: MARRIED FILING JOINT
** ADJUSTED GROSS INCOME: 181,863.00
** TAXABLE INCOME: 118,385.00
TAX PER RETURN: 34,414.00

** PER RETURN OR AS ADJUSTED

04-15-1987 RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)
07-20-1987 PROCESSING DATE

TRANSACTIONS

| CODE | EXPLANATION | DATE | MONEY AMOUNT (IF APPLICABLE) |
|---|---|---|---|
| 150 | RETURN FILED AND TAX ASSESSED 29212113406097 | 07-20-1987 | 34,414.00 |
| 806 | CREDIT FROM WITHHELD TAXES & EXCESS FICA | 04-15-1987 | 13,953.00- |
| 610 | PAYMENT WITH RETURN | 04-16-1987 | 20,461.00- |
| 960 | RECEIVED POA/TIA | 01-22-1996 | |
| 962 | UPDATED POA/TIA | 11-02-1999 | |
| 961 | REMOVED POA/TIA | 01-17-2000 | |
| 977 | AMENDED RETURN FILED 29277-426-01679-0 | 12-31-1999 | 0.00 |
| 960 | RECEIVED POA/TIA | 02-21-2000 | |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION 29247-615-08014-0 200032 | 08-21-2000 | 0.00 |
| 300 | QUICK ASSESSMENT 29251-213-13010-0 | 07-31-2000 | 10,817.00 |
| 340 | RESTRICTED INTEREST ASSESSED 200033 | 07-31-2000 | 35,187.97 |
| 670 | SUBSEQUENT PAYMENT | 08-08-2000 | 46,004.97- |

PAGE NO-0001 IRS EMPLOYEE 0644014086

DATE REQUESTED 03-06-2002 PRINT DATE 03-06-2002

FORM NUMBER: 1040 TAX PERIOD: DEC 1987

TAXPAYER IDENTIFICATION NUMBER: [redacted]
** SPOUSE TAXPAYER IDENTIFICATION NUMBER: [redacted]

LYMAN F & BEVERLY J DECD BUSH

BODC-SB BODCLC-V

<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>

---- ANY MINUS BELOW SIGNIFIES A CREDIT AMOUNT ----

| | | |
|---|---|---|
| ACCOUNT BALANCE: | 0.00 | |
| ACCRUED INTEREST: | 0.00 | AS OF 01-01-2001 |
| ACCRUED PENALTY: | 0.00 | AS OF 01-01-2001 |
| ACCOUNT BALANCE PLUS ACCRUALS: | 0.00 | |

** EXEMPTIONS: 02 **FILING STATUS: MARRIED FILING JOINT

| | |
|---|---|
| ** ADJUSTED GROSS INCOME: | 156,782.00 |
| ** TAXABLE INCOME: | 128,933.00 |
| TAX PER RETURN: | 26,913.00 |

** PER RETURN OR AS ADJUSTED

04-15-1988 RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)
07-18-1988 PROCESSING DATE

TRANSACTIONS

| CODE | EXPLANATION | DATE | MONEY AMOUNT (IF APPLICABLE) |
|---|---|---|---|
| 150 | RETURN FILED AND TAX ASSESSED 29222113058308 | 07-18-1988 | 27,626.80 |
| 610 | PAYMENT WITH RETURN | 04-15-1988 | 8,802.00- |
| 806 | CREDIT FROM WITHHELD TAXES & EXCESS FICA | 04-15-1988 | 18,184.00- |
| 170 | ESTIMATED TAX PENALTY 198827 | 07-18-1988 | 73.00 |
| 196 | INTEREST ASSESSED 198827 | 07-18-1988 | 16.67 |
| 670 | SUBSEQUENT PAYMENT | 07-29-1988 | 730.47- |
| 960 | RECEIVED POA/TIA | 01-22-1996 | |
| 962 | UPDATED POA/TIA | 11-02-1999 | |
| 961 | REMOVED POA/TIA | 01-17-2000 | |
| 977 | AMENDED RETURN FILED 29277-426-01677-0 | 12-31-1999 | 0.00 |
| 960 | RECEIVED POA/TIA | 02-21-2000 | |
| 300 | ADDITIONAL TAX ASSESSED BY EXAMINATION 29247-615-08013-0 200032 | 08-21-2000 | 0.00 |
| 300 | QUICK ASSESSMENT | 07-31-2000 | 9,635.00 |

******************************CONTINUED ON NEXT PAGE******************************

PAGE NO-0002

IRS EMPLOYEE 0644014086

| | | | |
|---|---|---|---|
| | 29251-213-13011-0 | | |
| 340 | RESTRICTED INTEREST ASSESSED | 07-31-2000 | 26,729.62 |
| | 200033 | | |
| 670 | SUBSEQUENT PAYMENT | 08-08-2000 | 36,364.62- |

Bush 503303721

# Form 1040X (Rev. November 2001)

Department of the Treasury — Internal Revenue Service

## Amended U.S. Individual Income Tax Return

▶ See separate instructions.

