**No. 02-1041 T**
Consolidated with 04-1598 T
(Judge Eric G. Bruggink)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

LYMAN F. BUSH, *et al.*,

PLAINTIFFS

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

# PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY BRIEF

---

THOMAS E. REDDING, Lead Attorney
SALLIE W. GLADNEY
TERESA J. WOMACK
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs
Lyman F. Bush and Lyman F. Bush,
Personal Representative for the Estate of
Beverly J. Bush

**I. <u>The Assessments Are Not Based on a Computational Adjustment and Are Void</u>.**

The government's reply brief is fundamentally flawed where it argues that: "It is thus clear that the deficiencies at issue in this case were the result of a computational adjustment." They were not. As the Federal Circuit held in *Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999):

> There are two types of affected items. The first involves a "computational adjustment," that is, a "change in the tax liability of a partner which properly reflects the treatment under [TEFRA] of a partnership item." *Id.* § 6231(a)(6). Here, "properly" can only mean "with mathematical accuracy."

Here, the tax deficiency did not result at all from a "change in the tax liability...which properly reflects the treatment under [TEFRA] of a partnership item...with mathematical accuracy." The Closing Agreement in Paragraph 1 specifically provided that there were "[n]o adjustments to the partnership items. . . ." [Plaintiff's Ex. 10].

Correct, mathematically accurate, reflection of the partnership item on the partner's tax return under the provisions of TEFRA would result in no deficiency!

The tax deficiencies were computed based on the Closing Agreements' treatment of a non-TEFRA non-partnership item, the amount "at risk" of the partner under §465. Paragraphs 1 and 6 of the Closing Agreement make clear that no partnership items, including partnership debt, are being adjusted, but that the assumption of that debt by the partners will not be taken into account to determine the amount "at risk" for the partners. [Plaintiff's Ex. 10].

This leaves us with a Closing Agreement that was only a partial settlement of the non-partnership item issues related to determining the taxpayer's tax liability for the year in question in which the taxpayer did not waive his right to a statutory notice of deficiency. It is indistinguishable from the recent Tax Court holding in *Manko v. Commissioner*, 126 T.C. 195, 204 (2006):

> We conclude that the closing agreement here, which covers specific matters only, does not absolve respondent from issuing a deficiency notice before assessing petitioners' liabilities.

and the Fourth Circuit's holding in *Singleton v. United States*, 128 F3d 833, 839 (4th Cir. 1997), that:

Because this notice was never sent, the Singletons were deprived of their opportunity to contest the tax due (as well as the mounting interest). In the absence of this vital procedural step, the IRS assessment was invalid.

## II. The Government's Arguments as to the Relevance of the Post-1986 Refund Claims Is Erroneous[1]

The government erroneously argues that the provisions of Paragraph 15 of the Closing Agreement – which provides in pertinent part that: "Any refund claim attributable to the operation of this agreement...shall be allowed as an offset pursuant to I.R.C. §§ 6402(a) and 6601(f). . . ." – are not relevant. The government's contention rests on its assertion that the Tax Court lacks jurisdiction to consider such offsets in a deficiency procedure. The government is wrong.

In considering whether or not the Tax Court had or would have exercised such jurisdiction it is important to note that while §6402(a) is on its face permissive and not mandatory ("*may* credit the amount of such overpayment"), the Closing Agreement made its application contractually mandatory ("*shall* be allowed as an offset pursuant to I.R.C. §6402(a)." [Plaintiff's Ex. 10, ¶15] Emphasis added.

This argument is at best speculative and almost certainly erroneous. The Tax Court has in *Estate of Smith v. Commissioner*, 123 T.C. 2 (2004) reviewed an IRS offset under §6402 in a tax deficiency case. It has also considered and allowed offsets under the principal of equitable recoupment. *Estate of Frank A. Branson v. Commissioner*, 113 T.C. 6 (1999), *Estate of Gordon H. Bartels v. Commissioner*, 106 T.C. 430 (1996.

Moreover, the Tax Court has jurisdiction, once a deficiency notice has been issued, to determine any overpayments of tax or interest for the same year. Clearly the taxpayers could have, after receipt of the notice of deficiency, paid the portion of the liability they believed proper, plus some additional amount, and in the deficiency proceeding raise the claim for refund of the additional overpayment

---

[1] At least now the government acknowledges its former misrepresentation that no such claims were filed.

amount based on the Paragraph 15 offset rights. §6512(b). They were deprived of any such opportunity.

