# 𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 ℭ𝔩𝔞𝔦𝔪𝔰

Nos. 02-1041T and 04-1598T (consolidated)
(Filed: August 17, 2007)

```
* * * * * * * * * * * * * * * * * * * * * *
LYMAN F. BUSH, et al.,
                                              Partnership Tax; Tax
               Plaintiffs,                    Equity and Fiscal
                                              Responsibility Act, 26
v.                                            U.S.C. §§ 6221-6233;
                                              Statutory Notice of
THE UNITED STATES,                            Deficiency.

               Defendant.
* * * * * * * * * * * * * * * * * * * * * *
```

*Thomas E. Redding*, Houston, TX, with whom were *Sallie W. Gladney*, and *Teresa J. Womack*, for plaintiffs.

*Benjamin C. King, Jr.*, United States Department of Justice, Tax Division, Washington, DC, with whom were *Mary M. Abate,* Assistant Chief, *David Gustafson*, Chief, and *Eileen J. O'Connor*, Assistant Attorney General, for defendant.

_____

OPINION

_____

BRUGGINK, *Judge*.

This case is one of approximately thirty tax refund suits brought by partners of various partnerships marketed by the Greenberg Brothers Partnership. In an order issued on October 24, 2005, the court selected two of these Greenberg-related cases, Case No. 02-1041T (*Bush*) and Case No. 02-1042T (*Shelton*), for briefing and representative resolution.[1]

---

[1] Case No. 02-1041T was consolidated with Case No. 04-1598T and Case No. 02-1042T with Case No. 04-1595T. The remaining Greenberg-related cases were stayed. Contemporaneously herewith, the court is filing an
(continued...)

Plaintiffs Lyman F. Bush and Beverly J. Bush, deceased and represented by Lyman F. Bush as personal representative for the estate of Beverly J. Bush, have moved for summary judgment with regard to a portion of their claims. In this pending summary judgment motion, plaintiffs claim that post-settlement assessments for tax years 1985, 1986 and 1987, made by the Internal Revenue Service ("IRS"), were invalid because a statutory notice of deficiency was not issued prior to the assessments. Defendant has cross-moved. The matter is fully briefed. Oral argument was heard on August 8, 2007. For reasons set out below, we deny plaintiffs' motion and grant defendant's cross-motion for partial summary judgment.

BACKGROUND

Plaintiffs were limited partners in the Greenberg Brothers Partnership #12, Lone Wolf McQuade ("LWM"), for tax years 1983 to 1995. Plaintiffs were also limited partners in the Greenberg Brothers Partnership Cinema '84 ("Cinema '84") for tax years 1984 to 1995. On July 8, 1991, the IRS issued Notices of Final Partnership Administrative Adjustment ("FPAA") for tax years 1983, 1984, 1985 and 1986 to the then Tax Matters Partner ("TMP") for LWM. In the FPAA, the IRS explained its determination disallowing deductions reported on the LWM partnership's 1983-1986 partnership returns. On October 15, 1991, the IRS issued FPAAs for Cinema '84's 1985-1989 tax years, disallowing deductions reported on the partnership returns for those tax years.

The TMP filed separate petitions on behalf of LWM and Cinema '84 in the United States Tax Court on October 7, 1991 and January 8, 1992, respectively, challenging the IRS's proposed adjustments for each partnership. On December 2, 1994, plaintiffs filed a notice of election to participate in the Tax Court proceeding involving Cinema '84. On February 8, 1995, plaintiffs filed a notice of election to participate in the Tax Court proceeding involving LWM.

---

[1](...continued)
order dealing with the *Shelton* case (Case Nos. 02-1042T and 02-1595T, consolidated), in which plaintiff's motion for summary judgment is denied for reasons identical to those set out in this opinion.

2

On August 7, 1999, while the proceedings involving the two partnerships were pending in the Tax Court, plaintiffs and the IRS entered into two separate Form 906 Closing Agreements on Final Determination Covering Specific Matters ("Closing Agreements"), settling matters with respect to LWM and Cinema '84. The two Closing Agreements were substantially the same. Subsequently, on September 1, 2000, the Tax Court dismissed plaintiffs as parties in both the LWM and Cinema '84 partnership proceedings.[2]

The Closing Agreements provided in relevant part:

1. No adjustment to the partnership items shall be made for the taxable years 1983 through 1995 [for LWM; for Cinema '84, 1984-1995] for purposes of this settlement.

