IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1041, consolidated with,
No. 04-1598 T

(Judge George M. Miller)

LYMAN F. BUSH, et al.,
Plaintiffs

v.

UNITED STATES,
Defendant

**PLAINTIFFS' MOTION TO SEVER AND STAY OR,
IN THE ALTERNATIVE, FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

Pursuant to the Court's Order dated March 24, 2008, Plaintiff Lyman Bush hereby requests that these cases be severed and that Fed.Cl. 02-1041 be stayed pending the outcome on appeal of Fed.Cl. 04-1598. If not, then the Plaintiff requests, in the alternative, first, that the cases be severed and Fed.Cl. 04-1598 proceed to appeal while Fed.Cl. 02-1041 is litigated, or second, that the Court's prior opinion at *Bush, et al. v. U.S.*, 78 Fed.Cl. 76 (2007) be certified for interlocutory appeal and that appeal pursued while Fed.Cl. 02-1041 is litigated. In support the Plaintiff would show:

**1. History of Related Cases**

Plaintiff was a partner in one or more of the substantively similar Greenberg Brothers Partnerships ("the Partnerships"). Plaintiff and other partners in the Partnerships entered into settlements with the IRS on substantively similar Form 906 Closing Agreements. The relevant partners, including Plaintiff, then paid the resulting liabilities and filed claims for refund of various amounts, as applicable, based on three general bases: (i) that the IRS improperly failed to issue statutory notices of deficiency ("stat notices") before it assessed the liabilities arising from the settlements, (ii) that the IRS improperly failed to allow refunds based on "suspended losses" and tax

credits as agreed in the settlement, and (iii) that the IRS improperly failed to allow refunds for 1995 based on the agreed provision in the settlement that there would be "no changes" to partnership items. Where the IRS improperly denied the partners' refund claims the partners have filed separate suits in this Court and are represented by the same counsel:[1]

| Partner | Stat Notice Docket No. | Suspended Loss Docket No. |
|---|---|---|
| Arnold | 05-513 Stayed | |
| Bates | 04-1495 Stayed | 02-1123 |
| Bush | 04-1598 | 02-1041 |
| Cox | 05-839 Stayed | |
| Fagerland | 04-1597Stayed | |
| Flynn | 05-307 Stayed | 05-19 Stayed |
| Gamble | 05-115 Stayed | |
| Green | 06-368 Stayed | |
| Habernicht | 05-505 Stayed | 04-1596 Stayed |
| Hendryx | 04-1433 Stayed | |
| Larson | 04-1397 Stayed | 05-379 Stayed |
| Locker for Cooper | to be filed before 4-4-08 | 02-1550 |
| Mandich | 05-18 Stayed | 02-1222 |
| McCarthy | 05-190 Stayed | |
| Nelson | 05-198 Stayed | |
| Nirschl | 05-1112 Stayed | 02-1551 |
| Pannico | to be filed before 4-4-08 | 02-278 |
| Romain | 05-199 Stayed | |
| Secord | to be filed before 4-4-08 | 03-878 |
| Shelton | 04-1595 | 02-1042 |
| Wagner | 04-1599 Stayed | |
| Whitehurst | 05-1200 Stayed | 03-1616 |
| Yett | 06-347 Stayed | |

[1] Partners who filed suit based on the denial of their "no change" refund claims included those claims in the same complaint as their "suspended loss" claims. The partners who filed suit based on the denial of their "no change" refund claims have conceded that they cannot meet their burden to prove the capital contribution shown on the 1995 K-1s were cash or otherwise increased their tax basis and will therefore concede that portion of their 1995 claims, if any. The "no change" claims will be voluntarily dismissed, where they have not been already. Therefore, only the "stat notice" and "suspended loss" claims are addressed below.

All relevant partners, including Plaintiff, have filed or shortly will file "stat notice" refund suits, but only some have filed "suspended loss" or "no change" refund suits, as applicable.