OMB No. 1545-0091

This return is for calendar year ▶ 1985 , or fiscal year ended ▶

| Please print or type | | |
|---|---|---|
| Your first name and initial: LYMAN F. | Last name: BUSH | Your social security number: [redacted] |
| If a joint return, spouse's first name and initial: BEVERLY J. | Last name: BUSH, DECEASED | Spouse's social security number: [redacted] |
| Home address (no. and street) or P.O. box if mail is not delivered to your home: c/o Thomas E. Redding; 2914 West T. C. Jester | Apt. no. ***(POA ATTACHED, FORM 2848)*** | Phone number: 713-965-9244 |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions.: Houston, Texas 77018-7010 *** ***ADDRESS FOR THIS MATTER ONLY*** | | For Paperwork Reduction Act Notice, see page 6. |

A If the name or address shown above is different from that shown on the original return, check here ▶ ☒

B Has the original return been changed or audited by the IRS or have you been notified that it will be? ☒ Yes ☐ No

C Filing status. Be sure to complete this line. **Note.** You cannot change from joint to separate returns after the due date.

On original return ▶ ☐ Single ☒ Married filing joint return ☐ Married filing separate return ☐ Head of household ☐ Qualifying widow(er)

On this return ▶ ☐ Single ☒ Married filing joint return ☐ Married filing separate return ☐ Head of household* ☐ Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

Use Part II on the Back to Explain any Changes

| | Line | | A. Original amount or as previously adjusted (see page 2) | B. Net change — amount of increase or (decrease) — explain in Part II | C. Correct amount |
|---|---|---|---|---|---|
| **Income and Deductions (see pages 2 - 6)** | | | | | |
| 1 | Adjusted gross income (see page 3) | 1 | | | |
| 2 | Itemized deductions or standard deduction (see page 3) | 2 | | | |
| 3 | Subtract line 2 from line 1 | 3 | | | |
| 4 | Exemptions. If changing, fill in Parts I and II on the back | 4 | | | |
| 5 | Taxable income. Subtract line 4 from line 3 | 5 | | | |
| **Tax Liability** | | | | | |
| 6 | Tax (see page 4). Method used in col. C ______ | 6 | | | |
| 7 | Credits (see page 4) | 7 | | | |
| 8 | Subtract line 7 from line 6. Enter the result but not less than zero | 8 | | | |
| 9 | Other taxes (see page 4) | 9 | | | |
| 10 | Total tax. Add lines 8 and 9 | 10 | | | |
| **Payments** | | | | | |
| 11 | Federal income tax withheld and excess social security and RRTA tax withheld. If changing, see page 4 | 11 | | | |
| 12 | Estimated tax payments, including amount applied from prior year's return | 12 | | | |
| 13 | Earned income credit (EIC) | 13 | | | |
| 14 | Additional child tax credit from Form 8812 | 14 | | | |
| 15 | Credits from Form 2439 or Form 4136 | 15 | | | |
| 16 | Amount paid with request for extension of time to file (see page 4) | 16 | | | |
| 17 | Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 24,619 |
| 18 | Total payments. Add lines 11 through 17 in column C | 18 | | | 24,619 |
| **Refund or Amount You Owe** | | | | | |
| 19 | Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | | | *Not Applicable* |
| 20 | Subtract line 19 from line 18 (see page 5) | 20 | | | *Not Applicable* |
| 21 | **Amount you owe.** If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | | | 0 |
| 22 | If line 10, column C, is less than line 20, enter the difference | 22 | | | *Not Applicable* |
| 23 | Amount of line 22 you want **refunded to you** | 23 | | | 16,708 ** |
| 24 | Amount of line 22 you want **applied to your** estimated tax | 24 | | | |

**Sign Here**

Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

▶ Lyman F Bush (signature) Your signature — Date 7-16-02

▶ Lyman F Bush, Personal Representative (signature) Spouse's signature. If a joint return, **both** must sign. Date 7-16-02

**Paid Preparer's Use Only**

Preparer's signature ▶ Brett A Thompson CPA (signature) — Date 7-4-02 — Check if self-employed ☒ — Preparer's SSN or PTIN P00097501

Firm's name (or yours if self-employed), address, and ZIP code ▶ BRETT A. THOMPSON, CPA, 20214 KINGSLAND BLVD. KATY, TX 77450 — EIN — Phone no. 713-965-9244

*****or such greater amount as is legally refundable, plus interest.***

PLAINTIFF'S EXHIBIT 2



0546

Bush 503303721

Form 1040X (Rev. 11-2001) Page 2

**Part I** **Exemptions.** See Form 1040 or 1040A instructions.

If you are **not changing your exemptions,** do not complete this part.
If claiming **more exemptions,** complete lines 25 - 31.
If claiming **fewer exemptions,** complete lines 25 - 30.

| | | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|---|
| 25 | Yourself and spouse . . . . . . . **Caution.** If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | 25 | | | |
| 26 | Your dependent children who lived with you . . . . . . | 26 | | | |
| 27 | Your dependent children who did not live with you due to divorce or separation . . . . . . | 27 | | | |
| 28 | Other dependents . . . . . . | 28 | | | |
| 29 | Total number of exemptions. Add lines 25 through 28 . . . . . . | 29 | | | |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2001 | $2,900 | $99,725 |
| 2000 | 2,800 | 96,700 |
| 1999 | 2,750 | 94,975 |
| 1998 | 2,700 | 93,400 |

31 Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name | Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|---|
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

No. of your children on line 31 who:
- lived with you . . . . . . . ▶ ☐
- did not live with you due to divorce or separation (see page 5) . . . . . ▶ ☐

Dependents on line 31 not entered above ▶ ☐

**Part II** **Explanation of Changes to Income, Deductions, and Credits**

**Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.**

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . . . . . . . . ▶ ☐

***** *Please See Explanation Attached* *****

**Part III** **Presidential Election Campaign Fund.** Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . . . . . . ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . . . . ▶ ☐

STF FED3171F.2



0547

Form **2848** (Rev. December 1997)
Department of the Treasury Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150
For IRS Use Only
Received by:
Name ____
Telephone ____
Function ____
Date

**Part I** **Power of Attorney** (Please type or print.)

**1 Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| LYMAN E & BEVERLY J BUSH<br>1217 122ND ST. CT. EAST<br>TACOMA WA 98445 | [redacted] | |
| | Daytime telephone number<br>(253) 537-7833 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| Thomas E. Redding<br>2914 West T.C. Jester<br>Houston, Texas 77018 | CAF No. [redacted]<br>Telephone No. 713/965-9244<br>Fax No. 713/621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Sallie W. Gladney<br>2914 West T.C. Jester<br>Houston, Texas 77018 | CAF No. [redacted]<br>Telephone No. 713/965-9244<br>Fax No. 713/621-5227<br>Check if new: Address ☐ Telephone No. ☐ |
| Teresa J. Womack<br>2914 West T.C. Jester<br>Houston, Texas 77018 | CAF No. [redacted]<br>Telephone No. 713/965-9244<br>Fax No. 713/621-5227<br>Check if new: Address ☐ Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 and 1065 and Partnership Items for all partnerships in which the taxpayer is a partner. | Tax periods ending: December 31, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995 |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for **Line 4 — Specific uses not recorded on CAF.**) ........ ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5 — Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes, but is not limited to, authorization to exercise the taxpayer's rights regarding partnership items and affected items and under I.R.C. Section 6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH**, refund checks, initial here LEB and list the name of that representative below.
BJJ — BY LEB AS EXECUTOR

Name of representative to receive refund check(s) ▶ Thomas E. Redding

Form 2848 (Rev. 12-97) Page 2

7 **Notices and communications.** Orig... notices and other written communications wi... sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box ▶ ☐

b If you also want the second representative listed to receive a copy of such notices and communications, check this box ▶ ☐

c If you do not want any notices or communications sent to your representative(s), check this box ▶ ☐

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here ▶ ☐
YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.

Lyman F Bush — Signature | 1-12-02 — Date | Title (if applicable)

LYMAN F BUSH — Print Name

Beverly J. Bush (DECEASED) — Signature | 1-12-02 — Date | Title (if applicable)

By LF Bush executor of estate

BEVERLY J BUSH — Print Name

**Part II** **Declaration of Representative**

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:
  - a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
  - b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  - c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  - d Officer — a bona fide officer of the taxpayer's organization.
  - e Full-Time Employee — a full-time employee of the taxpayer.
  - f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  - g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
  - h Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.

| Designation — Insert above letter (a - h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | Thomas E. Redding | 3/1/02 |
| A | Texas | Sallie W. Gladney | 3-1-02 |
| A | Texas | Teresa J. Womack | |

STF FED4675F.2

FILED
IN COUNTY CLERK'S OFFICE
A.M. SEP 29 1999 P.M.
PIERCE COUNTY, WASHINGTON
TED RUTT, COUNTY CLERK
BY ____________ DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

| | |
|---|---|
| In the Matter of the Estate of<br><br>BEVERLY J. BUSH,<br><br>Deceased. | NO. 99-4-00904-8<br><br>NOTICE OF APPOINTMENT OF PERSONAL REPRESENTATIVE AND PENDENCY OF PROBATE PROCEEDINGS |

TO: ALL HEIRS OF THE ABOVE-NAMED DECEDENT

YOU ARE HEREBY NOTIFIED THAT LYMAN F. BUSH was appointed the Personal Representative of the estate of BEVERLY J. BUSH, deceased, on the 16th day of June, 1999, and that probate proceedings thereon are now pending.

DATED this 16 day of June, 1999.

SCHWEINLER & SCHWEINLER

BY: [signature]
ROGER C. SCHWEINLER
WSB #20169

[signature]
LYMAN F. BUSH
Personal Representative

1



SCHWEINLER & SCHWEINLER
ATTORNEYS AT LAW
901 SOUTH I STREET, SUITE 102
TACOMA, WA 98405
(253) 572-4114 TACOMA
(253) 572-2954 FAX

COPY