The scope of the Tax Court's deficiency jurisdiction is more appropriately determined by the Tax Court and the Federal Circuit Courts to which its decisions are appealable. Issues regarding the scope of Tax Court jurisdiction, especially related to subjects such as its authority over offset claims and certain equitable remedies is highly complex and, it appears, in somewhat a state of evolution. See, *e.g*. the extensive discussions in *Estate of Smith.*

Whether or not the Tax Court would have or should have taken into account the offset rights under Paragraph 15 of the Closing Agreement we will never know, because the government deprived these taxpayers of their right to a statutory notice of deficiency.

**III. The Government's Substantive Arguments as to the Post-1986 Refund Claims Are Erroneous**

Although the merits of the post-1986 Paragraph 15 refund claims at issue in this case are not germane to the determination of the summary judgment motions before the Court, the government has attempted to discredit those claims in order to argue they were irrelevant. Plaintiff reserves his right to more fully and appropriately argue the merits of those claims, filed under Paragraph 15 of the Closing Agreement, when, and if, they become the focus of this case. Plaintiff notes that those claims will be conceded by Plaintiff if he prevails on his refund claims that are the focus of these motions for summary judgment (the claims based on the deficiency assessments being void), the Plaintiff will concede the Paragraph 15 claims as moot. (It is not his intention to assert he can avoid the liability on the invalid assessments and still pursue the Paragraph 15 claims.)

However, in order to at least refute the government's arguments that they are meritless, Plaintiff's propound the following preliminary arguments:

**A. Investment Tax Credit Paragraph 15 Claims**

The government argues that the portion of the Paragraph 15 claims seeking refunds based on the suspended investment tax credit available as the §465 amount "at risk" is increased are not allowable based on its interpretation of §49. This is patently wrong. Code §49, of the current code, was enacted by P.L. 99-514 §211(a) and applies only to property placed in service after December 31, 1985. It has also been through several subsequent amendments. Even if it applied, it does not limit the "at risk" subsequent year adjustments as claimed.

A brief summary, for the years in issue, of the rules regarding investment tax credits suspended under the at risk rules may be found in the 1984 Master Tax Guide published by Commerce Clearing House, Inc.

> The at-risk investment credit rules are generally the same as the at-risk rules for losses under Code Sec. 465(b) (except for Code Sec. 465(b)(5), which deals with amounts at risk in subsequent years) (see ¶353).
>
> . . . . .
>
> If, at the close of a tax year after the year in which the property is placed in service, the taxpayer's amount at risk increases, such increase is considered additional qualified investment in such property in the year first placed in service. However, any credit increase must be taken in the year of the increase (Code Sec. 46(c)(8)).
>
> 1984 Master Tax Guide, ¶1181A, Commerce Clearing House, Inc. (1984).

The deferred investment tax credits claimed in the Paragraph 15 claims should be allowed as claimed. The Plaintiff will argue this more fully if and when those claims become the focus of this case.

**B. The Government's Argument That the Passive Activity Rules of §469 Apply to Prohibit Some, or Some Portions of, the Paragraph 15 Claims Is Erroneous**

The governments's argument that the passive activity rules of §469 limit or preclude some of the Plaintiff's Paragraph 15 claims is erroneous. The government is correct that §469 is not specifically addressed in the Closing Agreements. However, it is made inapplicable by Paragraph 6, which

specifically provides in pertinent part that:

> Any losses disallowed under this agreement are suspended under I.R.C. § 465. such suspended losses may be used to offset the taxpayers' pro rata share of any income earned by the partnership and/or other income in accordance with the operation of I.R.C. § 465.

It specifically provided that the suspended losses "*may* be used to offset the taxpayers'...*other income* in accordance with the operation of I.R.C. § 465." [Emphasis added.] This provision was to ensure the deduction would be allowed in the year it became available because of the increase in the amount at risk.

Additionally, the §469 rules are complex and Plaintiff does not agree with the government's analysis of their limiting impact on each year, even if they are applicable. Furthermore, any disallowed losses based on §469 would become deductible on termination of the partnerships in 1995 and should at the least increase the 1995 refunds.

Again, each of these arguments will be more fully developed if and when the Paragraph 15 claims become the focus of this case.