2. The taxpayers are entitled to claim their distributive share of the partnership losses for 1983 through 1995 [for LWM; for Cinema '84, 1984-1995] only to the extent they are at risk under I.R.C. § 465.

3. The taxpayers' amount at risk for 1983 through 1986 [for LWM; for Cinema '84, 1984-1989] is their capital contribution to the partnership.

4. The taxpayers' capital contribution to the partnership is $50,000.

5. Taxpayers' qualified investment for computing investment tax credit is the amount at risk as set forth in paragraph #4.

6. The taxpayers are not at risk under I.R.C. § 465 for any partnership notes, entered into by the partnership to acquire rights in [motion pictures], whether or not assumed by the taxpayers. Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used to offset the taxpayers' pro rata share of any

---

[2]The Tax Court dismissed the proceedings with respect to the rest of the participants upon conclusion of partnership-level matters.

        income earned by the partnership and/or other income in accordance with the operation of I.R.C. § 465.

7.    To the extent the taxpayers make additional cash contributions to the capital of the partnership after 1986 [for LWM; for Cinema '84, 1989], the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.

8.    To the extent the partnership earns net income the taxpayers' at risk will be increased in accordance with I.R.C. § 465.

9.    To the extent the taxpayers make cash payments on the partnership notes after the date of execution of this agreement by the Commissioner and the taxpayers, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.

. . . .

15.    Any refund claim attributable to the operation of this agreement shall be deemed to be timely filed and shall be allowed if it is filed with the IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue. Any refund claim so submitted pursuant to this paragraph within 120 days after the execution of this agreement on behalf of the Commissioner of Internal Revenue shall be allowed as an offset pursuant to I.R.C. §§ 6402(a) and 6601(f) against any tax deficiencies resulting from this agreement.

Closing Agreements (Aug. 7, 1999).[3]

    On November 23, 1999, plaintiffs filed refund claims with the IRS for tax years 1988, 1990, 1991, 1992, 1993, and 1995. While these refund claims were still pending, on July 12, 2000, the IRS issued Forms 4549A-CG, notices

---

[3] The Closing Agreements for LWM and Cinema '84 are substantively the same. The factual differences are noted in brackets.

of adjustment, showing adjustments it made to plaintiffs' 1985, 1986 and 1987 tax years. In plaintiffs' tax year 1983, the IRS allowed losses from LWM in the amount of $50,000.00 using up the entire amount at-risk available under paragraph 4 of the Closing Agreement for LWM. In plaintiffs' tax year 1984, losses from Cinema '84 in the amount of $45,187.00 were allowed, using up the bulk of the § 465 amount available for that partnership.

In the original return for tax year 1985, plaintiffs had reported losses for LWM in the amount of $33,442.00 and losses for Cinema '84 in the amount of $21,553.00. The notice of adjustment issued on July 12, 2000 for plaintiffs' 1985 tax year allowed none of the losses for LWM. This resulted in an adjustment of $33,442.00. The notice also allowed $4,813.00 of the $21,553.00 reported losses for Cinema '84. This resulted in an adjustment of $16,740.00. The notice also disallowed $2,063.00 from itemized deductions reported as contribution carryover. Plaintiffs' tax liability for 1985 was, as a result, increased by $16,708.00.

In the original return for tax year 1986, plaintiffs had reported $34,003.00 for losses from LWM and $20,079.00 for losses from Cinema '84. The notice of adjustment for plaintiffs' 1986 tax year allowed none of the losses reported for LWM, resulting in an adjustment of $34,003.00. None of the reported losses from Cinema '84 was allowed, resulting in an adjustment of $20,079.00. These adjustments resulted in an increase in plaintiffs' tax liability for 1986 of $10,817.00.

For tax year 1987, plaintiffs had reported their distributive share of income from LWM in the amount of $398.00, and losses from Cinema '84 in the amount of $25,733.00. The notice of adjustment for plaintiffs' 1987 tax year increased plaintiffs' at-risk amount by $398.00 pursuant to paragraph 8 of the Closing Agreements. The notice disallowed $25,733.00, all of the losses they claimed for Cinema '84. These adjustments resulted in an additional tax liability in the amount of $9,635.00 for 1987.