**2. Resources of the Court and the Parties Would be Conserved by Severing the Two Cases at Bar and Staying Fed.Cl. 02-1041**

The cases at bar are a consolidation of the Plaintiff's "suspended loss" (Fed.Cl. 02-1041) and "stat notice" (Fed.Cl. 04-1598) suits. As to Fed.Cl. 02-1041, there are no active proceedings with regard to the issues therein. And Plaintiff has conceded that if he ultimately prevails on the stat notice issue in Fed.Cl. 04-1598 then his claims in Fed.Cl. 02-1041 become moot.[2] See Document 74-1). As to Fed.Cl. 04-1598, Plaintiff recently conceded his limitations claim (see Document 74-1) therefore, his "stat notice" claim is the only remaining issue in that case. In *Bush, supra.* this Court ruled against the Plaintiff holding that no stat notice was required prior to the relevant assessments.

All of the cases listed in the table above are assigned to Judge Miller as "indirectly related cases" and most have been formally stayed. All of the "indirectly related cases" arise from and address the same factual issues. Staying, or continuing to stay, all of these cases pending the appellate review of *Bush* is appropriate because whether a stat notice was required before assessment is a "controlling question of law" and a successful appeal would likely terminate the litigation in all cases, or drastically reduce their number and scope.[3] A successful appeal of *Bush* will be binding on all of the "stat notice" cases and, where the partner also filed a "suspended loss" suit, will render those "suspended loss" suits moot. Therefore, Plaintiff believes that severing the two cases at bar

---

[2] Where they have not already done so, the other plaintiffs/partners listed in the table above, where applicable, also intend to stipulate that should they win their "stat notice" suit then their "suspended loss" suit becomes moot.

[3] *Coast Fed. Bank,* 49 Fed. Cl. at 15, quoting *U.S. v. Local 560 (I.B.T.),* 694 F.Supp. 1158, 1186 (D. N.J. 1988) ("In deciding whether to stay proceedings [pending interlocutory appeal], the court considers whether 'the ... order appealed from, if vacated, would vitiate the [] proceedings' below.").

and continuing to stay further proceedings in all of the "indirectly related cases" pending resolution the *Bush* appeal would be the most appropriate course, consistent with judicial economy.[4]

Finally, severing the cases at bar, appealing *Bush*, and continuing to stay the "indirectly related cases" would not prejudice the government because it is in the interest of all to avoid extensive proceedings if the cases may be terminated, or significantly reduced, by decision on appeal now and should the Plaintiff not succeed on appeal the "stat notice" cases will be moot and the "suspended loss" cases can then move forward.

Therefore, the Plaintiff requests that the Court sever the two cases at bar and stay the proceedings in Fed.Cl. 02-1041 until after the appellate review of *Bush* in Fed.Cl. 04-1598.

In the alternative, should the Court not stay the "suspended loss" proceedings in Fed.Cl. 02-1041, then the Plaintiff requests that the Court nonetheless sever the two cases at bar so that he may proceed with the appellate review of the *Bush* opinion as expeditiously as possible.

As a second alternative, should the Court not stay the "suspended loss" proceedings in Fed.Cl. 02-1041, and not sever the two cases at bar then the Plaintiff requests that the Court amend its opinion in *Bush* to allow him to petition for an interlocutory appeal.

**3. Alternatively, Plaintiff Requests that this Court's Prior Opinion in *Bush* be Certified for Interlocutory Appeal**

Should this Court not grant the Plaintiff's request to sever, then he requests that this Court's prior opinion in *Bush* be amended to include "a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation," thus certifying the opinion for interlocutory appeal. 28 U.S.C. §1292(d)(2). Plaintiff will then file

[4] *Coast Fed. Bank, FSB v. U.S.,* 49 Fed. Cl. 11, 15 (2001), quoting *Landis v. N. American Co.,* 299 U.S. 248, 254 (1936) ("A court has broad discretion to stay proceedings before it in the interests of 'economy of time and effort for itself, for counsel, and for litigants.' ").

his petition with the Court of Appeals for the Federal Circuit requesting that it grant such interlocutory review. 28 U.S.C. §§1292(c)(1) and 1295.