**C. The Government's Representation That the Plaintiff Has Conceded Certain of the Paragraph 15 Claims Is Misstated**

The government has asserted that certain of the Paragraph 15 claims were erroneous because of the reference to "cash contributions to the capital of the partnership after 1986...."

> Plaintiffs' 1995 claim was based on its contention that it was entitled to deduct additional losses because of an additional capital contribution reflected on their 1995 K-1s from the partnerships. (Px. 28, at 467-469.) However, since that capital contribution was not a cash contribution, pursuant to paragraph 7 of the Closing Agreements there was no increase of the plaintiffs' at risk amount. Therefore, there were no additional losses that plaintiffs could deduct in 1995, and there was nothing to carryback to 1992 and 1993. (Px. 28, at 378, 499.) Thus, there were no refunds attributable to the operation of the closing agreement for 1992, 1993 and 1995.

The government's argument is in error for several reasons:

1. The Closing Agreements did not restrict the at risk adjustments to only those addressed in Paragraphs 7, 8, and 9. Paragraph 6 provided generally that: "Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used...in accordance with § 465." Paragraphs 7, 8 and 9 address specific events that could have been questionable as to their effect on an amount "at risk" because of other language in the Closing Agreement.
2. The Closing Agreements specifically provide in Paragraph 1 that there shall be no change to partnership items through 1995. [Plaintiff's Ex.10 and 11 at bates pp. 0149 and 0152]
3. Each of the Partnerships' 1995 K-1s, attached to the 1995 claim explanation, reflect large capital contributions in 1995. [Plaintiff's Ex. 28 at bates pp. 0355-0362]
4. The capital contributions to a partnership are by statute and regulation partnership items. §6231(a)(3); Treas. Reg. §301.6231(a)(3)-1(a)(4)(i).

The Plaintiff's legal argument would be that the IRS can now no more challenge those capital contributions than the taxpayers can go back and re-argue that the original deductions claimed by the partnerships should be allowed in full and their assumption of debt fully recognized. Either of these positions by the government or the Plaintiff is precluded by the binding nature of the Closing Agreement, whether they now agree or not.

Furthermore, the *entire* grounds for the 1995 claims (and any carryback claims) is not predicated only on the "at risk" increase for the reported capital contributions, therefore the government's blanket disavowal of the 1995 (and carryback) claims is overstated.

To the limited extent that the 1995 (and carryback) claims *are* based on the reported capital contribution "at risk" increase, the issue is moot, because Plaintiff has agreed not to pursue those

claims *to the extent they are solely based on the capital contribution reported for 1995*, but not to the extent based on other factors, such as any losses the government contends were deferred under the passive loss rules of §469, or due to 1995 partnership income.

The government's presentation of that argument has forced this unnecessary response to a moot point. The Plaintiff agreed to make this limited concession solely to avoid the costs of addressing this limited issue, which has now been at least partially forced on him *and*, because he has been unable to determine the actual provenance of that capital contribution as reported on the K-1s and has chosen not to pursue an issue with respect to which he may be legally correct but which morally may not be justified. (The source and nature of that capital contribution remains unknown, but is not supportable as a cash contribution made directly by the Plaintiff in 1995. It may have been a "plug" number inserted by the accountants, or could conceivably even represent cash or other property injected into the partnerships by the general partners or others on behalf of the partners. The source is unknown and the Plaintiff has elected not to pursue that portion of the claims, which should have rendered the issue moot, even though the IRS is contractually bound to not challenge the capital contributions.)

## IV. Conclusion

The IRS was required by law to issue a statutory notice of deficiency and failed to do so, making the assessments void. The Plaintiff's refund claims based on these grounds should be granted. Whether or not the Tax Court would have had or exercised jurisdiction over the offset claims is at best speculative and not really directly relevant to whether a notice of deficiency was required. The government's arguments regarding the merits of the Paragraph 15 claims is premature and irrelevant

to the motions before the Court. Plaintiff's motion for summary judgment should be granted.

Respectfully submitted,

August 3, 2007

/s/ Thomas E. Redding

Thomas E. Redding, Attorney of Record
Sallie W. Gladney
REDDING & ASSOCIATES, P.C.
P.O. Box 924328
Houston, Texas 77292-4328
(713) 965-9244
(713) 621-5227 Fax
Attorneys for Plaintiffs
Lyman F. Bush and Lyman F. Bush as
Personal Representative for the Estate of Beverly J. Bush