On July 31, 2000,[4] the IRS made the assessments. For plaintiffs' 1985 tax year, the IRS assessed $16,708.00 in tax and $42,660.44 in interest. For plaintiffs' 1986 tax year, the IRS assessed $10,817.00 in tax and $46,004.97 in interest. For plaintiffs' 1987 tax year, the IRS assessed $9,635.00 in tax and $26,729.62 in interest. No notice of deficiency was issued prior to these assessments. On August 8, 2000, plaintiffs paid the assessed tax and interest for the 1985-1987 tax years.

On August 23, 2000, the IRS denied the refund claims filed by plaintiffs for tax years 1990, 1992, 1993 and 1995. On August 23, 2002, plaintiffs filed a complaint in this court seeking a refund of tax and interest they paid for tax years 1988, 1990, 1991, 1992, 1993 and 1995 (Case No. 02-1041T).

On July 18, 2002, plaintiffs filed a second round of refund claims for tax and interest for tax years 1985, 1986 and 1987 assessed by the IRS in the July 12, 2000 issuance. When the IRS denied the refund claims on October 23, 2002, plaintiffs filed a refund suit here on October 25, 2004 (Case No. 04-1598T). This case was later consolidated with Case No. 02-1041T, filed by plaintiffs on August 23, 2002, claiming refunds for the later tax years.

Plaintiffs filed the present motion for summary judgment on December 29, 2006, claiming that the IRS improperly assessed tax deficiencies without issuing a prior statutory notice of deficiency and that they are entitled to a refund of the tax and interest paid for tax years 1985 through 1987. The other tax years in the suit are not at issue in the present motions. Defendant has cross-moved and claims that no statutory notice of deficiency was required and that the assessments were properly made.

DISCUSSION

The resolution of these cross-motions turns on whether the IRS was required to issue a statutory notice of deficiency prior to its assessments following the Closing Agreements with plaintiffs. Plaintiffs argue that the assessments for tax years 1985, 1986 and 1987 are invalid because a statutory notice of deficiency

---

[4] Plaintiffs note that they are not conceding July 31, 2000 as the actual date of assessment and are using the date only for purposes of the present motion. Plaintiffs further state that they plan to challenge the date of assessment if their motion is not granted.

was not issued prior to the assessments. Plaintiffs contend that the assessments arose from adjustments to plaintiffs' at-risk amount, which is an "affected item" requiring a factual determination at the individual partner level.[5/] Because a statutory notice of deficiency is required for assessing factual-affected items, and because none was issued, plaintiffs claim that the assessments are invalid. They also argue that these cannot be re-assessed because the statute of limitations for assessments has run, hence they are entitled to a refund.

Defendant concedes that no notice of deficiency was issued but counters that one was not required because the assessments entailed only stipulated computational adjustments made pursuant to the Closing Agreements. Resolving this issue requires an understanding of the statutory scheme governing partnership taxation, the Tax Equity and Fiscal Responsibility Act ("TEFRA") as codified in 26 U.S.C. §§ 6221-6233 (2000).

A partnership does not pay tax as an entity. *See id.* § 701; *Olson v. United States*, 172 F.3d 1311, 1316 (Fed. Cir. 1999) ("*Olson II*"); *AD Global Fund, LLC v. United States*, 67 Fed Cl. 657, 660 (2005), *aff'd*, 481 F.3d 1351 (Fed. Cir. 2007). Instead, it files an annual information return reporting items of income, deduction, and credit. *See* 26 U.S.C. § 6031; *Conway v. United States*, 50 Fed. Cl. 273, 276 (2001). Then, individual partners report their distributive shares of a partnership's income and deductions on their personal tax returns. *Olson II*, 172 F.3d at 1317. These items on the personal tax returns are referred to as "partnership items" and defined as "any item[s] required to be taken into account for the partnership's taxable year . . . [that are] more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). Partners must report those partnership items in their individual tax returns consistently with the partnership return. *Id*. § 6222(a); *Olson II*, 172 F.3d at 1316.

In order to conduct an audit on these partnership items and determine partnership tax liability, the IRS is required, by TEFRA, to conduct a single proceeding at the partnership level in which every partner has a right to participate. *See* 26 U.S.C. §§ 6221, 6224(a). The IRS is required to give notice of the beginning of partnership-level proceedings to all partners whose names and addresses are known to the IRS. *See id.* § 6223(a)(1); *Callaway v. Comm'r*, 231 F.3d 106, 109 (2d Cir. 2000). Such a notice must be mailed at least one hundred and twenty days before a notice of an FPAA is issued to the TMP.