An order, or in this case an opinion, may be amended to certify it for interlocutory appeal if (i) it involves a controlling question of law; (ii) substantial ground for difference of opinion exists regarding that controlling question; and (iii) an immediate appeal may materially advance the ultimate termination of the litigation.[5] These requirements are designed to assess the relative burdens and benefits attendant to allowing an immediate appeal.[6] Specifically, in certifying a question for interlocutory appeal to the Federal Circuit, the court "may … assess the burdens and benefits of certification by considering factors such as the probability of reversal, the hardship on the parties, and *judicial proceedings avoided* by the reversal of an interlocutory ruling."[7]

The *Bush* opinion meets each of the three requirements for certification. Therefore, an interlocutory appeal of the *Bush* opinion is appropriate.

**a. *Bush* Involves a Controlling Question of Law**

Whether a stat notice was required before assessment is a "controlling question of law"[8] within the meaning of 28 U.S.C. §1292 (2006)[9] because it is the plaintiff/partner's positions that no relevant stat notices were issued by the IRS with regard to any of the "stat notice" cases and a reversal of this Court's holding in *Bush* would require granting of summary judgment in favor of the

---

5 28 U.S.C. § 1292(d)(2) (2006); *Favell v. U.S.,* 22 Cl. Ct. 132, 143 (1990).

6 *American Tel. & Tel. Co. v. U.S.*, 33 Fed. Cl. 540, 541 (1995).

7 *Vereda, Ltda. v. U.S.*, 46 Fed. Cl. 569, 570 (2000), emphasis added.

8 *See Sokaogon Gaming Enterprise Corp*. v. *Tushie-Montgomery Assocs*., 86 F.3d 656, 658-659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so").

9 *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question of law is 'controlling' if reversal of the [trial] court's order would terminate the action.").

Plaintiff here[10] and would materially affect issues remaining before the Court in multiple other cases.[11]

**b. Substantial Grounds for Difference of Opinion Exists, Concerning the Controlling Question of Law in *Bush***

Here the controlling question of law is whether a stat notice was required to be issued prior to assessment. Resolution of this controlling question is determined by whether a partner's amount at-risk under §465, an affected item under TEFRA, is properly classified as either (i) a substantive affected item (stat notice required before assessment) or (ii) a computational adjustment (stat notice not required before assessment). Before *Bush* it appeared, and it is Plaintiff's position, that it was well settled that §465 amounts at-risk were substantive affected items as to all partners because they "are all affected items of the type that *may* require findings of fact peculiar to the particular partner."[12] Courts addressing the question appeared to consistently hold that a partner's §465 amount at-risk is a substantive affected item.[13] Plaintiff argued that §465 amounts at-risk were effectively treated as a "type" or category of item under TEFRA recognized as a substantive affected item. In

---

10 16 C. Wright, A. Miller, and E. Cooper, Federal Practice & Procedure, §3930, at 423 (West Publishing Co. 2d ed. 1996) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment ... ."); Wright & Miller §3930, at 426 (Thus, a question is controlling if reversal would terminate the action or resolution of the question might "save time for the [trial] court, and time and expense for the litigants.").

11 *Pikes Peak Family Housing v. U.S.*, 40 Fed. Cl. 673, 686 (1998) (Questions are "controlling" when they "materially affect issues remaining to be decided in the trial court."); *see also U.S. v. Connolly*, 716 F.2d 882, 883 n. 1 (Fed. Cir. 1983) (noting that the language of section 1292(d)(2) is "virtually identical to 28 U.S.C. § 1292(b) (1976), which governs interlocutory review by other courts of appeals").

12 *N.C.F. Energy Partners* at 745, emphasis added.