---

[5]See discussion of "affected items" and "factual determinations," *infra*.

*See* 26 U.S.C. § 6223(d)(1). Individual partners can opt out of the partnership proceedings by settling with the IRS. *See id*. § 6224 (c); *Olson II*, 172 F.3d at 1317. Upon completion of partnership-level proceedings, the IRS issues an FPAA to the TMP and to each partner. *See* 26 U.S.C. §§ 6223(a), 6223(d)(2), 6231(a)(7). The IRS may assess individual partners with tax attributable to their distributive share of the adjusted partnership items as a computational adjustment, and without prior issuance of a notice of deficiency. *See id*. §§ 6225(a), 6230(a)(1), 6231(a)(6); *Callaway*, 231 F.3d at 109-110.

In general, the limitations period for assessing an individual's tax liability is three years from the date of filing of a tax return for a given tax year. 26 U.S.C. § 6501(a). The limitations period for tax attributable to partnership items, however, does not expire prior to three years from the date on which the partnership return for the taxable year was filed. *See id*. § 6229(a); *AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1354 (Fed. Cir. 2007). Moreover, the mailing of an FPAA suspends the running of the statute of limitations for up to one year and one hundred and fifty days. *See* 26 U.S.C. § 6229(d). Once an FPAA is issued, the TMP then has ninety days to file a petition for readjustment either at the Tax Court, a district court or this court. *See id*. § 6226(a). If the TMP does not file a petition within the prescribed time period, other partners may file a petition within the next sixty days. *See id*. § 6226(b)(1).

Once a petition is filed, no assessment on the partnership tax liability can be made until the resolution of the claim. *See id*. § 6225(a)(2). If no petition is filed before the expiration of the 150-day period from the date a notice of an FPAA is mailed to the TMP, then the IRS may assess a deficiency. *See id*. § 6225(a)(1). Once an assessment is made, a refund suit is generally not allowed for a refund attributable to partnership items. *See id*. § 7422(h).

As for those items that are not partnership items on a partner's individual tax return, the IRS determines deficiencies in tax for such items pursuant to the "standard" procedures set forth in 26 U.S.C. §§ 6211-6216. *Olson II*, 172 F.3d at 1317. Any item which is not, or is not treated as, a partnership item is a non-partnership item. *See* 26 U.S.C. § 6231(a)(4). Certain non-partnership items, however, are "affected by a partnership item," and are accordingly termed "affected items." *Id*. § 6231(a)(5). For example, the amount of a medical expense deduction is an affected item because it depends on the partner's adjusted gross income, which in turn depends on the partner's share of partnership income or loss. *See N.C.F. Energy Partners*, 89 T.C. at 744. The amount a partner

has at-risk in a partnership is also an affected item. 26 C.F.R. § 301.6231(a)(5)-1(c)(2006).

Affected items are then further divided into those that require a factual determination specific to an individual partner and those which do not. *Olson II*, 172 F.3d at 1317; *N.C.F. Energy Partners v. Comm'r*, 89 T.C. 741, 744 (1987). Those affected items requiring factual determinations are generally subject to the notice requirement. *See* 26 U.S.C. § 6230(a)(2)(A)(i); *Olson II*, 172 F.3d at 1317; *Woody v. Comm'r*, 95 T.C. 193, 202 (1990). Factual determinations which trigger the notice of deficiency requirement involve an individual examination into the correctness of declared figures or the individual's state of mind at the time of filing. *See Olson II*, 172 F.3d at 1318. To assess a deficiency attributable to that item, the IRS must issue a notice of deficiency prior to assessment. *Id.* Once the IRS mails a notice of deficiency to the taxpayer, the taxpayer may file a petition with the Tax Court within ninety days from the mailing of the notice. *See* 26 U.S.C. § 6213(a). If a petition is filed with the Tax Court, no assessment can be made until a final decision is rendered by the Tax Court. *See id*. § 6213(a); *Olson II*, 172 F.3d at 1317.