13 *Cinema '84 v. C.I.R.,* 294 F.3d 432, 436 (2d Cir.2002), *Greenberg Bros. P'ship # 4 v. C.I.R.,* 111 T.C. 198, 201-202, 1998 WL 525708 (1998), *Hambrose Leasing 1984-5 Ltd. Partnership v. C.I.R.,* 99 T.C. 298, 312, 1992 WL 210580 (1992), *Roberts v. C.I.R.,* 94 T.C. 853, 861, 1990 WL 77203 (1990), and *Energy Partners v. C.I.R.,* 89 T.C. 741, 744, 1987 WL 45298 (1987).

*Bush* the Court held that each partner's §465 amount at-risk must be individually examined on an *ad hoc* basis to determine its status as either a substantive affected item or a computational adjustment. *Bush* at 84-85. The *Bush* Court relied on the Federal Circuit's holding in *Olson II*[14] as to carryovers to extrapolate and apply this *ad hoc* approach to §465 amounts at risk. *Olson II* at 1317-19. *Olson II* addressed only whether or not carryovers are substantive affected items. Section 465 amounts at risk were mentioned only as to a hypothetical which the Federal Circuit refused to address but as to which it specifically stated

> We cannot properly express any view as to whether any of these hypothetical situations [including §465 amounts at-risk] require non-computational determinations that would subject the assessment to the standard deficiency procedures-although *we note that at oral argument the government conceded that, if an "at risk" determination were necessary, a notice of deficiency would be required*. These expressly hypothetical situations are simply not present in the facts of this appeal and it is not our role to offer advisory opinions on hypothetical cases or controversies. *See Muskrat v. United States,* 219 U.S. 346, 361-62, 31 S.Ct. 250, 55 L.Ed. 246 (1911).
>
> *Olson II* at 1319, emphasis added.

The Federal Circuit in *Olson II* did not expressly adopt an *ad-hoc* approach to determining whether carryovers are substantive affected items or computational adjustments. Unlike §465 amounts at risk in *Bush*, prior to *Olson II* there was no established body of law holding that carryovers are substantive affected items.

Whether an item's classification as either a substantive affected item or a computational adjustment is determined by its type (carryover, §465 amount at risk, …) or on an *ad hoc* basis is an issue of first impression over which substantial grounds for difference of opinion exist.

---

14 *Olson v. U.S.,* 172 F.3d 1311, 1316 (Fed.Cir.1999) ("Olson II").

**c. Interlocutory Appeal of *Bush* Will Advance the Ultimate Termination of This and Other Litigation**

Interlocutory appeal is appropriate where, as here, resolution of the controlling question would "possibl[y] material[ly] advance the ultimate termination of the litigation. …"[15]

Here the controlling question of law is whether a stat notice was required to be issued prior to assessment. If so – if the Plaintiff prevails on the issue – then virtually all of the indirectly related cases are resolved. If not – if the Court's holdings are not reversed – then all of the "stat notice" cases are resolved and the "suspended loss" cases may proceed, with no disadvantage to the government.

WHEREFORE, Plaintiff Lyman Bush requests that these cases be severed and that Fed.Cl. 02-1041 be stayed pending the outcome on appeal of *Bush* in Fed.Cl. 04-1598. In the alternative, should the Court not stay the "suspended loss" proceedings in Fed.Cl. 02-1041, then the Plaintiff requests that the Court nonetheless sever the two cases at bar so that he may proceed with the appellate review of the *Bush* opinion as expeditiously as possible. As a second alternative, should the Court not stay the "suspended loss" proceedings in Fed.Cl. 02-1041, and not sever the two cases at bar then the Plaintiff requests that the Court amend its opinion in *Bush* to allow him to petition for an interlocutory appeal.

Respectfully submitted,

3/31/08
Date

s/Thomas E. Redding

THOMAS E. REDDING
Redding & Associates, P.C.
2914 West T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (facsimile)
Attorney for Plaintiffs

---

15 *Favell v. U.S.,* 22 Cl. Ct. 132, 143 (1990).