Adjustments attributable to those affected items which do not require partner-level factual determinations are not subject to a notice of deficiency requirement. *See Woody*, 95 T.C. at 202; *N.C.F. Energy Partners*, 89 T.C. at 744; *Maxwell v. Comm'r*, 87 T.C. 783, 792, n.7 (1986). Also, "a settlement is usually applied to a partner by means of a computational adjustment and not under the ordinary deficiency and refund procedures." *Bob Hamric Chevrolet, Inc. v. United States*, 849 F. Supp. 500, 510 (W.D. Tex. 1994). *See* 26 U.S.C. § 6230(a)(2)(A)(ii) & (c); *Harris v. Comm'r*, 99 T.C. 121, 126 (1992); *Powell v. Comm'r*, 96 T.C. 707, 712 (1991).

The parties are in agreement that the deficiencies assessed here were attributable to the plaintiffs' at-risk amounts (i.e., affected items). They disagree, however, on what type of affected items they are. Plaintiffs assert that case law affirmatively establishes that a partner's amount at-risk under § 465 is *per se* a substantive affected item (i.e., an affected item requiring factual determinations at the partner level). As support, plaintiffs cite 26 C.F.R. § 301.6231(a)(5)-1(c), as well as *Cinema '84 v. Comm'r*, 294 F.3d 432, 436 (2d Cir. 2002), *Greenberg Bros. P'ship #4 v. Comm'r*, 111 T.C. 198, 201-202 (1998), *Hambrose Leasing 1984-5 Ltd. Partnership v. Comm'r*, 99 T.C. 298, 312 (1992), *Roberts v. Comm'r*, 94 T.C. 853, 861 (1990), and *N.C.F. Energy Partners*, 89 T.C. 741. Plaintiffs specifically point to *Cinema '84* and *Greenberg Brothers Partnership #4* as "specifically recogniz[ing] that the amount at risk with respect

to Cinema '84 is a nonpartnership, substantive affect[ed] item." Pls.' Mot. for Summ. J. at 11.

26 C.F.R. § 301.6231(a)(5)-1(c) states that "[t]he application of the at-risk limitation under section 465 to a partner with respect to a loss incurred by a partnership is an affected item to the extent it is not a partnership item." This section does not deal with the specific question here, namely, whether such item is one requiring factual determination or is a mere computational adjustment. Furthermore, as defendant correctly points out, none of the cases plaintiffs cite support plaintiffs' contention that the at-risk amount is, by its very nature, an affected item requiring factual determinations and, hence, a notice of deficiency. Rather, these cases merely state a general rule that the determination of a partner's amount at-risk is not a partnership item but an affected item. *See Cinema '84*, 294 F.3d at 436; *Greenberg Bros. P'ship #4*, 111 T.C. at 201-202; *Hambrose Leasing,* 99 T.C. at 312; *Roberts*, 94 T.C. at 861; *N.C.F. Energy Partners*, 89 T.C. 741. Instead, as defendant argues, the Federal Circuit's decision in *Olson* is most closely on point.[6]

In *Olson v. United States*, 37 Fed. Cl. 727 (1997) ("*Olson I*"), a claimed tax credit was invalidated in a partnership-level determination and the IRS assessed the distributive share of the invalidated credit claimed as carrybacks and carryforwards against individual partners. The partners filed suit in this court claiming the assessments were illegal because the IRS did not first issue a notice of deficiency. Finding the disputed assessments to be mere computational adjustments, the court held that the IRS assessments were valid. *See Olson I*, 37 Fed. Cl. at 735-37.

On appeal, the Federal Circuit affirmed, concluding that the assessment "entailed nothing more than reviewing the taxpayers' returns for the years in question, striking out the tax credits that had been improperly claimed, and re-

---

[6]Defendant further claims that cases have held that a notice of deficiency is not required prior to an assessment resulting from a settlement agreement, citing *Olson II*, 172 F.3d 1311, *Cummings v. Comm'r*, T.C. Memo. 1996-282 (1996) and *Bob Hamrick Chevrolet,* 849 F.Supp. at 512. While this may be true when applying a settlement agreement involving only computational adjustments, a notice of deficiency is still required where further factual determinations are necessary. *See Bob Hamrick Chevrolet,* 849 F.Supp. at 510.

summing the remaining figures." *Olson II*, 172 F.3d at 1318. The court added that even if the computation required the IRS to ask the taxpayer for a figure or the source of a figure, the adjustment would still be computational. *See id*. Because the central question of fact, the amount of tax credits improperly claimed, had already been stipulated in a settlement agreement between the partners and the IRS, the application of the stipulated fact to the tax returns involved only a computational adjustment. *See id*.

The present situation is indistinguishable. No non-computational determination is required to fix any tax deficiency attributable to the plaintiffs' amount at-risk for the years at issue in the cross-motions. In paragraphs 2 through 9 of the Closing Agreements, plaintiffs and the IRS stipulated to plaintiffs' at-risk amount as well as how it may be increased. Plaintiffs and the IRS agreed in paragraph 3 that the source of plaintiffs' amount at-risk for tax years 1983 through 1986 for LWM and 1984 through 1989 for Cinema '84, was their capital contribution to the partnership. In paragraph 4, the Closing Agreements show that plaintiffs and the IRS stipulated that the exact amount of this source, capital contribution, was $50,000.00. For LWM, the IRS allowed losses in the amount of $50,000.00 in 1983. Plaintiffs, therefore, had no remaining at-risk allowance with respect to LWM for subsequent years unless it was increased pursuant to paragraphs 7, 8 and 9 of the Closing Agreements. As a result, plaintiffs' reported losses for LWM in 1985 in the amount of $33,442 were entirely disallowed.

With respect to Cinema '84, because the IRS allowed losses of $45,187 in plaintiffs' tax year 1984, it allowed the remainder from $50,000, or, $4,813, as at-risk allowance in tax year 1985. The adjustment of tax liability and interest was then made accordingly.

Likewise, for tax year 1986, because plaintiffs' at-risk amounts were not increased, the IRS simply disallowed all of the reported losses from both LWM and Cinema '84. The tax liability and interest were adjusted accordingly.

For tax year 1987, there was income from LWM – plaintiffs' distributive share being $398.00. According to paragraph 8 of the Closing Agreement, plaintiffs' at-risk amount was increased by $398.00 and the adjustment was made accordingly. There was no income from Cinema '84 and therefore the IRS disallowed all of the reported losses. The resulting tax liability and interest were adjusted accordingly. It is undisputed that plaintiffs are not entitled to any other adjustment to their at-risk amount for any reason allowed in the Closing Agreements, at least for the three years that are at issue.

All of these adjustments were made without the need for any further information from plaintiffs. The numbers were available from plaintiffs' tax returns, and the IRS merely had to apply the terms of the Closing Agreements to these numbers through a computation.

At oral argument, plaintiffs conceded that the assessments at issue could be determined by computation only. Plaintiffs contend, however, that, in this particular situation, the assessment does not meet the definition of a "computational adjustment" provided in the statute:

> The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

26 U.S.C. § 6231(a)(6). Plaintiffs claim that, because there was no adjustment made to any partnership items in the deficiency assessments and, therefore, that the assessments were not the result of an adjustment in partnership items, there was no "computational adjustment" within the meaning of the statute. Because what occurred does not meet the definition of a computational adjustment, according to plaintiffs, the assessments had to be addressed through a notice of deficiency. We disagree.

The definitions in 26 U.S.C. § 6231 are provided "[f]or purposes of [subchapter C, Tax Treatment of Partnership Items]," as is clear from the phrase, "under this subchapter," in the language quoted above. *Id*. § 6231(a). Deficiency proceedings for non-partnership items are addressed in subchapter B. Coordination between subchapters B and C is addressed in subchapter C, § 6230:

> (a)   Coordination with deficiency proceedings.--
>
>    (1)   In general.--Except as provided in paragraph (2) or (3), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.
>
>    (2)   Deficiency proceedings to apply in certain cases.--

>   (A)   Subchapter B shall apply to any deficiency attributable to--
>
>         (i)    affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items), or
>
>         (ii)   items which have become nonpartnership items (other than by reason of section 6231(b)(1)(C)) and are described in section 6231(e)(1)(B).

*Id*. § 6230. Under paragraph (a)(1), assessments resulting from determinations of partnership items are made through computational adjustments and do not require a notice of deficiency. Under paragraph (a)(2), affected items requiring partner-level determinations are specifically made subject to subchapter B deficiency proceedings. Courts have interpreted this provision to mean that, when dealing with affected items, the deficiency proceedings apply, and, therefore, a notice of deficiency is required, but only when the affected items are of a type that require partner-level factual determinations. *See Olson II,* 172 F.3d at 1317; *Bob Hamric Chevrolet*, 849 F.Supp. at 510; *Woody*, 95 T.C. at 202; *N.C.F. Energy Partners*, 89 T.C. at 746. In other words, a notice of deficiency is not required when assessing affected items which do not require factual determinations.

Plaintiffs, nevertheless, claim that such partner-level determinations were not only required but in fact made here. Plaintiffs appear to allege that their individual at-risk amount, rather than a partnership item, had to be re-computed in order to arrive at an assessment, and that this constitutes a partner-level determination. This is an erroneous understanding of what a partner-level determination entails.

Under TEFRA, a notice of deficiency is required when assessing "affected items which require partner level determinations." 26 U.S.C. § 6230(a)(2)(A); *see Bob Hamric Chevrolet*, 849 F.Supp. at 510. In other words, a notice of deficiency is required when uncertainty as to individual factual matters must be resolved before arriving at a figure for those affected items. *See Olson II,*

172 F.3d at 1317; *Bob Hamric Chevrolet*, 849 F.Supp. at 510; *N.C.F. Energy Partners*, 89 T.C. at 746. For example, a penalty for negligently under-reporting a partner's share of a partnership's tax liability requires factual inquiry into whether the partner's underpayment was due to negligence of that partner. *See Olson I*, 37 Fed. Cl. at 732; *Bob Hamric Chevrolet*, 849 F.Supp. at 511. In the case of a partner's at-risk amount, there could be an issue as to whether arrangements were made between the partner and third parties regarding assumption of liabilities. *Bob Hamric Chevrolet*, 849 F.Supp. at 511. Such partner-level determinations entail more than a mere mathematical calculation. *See Olson II*, 172 F.3d at 1317. Factual matters must be resolved in order to arrive at a specific figure of a given item. As discussed above, no such factual determinations were necessary here. Plaintiffs fail to point to any specific factual inquiry that would be necessary. Instead, plaintiffs offer the general assertion that a partner's at-risk amount always triggers a notice of deficiency. We disagree.

Despite *Olson*, plaintiffs claim that such an ad hoc analysis was rejected in *N.C.F. Energy Partners*, *Roberts*, *Dial U.S.A.,* and *Hambrose Leasing*, and that these at-risk amounts are, by their very nature, affected items requiring a notice of deficiency prior to assessments. All of these cases, however, are either misapplied or not on point. As defendant correctly points out, none of these cases involved a situation in which there was a settlement agreement between the partners and the IRS stipulating the critical questions of fact. In particular, in *Roberts*, the IRS did issue a notice of deficiency to make an at-risk disallowance based on certain stop-loss agreements, a factual inquiry made necessary because the extent of the amount a partner had at-risk was not determined or stipulated. In the present case, no comparable uncertainty exists. The plaintiffs' at-risk amounts in the partnerships are stipulated for each partnership. The Closing Agreements allowed the IRS to determine the at-risk amounts with no other information than what could be found in the relevant tax returns.

The rest of the cases plaintiffs cite are equally inapposite. Plaintiffs incorrectly claim that both *N.C.F. Energy Partners* and *Dial U.S.A.* noted that the affected items at issue were the type which always require a notice of deficiency prior to assessment. Rather, the Tax Court merely held that the items at issue were not partnership or "S" corporation items and that they had to be resolved through subsequent individual level proceedings. Specifically, in *N.C.F. Energy Partners*, the Tax Court explicitly stated that these items must be resolved after the partnership-level proceedings are completed "either as a matter of computational adjustment or as the subject of subsequent notices of deficiency." *Id*. at 746. In *Dial U.S.A.*, the Tax Court addressed the IRS's concern that unless

the shareholder basis, the item at issue there, was determined in an "S" corporation proceeding, the IRS would have to issue subsequent notices of deficiency. *See* 95 T.C. at 6. Rejecting that concern, the Tax Court explained that there might be situations in which the shareholder basis can be determined by a computational adjustment and there might also be situations in which factual determinations would be necessary. *See id*. Thus, contrary to plaintiffs' contention that these cases rejected an ad hoc analysis, they indeed stated that such an ad hoc analysis would be necessary once a partnership-level proceeding was completed.

It is true that, in *Hambrose Leasing,* the Tax Court disagreed with the IRS's contention that "the rationale of *Roberts* does not apply where the at-risk issue relates only to the effect of netting provisions in the agreements of the partnership." 99 T.C. at 306. Plaintiffs appear to interpret the word "agreements" in this paragraph to mean "settlement agreements." A careful reading of the relevant paragraph in *Hambrose Leasing*, however, reveals that what the Tax Court was referring to was defendant's claim that the partners' at-risk amounts could be dealt with in a partnership-level proceeding because stop-loss side agreements were formed between third parties and the partnership. Thus, the Tax Court was referring to the stop-loss agreements, not settlement agreements between the IRS and the partners. Furthermore, the Tax Court's holding that "it is the potential that the section 465 issue may depend upon such arrangements that counts," was in the context of explaining why the items were not partnership items but affected items. *Id*. at 310.

Thus, decisions in the Tax Court support what plaintiffs describe as an ad hoc analysis of affected items when determining whether a notice of deficiency is required. The Federal Circuit utilized this ad hoc methodology in *Olson II*.

Plaintiffs also maintain that paragraph 15 of the Closing Agreements, which requires the IRS to offset timely-filed refund claims against an assessed deficiency, necessitates partner-level determinations. Paragraph 15 of the Closing Agreements states:

> Any refund claim attributable to the operation of this agreement shall be deemed to be timely filed and shall be allowed if it is filed with the IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue. Any refund claim so submitted pursuant to this paragraph within 120 days after the execution of this agreement on behalf of the Commissioner of Internal Revenue shall be allowed as an offset pursuant to I.R.C.

15

>§§ 6402(a) and 6601(f) against any tax deficiencies resulting from this agreement.

Closing Agreements, ¶ 15. Plaintiffs claim that because they timely filed refund claims for tax years 1988 and 1990 to 1995 in accordance with the Closing Agreements, resulting refunds should have been offset against any deficiencies arising under the agreements. While conceding that these refund claims are beyond the scope of the current motions, plaintiffs maintain that the application of paragraph 15 of the Closing Agreements required a factual determination that triggers the requirement of a notice of deficiency.

The government claims that none of the bases for refund claims filed for tax years 1988, 1990-1993 and 1995 was attributable to the provisions of the Closing Agreements and therefore not applicable as an offset pursuant to paragraph 15. Furthermore, defendant contends that, even if the IRS failed to properly allow such refund claims, the deficiency assessments for unrelated tax years, 1985-1987, would not be affected, because "[a]ny overpayments in later years would only relate to the manner in which those deficiencies are satisfied, not to the amounts of the assessments themselves." Def.'s Reply at 7.

Regardless of whether these refund claims for years 1988, 1990-1993 and 1995 were properly brought pursuant to the Closing Agreements, paragraph 15 of the Closing Agreements does not have a bearing on whether a notice of deficiency was required here. As discussed above, the factual matters relevant to determine a specific figure for plaintiffs' at-risk amounts are what could prompt the notice of deficiency requirement. Paragraph 15 is an agreement between the parties to apply timely-filed refund claims as an offset against the deficiencies resulting from the Closing Agreements. In other words, paragraph 15 operates after any deficiency is determined, whether through computational adjustment or through a notice of deficiency. As we have already found, paragraphs 2 to 8 of the Closing Agreements make the determination of plaintiffs' at-risk amounts simply computational. Even if offsets had to be allowed because of the operation of paragraph 15, in other words, this would not affect the determination of the plaintiffs' at-risk amounts for the years at issue.

The statute provides for a separate course of action if plaintiffs' refund claims involves the correct application of the settlement agreements, including paragraph 15:

A partner may file a claim for refund on the grounds that –

>   (A) the Secretary erroneously computed any computational adjustment necessary –
>
>   . . . .
>   (ii) to apply to the partner a settlement . . . ,
>
>   (B) the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement . . . .

26 U.S.C. § 6230 (c). Resolution of the present motions, therefore, will not preclude the court from adjudicating the merits of these refund claims at a later point. The only issue in these cross-motions is whether, by law, a notice of deficiency was required. It was not. The assessments were, therefore, properly made.[7]

## CONCLUSION

For the reasons set forth herein, we deny plaintiffs' motion for summary judgment and grant defendant's cross-motion for partial summary judgment.

 s/ Eric Bruggink
ERIC G. BRUGGINK
Judge

---

[7] The ruling is without prejudice to plaintiffs' position regarding the date of the assessments. See footnote 4, *supra*.