IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1041, consolidated with,
No. 04-1598 T

(Judge George W. Miller)

LYMAN F. BUSH, et al.,

Plaintiffs

v.

UNITED STATES,

Defendant

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO SEVER

Pursuant to the Court's March 24, 2008, Order, defendant submits the following opposition to plaintiffs' motion to sever.

BACKGROUND

The above-captioned cases are two of 36 related cases pending in this Court filed by partners in what has been referred to as the "Greenberg Brothers Partnerships." This case, and the action styled *Tommy J. Shelton v. United States*, Fed.Cl. Nos. 02-1042 and 04-1595, were selected by the parties as test cases to resolve the issues pending in all of the Greenberg partnership cases. Plaintiffs moved to consolidate the two *Bush* cases and the two *Shelton* cases,

to facilitate the resolution of all the issues in the Greenberg related cases, and the remaining cases were suspended.[1]

The parties cross-moved for partial summary judgment on the issue whether a notice of deficiency was required before the IRS could assess the additional tax and interest resulting from a settlement, memorialized in closing agreements executed by the partners and the IRS. On August 17, 2007, Judge Eric G. Bruggink granted partial summary judgment in favor of defendant, finding that no notice of deficiency was required and that the assessments were valid. *Lyman F. Bush, et al. v. United States*, 78 Fed.Cl. 76 (2007). That opinion was based upon the Federal Circuit's decision in *Olson v. United States*, 172 F.3d 1311 (Fed.Cir. 1999).

Thereafter, plaintiffs indicated their intention to litigate a factual issue--that the assessments were invalid because they were allegedly made on a date later than the assessment date recorded on the Certificate of Assessments and Payments, after the statute of limitations on assessment had expired. Plaintiffs possessed no evidence to rebut the presumption of the correctness of the assessment date recorded on the Certificate of Assessments and Payments. Nonetheless, defendant submitted to plaintiffs' counsel a declaration of an Internal Revenue Service official that explained the assessment process and established the correctness of the recorded date (and thus the timeliness of the assessment). Plaintiffs have now conceded that issue. (P. Motion at 5.) In addition, plaintiffs have now conceded another issue raised in their claims for refund–*i.e.*, an issue that was based on the "no change" provision (paragraph 1) of the closing agreements executed by the IRS and the partners. (P. Motion at 2, n.1.)

---

[1] Plaintiffs acknowledge that the disposition of all of the issues in the test cases will govern the disposition of those issues in all of the other suspended cases.

## THE ONE ISSUE REMAINING IN THESE CASES

Plaintiffs' motion states that there is now only one issue raised in the claims for refund that remains to be resolved by the Court in the above-captioned consolidated cases, and in the other 34 related cases. The plaintiffs identify that issue as the "suspended loss" issue. (P. Motion at 1-2 and n.1.) The "suspended loss" issue relates to plaintiffs' claims that they are entitled to deduct additional losses and investment tax credits in 1995, based on the additional capital contribution reported on the Forms K-1 issued to them by the partnerships in that year. (P. Motion at 2, n.1.)

In our status report filed March 19, 2008, defendant indicated that additional discovery might be required to resolve the remaining issues in this case. The contemplated discovery would have established whether the additional capital contribution reported on the Form K-1 issued plaintiffs by each partnership in 1995 was a *cash* contribution or merely a book entry. If the individual partners did not make cash contributions in 1995, under the terms of the closing agreement the capital contribution reported on 1995 Forms K-1 did not increase the amounts plaintiffs were "at risk" for purposes of § 465, and, therefore, no portion of the previously deferred ("suspended") losses could be deducted in 1995.

In their motion to sever, plaintiffs now concede that they cannot prove that the contribution was a cash contribution. (P. Motion at 2, n.1.) Thus any potential dispute of material fact on that issue has now been eliminated from the case. Plaintiffs contend instead that the closing agreement does not preclude the deduction of "suspended" losses or tax credits in

1995. This is a legal issue involving the interpretation of the closing agreements.[2] As such it can easily be resolved by cross-motions for partial summary judgment without the need for further discovery.

---

[2]The "suspended loss" issue is related to the operation of the "at risk" rules in Code § 465, which permits a taxpayer to deduct losses and credits from an investment in a partnership only to the extent he or she is "at risk" with respect to that investment. To the extent the losses or credits exceed the at risk amount, they cannot be deducted in that year. Those losses are deferred ("suspended") and can be deducted in a future year in the event the "at risk" amount is increased. Pursuant to paragraphs 4 and 5 of the closing agreements, plaintiffs' amount at risk with regard to each of the partnerships at issue was set at $50,000.00. (Defendant's Exhibits 1, 2 (exhibits hereinafter cited as "Dx").) Paragraph 7 of the closing agreements provides that the plaintiffs' amount at risk will be increased to the extent plaintiffs make additional *cash* capital contributions to the partnership. (Dx. 1, 2.) Paragraph 8 provides that the at risk amount will be increased to the extent the partnership reports income for any year. (Dx. 1, 2.)

The IRS allowed plaintiffs to deduct losses previously suspended under § 465 in each of the years the partnerships reported income. The IRS also allowed plaintiffs the investment tax credits they were entitled to in the years prior to the suit years. Since plaintiffs made no additional qualified investment during the suit years they were not entitled to any additional investment tax credits. The "suspended loss" issue thus relates solely to plaintiffs' 1995 claim for refund, in which plaintiffs assert that they are entitled to deduct losses previously suspended pursuant to § 465 to the extent of the $96,987 capital contribution reported on the K-1 issued by Lone Wolf McQuade Associates and the $87,442.00 capital contribution reported on the K-1 issued by Cinema 84 in that year. (Dx. 3,4.) However, in their motion to sever, plaintiffs' concede that they cannot prove that those capital contributions were *cash* contributions. (P. Motion at fn. 1.) Therefore, pursuant to paragraph 8 of the closing agreements, those capital contributions do not increase the plaintiffs' amount at risk, and plaintiffs are not entitled to deduct any § 465 suspended losses in 1995.

Plaintiffs' refund claim at issue in case number 02-1041, for their 1995 tax year, states that plaintiffs are entitled to the claimed refund under the provisions of paragraph 15 of the closing agreements. (Dx. 5.) That paragraph provided that the IRS would allow any refund claim attributable to the *operation of the closing agreement* if such claim is filed within one year of the execution of the agreement. (Dx. 1, 2.) Since the capital contributions reported on the Forms K-1 issued to plaintiffs by the Lone Wolf McQuade and Cinema 84 partnerships were not *cash* contributions, the closing agreement precludes any refund based on those contributions. Therefore, the 1995 refund claim was not "attributable to the operation of the closing agreement," and paragraph 15 is inapplicable to that claim.

PLAINTIFFS' PENDING MOTION SHOULD BE DENIED

Plaintiffs' pending motion asks the Court to sever case number 02-1041 from case number 04-1598, to allow an appeal of the later case to the Court of Appeals for the Federal Circuit.[3] (P. Motion at 3.) Alternatively, plaintiffs ask the Court to certify the August 17, 2007, decision for interlocutory appeal. Plaintiffs also ask that all proceedings in case number 02-1041, and in the other 34 related cases, be suspended until after the appeal of case number 04-1598 is completed. (P. Motion at 3.) Defendant submits that (as discussed above) the one remaining issue, the "suspended loss" issue, is purely a legal issue that can be promptly resolved at this time, allowing all matters to proceed on appeal to the Federal Circuit at one time, thereby eliminating the probability of two appeals and the significant delay that would be occasioned by a second appeal. Resolving the remaining legal issue at this time would result in a much more expeditious resolution of this case, and of the other 34 related cases, many of which have been pending for over six years. Finally, plaintiffs' motion for certification of the August 17, 2007, decision for interlocutory appeal should be denied because the requirements for certification are not present in this case.

1. *The resources of both the Court and the parties will be squandered, and resolution of all of the issues will be delayed, if the motion is granted*

Defendant opposes plaintiffs' motion because delaying resolution of the "suspended loss" issue would only further delay resolution of this case and the 34 related cases. Further, severing case number 04-1598 to allow an appeal to the Federal Circuit, while delaying resolution of the

[3]Although the plaintiffs in both cases are the same, according to plaintiffs' chart (Motion at 2), case number 02-1041 involves only the "suspended loss" issue, and case number 04-1598 involves only the statutory notice issue.

other cases, would increase, not reduce, the expenditure of judicial resources and cost to the parties. It also would require a second appeal to finally resolve all of these related matters, only further delaying the ultimate resolution of this case and the 34 related cases.

The only scenario under which plaintiffs' proposed procedure might reduce the time and expense needed to resolve all 36 cases is a remote possibility at best. That is, it would require that the Federal Circuit reverse Judge Bruggink's August 17, 2007, opinion that was based on his factual determination that this case is indistinguishable from *Olson v. United States*, 172 F.3d 1311 (Fed.Cir. 1999). *Olson* held that a notice of deficiency was not required before the IRS could assess additional tax resulting from a settlement of a TEFRA partnership case. *Bush*, 78 Fed. Cl. at 82; *Olson*, 172 F.3d at 1318. As noted in Judge Bruggink's opinion, there is no judicial precedent that is on point that compels another result. *Bush*, 78 Fed.Cl. at 84-85.

It is thus far more likely that the Federal Circuit would affirm the August 17, 2007, decision in this case. In that event, the procedure proposed by plaintiffs would increase the time and expense required to resolve this case and the other 34 related cases. Severing case number 02-1041, and suspending it and the other 34 related cases while plaintiffs appeal case number 04-1598, would delay resolution of the "suspended loss" issue by several years, because in the likely event the Federal Circuit *affirms* Judge Bruggink's decision, this Court will then have to proceed to decide the "suspended loss" issue. Once that issue is decided, it is likely that the losing party will then appeal that decision. This second appeal would not only waste judicial resources, it would delay disposition of this case and the other 34 related cases by several more years.

Defendant submits that the only remaining issue in this case can be resolved at this time, without any significant additional expenditure of resources. As noted above, the "suspended loss" issue is a legal issue based on the interpretation of the closing agreement executed by plaintiffs and the IRS. That legal dispute can easily be resolved by dispositive cross-motions in a matter of months. Resolving all issues at this time will allow all issues to be appealed at one time, thereby preventing the prospect of two appeals and shortening by several years the period required for ultimate disposition of these already aged cases.

2. *Plaintiffs' alternative request for certification does not satisfy the criteria established by this Court and the Federal Circuit*

In the event this Court does not grant plaintiffs' motion to sever case number 02-1041 from case number 04-1598, plaintiffs move the Court to certify the August 17, 2007, decision for interlocutory appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(d). (P. Motion at 4.) Interlocutory appeals "are reserved for 'exceptional' or 'rare' cases and should be authorized only with 'great care' so as to avoid unnecessary piecemeal litigation." *Klamath Irrigation Dist. v. United States*, 69 Fed.Cl. 160, 161-62 (2005); *see also*, *Jaynes v. United States*, 69 Fed.Cl. 450, 460 (2006); *Scholl v. United States*, 68 Fed.Cl. 58, 61 (2005); *Favell v. United States*, 22 Cl.Ct. 132, 144 (1992).

One of the factors to be considered in deciding whether an interlocutory order should be certified for appeal under 28 U.S.C. § 1292 is the probability that the order will be reversed by the Federal Circuit. *Vereda, Ltda. v. United States*, 46 Fed.Cl. 569, 570 (2000). In order to certify an interlocutory order for appeal there must be a "substantial ground for difference of opinion." 28 U.S.C. § 1292(d)(2). A substantial ground for difference of opinion is most often manifested by a split between Circuit Courts of Appeal, or, at the very least, a split between

decisions of this Court. *Klamath*, 69 Fed.Cl. at 163. Plaintiffs can point to no countervailing opinion on the statutory notice issue in this Court,[4] and Judge Bruggink's opinion found that the only appellate jurisprudence applicable to this case is the Federal Circuit's decision in *Olson*. *Bush*, 78 Fed. Cl. at 84-85. Therefore, there is no substantial ground for a difference of opinion in this case within the meaning of 28 U.S.C. § 1292. *Cf. Salman Ranch LTD v. United States*, 100 A.F.T.R.2d 2007-6893, 6896-97 (Fed. Cl. 2007), *petition to appeal granted*, 2008 WL 907515 (Fed. Cir. Mar. 11, 2008).

In addition, as set forth above, certifying the August 17, 2007, opinion for interlocutory appeal would not "advance the ultimate termination of this and other litigation." 28 U.S.C. § 1292(d)(2). Given the remote possibility that the Federal Circuit would reverse the August 17, 2007, opinion, certification of that decision for interlocutory appeal would not terminate this case. Since further proceedings will be required to resolve the "suspended loss" issue after the case is returned from the Federal Circuit, necessitating a second appeal, it is clear that certification is not proper in this case. *Favell*, 22 Cl.Ct. at 145; *Kalamath*, 69 Fed.Cl. at 163-64.

---

[4]Indeed, plaintiffs contend (at 6-7) that the issue resolved by the August 17, 2007, decision was a matter of first impression. Defendant submits that plaintiffs are incorrect on that point, since Judge Bruggink's opinion adopted the reasoning in the Federal Circuit's *Olson* decision, and found that the instant case is indistinguishable from *Olson.* In any event, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Klamath*.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny plaintiffs' motion and set forth a schedule for further proceedings to resolve the remaining issue in this case and the *Shelton* case.

Respectfully submitted,

s/Benjamin C. King, Jr.

BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

NATHAN J. HOCHMAN
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/Mary M. Abate
Of Counsel

April 11, 2008



3196962.1

Department of the Treasury - Internal Revenue Service

# Closing Agreement on Final Determination Covering Specific Matters

---

Under section 7121 of the Internal Revenue Code of 1986 (hereinafter "Code")

Lyman F. Bush (SSN: ) and Beverly J. Bush (SSN: )
(Taxpayers' Name, address, and identifying number)

1217 122nd Street Court East, Tacoma, WA 98445 (hereinafter referred to as taxpayer)

and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS, a dispute has arisen between the parties as to the Federal income tax treatment to be accorded to the taxpayers' purchase of an investment in Cinema 84 (hereinafter Partnership);

WHEREAS, the parties wish to determine, with finality, the taxpayers' income, gains, losses, deductions and credits for1984 and subsequent years with respect to the Partnership.

NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that:

1. No adjustment to the partnership items shall be made for the taxable years 1984 through 1995 for purposes of this settlement.

2. The taxpayers are entitled to claim their distributive share of the partnership losses for 1984 through 1995 only to the extent they are at risk under I.R.C. § 465.

3. The taxpayers' amount at risk for 1984 through 1989 is their capital contribution to the partnership.

4. The taxpayers' capital contribution to the partnership is 50,000.00.

5. Taxpayers' qualified investment for computing investment tax credit is the amount at risk as set forth in paragraph #4.

6. The taxpayers are not at risk under I.R.C. § 465 for any partnership notes, entered into by the partnership to acquire rights in the motion pictures Terminator, Perfect Strangers, Special Effects, Return of the Living Dead, A Breed Apart and Howling II, whether or not assumed by the taxpayers. Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used to offset the taxpayers' pro rata share of any income earned by the partnership and/or other income in accordance with the operation of I.R.C. § 465.

7. To the extent the taxpayers make additional cash contributions to the capital of the partnership after 1989, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.

8. To the extent the partnership earns net income the taxpayers' at risk will be increased in accordance with I.R.C. § 465.

9. To the extent the taxpayers make cash payments on the partnership notes after the date of execution of this agreement by the Commissioner and the taxpayers, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.

EXHIBIT "A"

10. No additions to tax under I.R.C. §§ 6653(a), 6661, 6659 or 6662 will be asserted with respect to the taxpayers' investment in the partnership for 1984 through 1995.

11. The taxpayers are liable for additional interest pursuant to I.R.C. § 6621(c) for tax motivated interest for their investment in the partnership for the taxable years 1984 through 1989.

12. Any deficiency in tax determined under this agreement will be subject to adjustments arising from a carryback or carryforward from other taxable years of any loss, credit or other tax attribute as allowed by the Internal Revenue Code.

13. After the execution of this agreement on behalf of the Commissioner and the taxpayers, the taxpayers shall not recognize any taxable income attributable to any cancellation, discharge, or satisfaction by foreclosure or conveyance of assets, of any partnership notes entered into by the partnership to acquire rights in the motion pictures Terminator, Perfect Strangers, Special Effects, Return of the Living Dead, A Breed Apart and Howling II, whether or not the taxpayers assumed a pro rata share of said note, or from said partnership notes upon liquidation or dissolution of the partnership.

14. The taxpayers shall be taxable on their distributive share of any income or gains of the partnership for years after 1987 only to the extent said income exceeds losses suspended under the at risk rules of I.R.C. § 465 and/or the cash and/or the fair market value of property distributed to the taxpayers.

15. Any refund claim attributable to the operation of this agreement shall be deemed to be timely filed and shall be allowed if it is filed with the IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue. Any refund claim so submitted pursuant to this paragraph within 120 days after the execution of this agreement on behalf of the Commissioner of Internal Revenue shall be allowed as an offset pursuant to I.R.C. §§ 6402(a) and 6601(f) against any tax deficiencies resulting from this agreement.

16. This agreement constitutes a settlement within the meaning of I.R.C. § 6224(c) and the taxpayers' partnership items are converted to non partnership items effective as of the date of this closing agreement is accepted on behalf of the Commissioner. The taxpayers, in accordance with the provisions of I.R.C. § 6224(b), also waive the restrictions on assessment and collection of any deficiencies attributable to the converted partnership items with interest as provided by law in I.R.C. § 6225(a) that results from this agreement.

17. This closing agreement when accepted by the Commissioner is a determination under the mitigation provisions of the Internal Revenue Code. (I.R.C. § 1311 et seq.).

18. To the extent the taxpayers make cash payments on the partnership notes, after the date this agreement is executed by the taxpayers and the Commissioner, and after the termination of the partnership, a deduction shall be allowed in the year of said payment.

19. This agreement does not in any way diminish or enhance the rights of the spouse of any partner to assert his or her right to relief as an innocent spouse under I.R.C. § 6015.

20. This agreement supersedes any prior agreement entered into between the taxpayers and the Internal Revenue Service.

This agreement is final and conclusive except:

(1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

(2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions notwithstanding any other law or rule of law except Code Section 7122; and

(3) if it relates to a taxable period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

Your signature Lyman F Bush Date Signed 6-25-99

Spouse's signature (if a joint return was filed) Beverly J. Bush BY Lyman F Bush SPOUSE OF DECEASED Date Signed 6-25-99

Taxpayer's Representative ______ Date Signed ______

Taxpayer (other than individual) ______

By ______ Date Signed ______

Title ______

Commissioner of Internal Revenue

By Philip J. Rolleau Date Signed 8/2/99

Title Associate Chief

I have examined the specific matters involved and recommend the acceptance of the proposed agreement.

Bradford A. Johnson 7/22/99
(Receiving Officer) (Date)

Assistant District Counsel
(Title)

Department of the Treasury - Internal Revenue Service

RECEIVED ESU
JAN 13

## Closing Agreement on Final Determination Covering Specific Matters

---

Under section 7121 of the Internal Revenue Code of 1986 (hereinafter "Code")

Lyman F. Bush (SSN: ) and Beverly J. Bush (SSN: )
(Taxpayers' Name, address, and identifying number)

1217 122nd Street Court East, Tacoma, WA 98445 (hereinafter referred to as taxpayer)

and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS, a dispute has arisen between the parties as to the Federal income tax treatment to be accorded to the taxpayers' purchase of an investment in Greenberg Brothers Partnership #12 a/k/a Lone Wolf McQuade Associates (hereinafter Partnership);

WHEREAS, the parties wish to determine, with finality, the taxpayers' income, gains, losses, deductions and credits for1983 and subsequent years with respect to the Partnership.

NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that:

1. No adjustment to the partnership items shall be made for the taxable years 1983 through 1995 for purposes of this settlement.

2. The taxpayers are entitled to claim their distributive share of the partnership losses for 1983 through 1995 only to the extent they are at risk under I.R.C. § 465.

3. The taxpayers' amount at risk for 1983 through 1986 is their capital contribution to the partnership.

4. The taxpayers' capital contribution to the partnership is $50,000.

5. Taxpayers' qualified investment for computing investment tax credit is the amount at risk as set forth in paragraph #4.

6. The taxpayers are not at risk under I.R.C. § 465 for any partnership notes, entered into by the partnership to acquire rights in the motion picture Lone Wolf McQuade and Strange Invaders, whether or not assumed by the taxpayers. Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used to offset the taxpayers' pro rata share of any income earned by the partnership and/or other income in accordance with the operation of I.R.C. § 465.

7. To the extent the taxpayers make additional cash contributions to the capital of the partnership after 1986, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.

8. To the extent the partnership earns net income the taxpayers' at risk will be increased in accordance with I.R.C. § 465.

9. To the extent the taxpayers make cash payments on the partnership notes after the date of execution of this agreement by the Commissioner and the taxpayers, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.

10. No additions to tax under I.R.C. §§ 6653(a), 6661, 6659 or 6662 will be asserted with respect to the taxpayers' investment in the partnership for 1983 through 1995.

11. The taxpayers are liable for additional interest pursuant to I.R.C. § 6621(c) for tax motivated interest for their investment in the partnership for the taxable years 1983 through 1989.

12. Any deficiency in tax determined under this agreement will be subject to adjustments arising from a carryback or carryforward from other taxable years of any loss, credit or other tax attribute as allowed by the Internal Revenue Code.

13. After the execution of this agreement on behalf of the Commissioner and the taxpayers, the taxpayers shall not recognize any taxable income attributable to any cancellation, discharge, or satisfaction by foreclosure or conveyance of assets, of any partnership notes entered into by the partnership to acquire rights in the motion picture Lone Wolf McQuade and Strange Invaders, whether or not the taxpayers assumed a pro rata share of said note, or from said partnership notes upon liquidation or dissolution of the partnership.

14. The taxpayers shall be taxable on their distributive share of any income or gains of the partnership for years after 1983 only to the extent said income exceeds losses suspended under the at risk rules of I.R.C. § 465 and/or the cash and/or the fair market value of property distributed to the taxpayers.

15. Any refund claim attributable to the operation of this agreement shall be deemed to be timely filed and shall be allowed if it is filed with the IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue. Any refund claim so submitted pursuant to this paragraph within 120 days after the execution of this agreement on behalf of the Commissioner of Internal Revenue shall be allowed as an offset pursuant to I.R.C. §§ 6402(a) and 6601(f) against any tax deficiencies resulting from this agreement.

16. This agreement constitutes a settlement within the meaning of I.R.C. § 6224(c) and the taxpayers' partnership items are converted to non partnership items effective as of the date of this closing agreement is accepted on behalf of the Commissioner. The taxpayers, in accordance with the provisions of I.R.C. § 6224(b), also waive the restrictions on assessment and collection of any deficiencies attributable to the converted partnership items with interest as provided by law in I.R.C. § 6225(a) that results from this agreement.

17. This closing agreement when accepted by the Commissioner is a determination under the mitigation provisions of the Internal Revenue Code. (I.R.C. § 1311 et seq.).

18. To the extent the taxpayers make cash payments on the partnership notes, after the date this agreement is executed by the taxpayers and the Commissioner, and after the termination of the partnership, a deduction shall be allowed in the year of said payment.

19. This agreement does not in any way diminish or enhance the rights of the spouse of any partner to assert his or her right to relief as an innocent spouse under I.R.C. § 6015.

20. This agreement supersedes any prior agreement entered into between the taxpayers and the Internal Revenue Service.

This agreement is final and conclusive except:

(1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

(2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions notwithstanding any other law or rule of law except Code Section 7122; and

(3) if it relates to a taxable period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

Your signature Lyman F Bush Date Signed 6-25-99

Spouse's signature (if a joint return was filed) Beverly J. Bush by Lyman F Bush SPOUSE ARE DECEASED Date Signed 6-25-99

Taxpayer's Representative ____________ Date Signed ____________

Taxpayer (other than individual) ____________

By ____________ Date Signed ____________

Title ____________

Commissioner of Internal Revenue

By Philip J. Dolcimo Date Signed 8/1/99

Title Associate Chief

I have examined the specific matters involved and recommend the acceptance of the proposed agreement.

Bradford A. Johnson 7/22/99

(Receiving Officer) (Date)

Assistant District Counsel

(Title)

SCHEDULE K-1 (Form 1065)
Department of the Treasury Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, etc.

▶ See separate instructions

For calendar year 1995 or tax year beginning and ending

OMB No. 1545-0099
**1995**

Partner's identifying number ▶
Partner's name, address, and ZIP code

LYMAN & BEVERLY BUSH
1217 122ND ST COURT E
TACOMA WA 98445

Partnership's identifying number ▶
Partnership's name, address, and ZIP code

LONE WOLF MCQUADE ASSOCIATES
11 EAST 26 STREET
NEW YORK, NY 10010

A This partner is a ☐ general partner ☒ limited partner ☐ limited liability company member
B What type of entity is this partner? ▶ INDIVIDUAL
C Is this partner a ☒ domestic or a ☐ foreign partner?
D Enter partner's percentage of:

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | % | 1.5806% |
| Loss sharing | % | 1.5806% |
| Ownership of capital | % | % |

E IRS Center where partnership filed return: HOLTSVILLE, NY

F Partner's share of liabilities (see instructions):
Nonrecourse $
Qualified nonrecourse financing $
Other $
G Tax shelter registration number ▶
H Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) ☐
I Check applicable boxes: (1) ☒ Final K-1 (2) ☐ Amended K-1

J **Analysis of partner's capital account:**

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| <103,828.> | 96,987. | 6,599. | ( <242.>) | 0. |

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| Income (Loss) | 1 | Ordinary income (loss) from trade or business activities | 1 | 10,219. | See pages 6 and 8 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | 2 | Net income (loss) from rental real estate activities | 2 | | |
| | 3 | Net income (loss) from other rental activities | 3 | | |
| | 4 | Portfolio income (loss): | | | |
| | a | Interest | 4a | 15. | Sch. B, Part I, line 1 |
| | b | Dividends | 4b | | Sch. B, Part II, line 5 |
| | c | Royalties | 4c | | Sch. E, Part I, line 4 |
| | d | Net short-term capital gain (loss) | 4d | | Sch. D, line 5, col. (f) or (g) |
| | e | Net long-term capital gain (loss) | 4e | | Sch. D, line 13, col. (f) or (g) |
| | f | Other portfolio income (loss) | 4f | | Enter on applicable line of your return. |
| | 5 | Guaranteed payments to partner | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 | Net gain (loss) under section 1231 (other than due to casualty or theft) | 6 | | |
| | 7 | Other income (loss) | 7 | | Enter on applicable line of your return. |
| Deductions | 8 | Charitable contributions | 8 | | Sch. A, line 15 or 16 |
| | 9 | Section 179 expense deduction | 9 | | See page 7 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 | Deductions related to portfolio income | 10 | | |
| | 11 | Other deductions | 11 | | |
| Investment Interest | 12a | Interest expense on investment debts | 12a | | Form 4952, line 1 |
| | b | (1) Investment income included on lines 4a, 4b, 4c and 4f above | b(1) | 15. | See page 7 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | | (2) Investment expenses included on line 10 above | b(2) | | |
| Credits | 13a | Low-income housing credit: | | | |
| | | (1) From section 42(j)(5) partnerships for property placed in service before 1990 | a(1) | | Form 8586, line 5 |
| | | (2) Other than on line 13a(1) for property placed in service before 1990 | a(2) | | |
| | | (3) From section 42(j)(5) partnerships for property placed in service after 1989 | a(3) | | |
| | | (4) Other than on line 13a(3) for property placed in service after 1989 | a(4) | | |
| | b | Qualified rehabilitation expenditures related to rental real estate activities (see instructions) | 13b | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c | Credits (other than credits shown on line 13a and 13b) related to rental real estate activities | 13c | | |
| | d | Credits related to other rental activities | 13d | | |
| | 14 | Other credits | | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065. EXHIBIT "B" Cat. No. 94R Schedule K-1 (Form 1065) 1995

Schedule K-1 (Form 1065) (1995) Page 2

| Section | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Self-employment | 15 a Net earnings (loss) from self-employment | 15a | | Sch. SE, Section A or B |
| | b Gross farming or fishing income | 15b | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Gross nonfarm income | 15c | | |
| Adjustments and Tax Preference Items | 16 a Depreciation adjustment on property placed in service after 1986 | 16a | | See page 8 and 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | b Adjusted gain or loss | 16b | | |
| | c Depletion (other than oil and gas) | 16c | | |
| | d (1) Gross income from oil, gas, and geothermal properties | d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | d(2) | | |
| | e Other adjustments and tax preference items | 16e | | |
| Foreign Taxes | 17 a Type of income ▶ | | | Form 1116, check boxes |
| | b Name of foreign country or U.S. possession ▶ | | | |
| | c Total gross income from sources outside the U.S. (attach schedule) | 17c | | Form 1116, Part I |
| | d Total applicable deductions and losses (attach schedule) | 17d | | |
| | e Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued | 17e | | Form 1116, Part II |
| | f Reduction in taxes available for credit (attach schedule) | 17f | | Form 1116, Part III |
| | g Other foreign tax information (attach schedule) | 17g | | See Instructions for Form 1116 |
| Other | 18 Section 59(e)(2) expenditures: a Type ▶ | | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | b Amount | 18b | | |
| | 19 Tax-exempt interest income | 19 | | Form 1040, line 8b |
| | 20 Other tax-exempt income | 20 | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | 21 Nondeductible expenses SEE SCHEDULE 10 | 21 | 3,635. | |
| | 22 Distributions of money (cash and marketable securities) | 22 | | |
| | 23 Distributions of property other than money | 23 | <243.> | |
| | 24 Recapture of low-income housing credit: | | | |
| | a From section 42(j)(5) partnerships | 24a | | Form 8611, line 8 |
| | b Other than on line 24a | 24b | | |

**Supplemental Information**

25 Supplemental information required to be reported separately to each partner (attach additional schedules if more space is needed):

LONE WOLF MCQUADE ASSOCIATES

SCHEDULE K-1 - NONDEDUCTIBLE EXPENSE — SCHEDULE 10

| DESCRIPTION | AMOUNT |
|---|---|
| SYNDICATION EXPENSE | 3635. |
| TOTAL TO SCHEDULE K1 LINE 21 | 3635. |

Ch 24/9/9

STRAUSS & COMAS, P.C.
462 SEVENTH AVENUE
NEW YORK, NY 10018

LYMAN & BEVERLY BUSH
1217 122ND ST COURT E
TACOMA WA 98445

LONE WOLF MCQUADE ASSOCIATES

Dear Partner:

The required partnership income tax returns have been filed for the period indicated. Please refer to the enclosed Schedule(s) K-1 for your distributive share of partnership income (or loss) and other tax information needed to complete your 1995 individual tax forms.

Analysis of Capital Account

| | | |
|---|---|---|
| Beginning Capital | | (103,828) |
| Capital Contributed | 96,987 | |
| Net Income | 6,599 | 103,586 |
| | | (242) |
| Withdrawals/Distributions | (242) | |
| Net Loss | 0 | 242 |
| Ending Capital | | 0 |

Sincerely,

STRAUSS & COMAS, P.C.

44 03/26/96

2D

SCHEDULE K-1 (Form 1065)
Department of the Treasury Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, etc.

▶ See separate instructions

OMB No. 1545-0099

**1995**

For calendar year 1995 or tax year beginning ____ and ending ____

**Partner's identifying number** ▶

Partner's name, address, and ZIP code

LYMAN BUSH
1217 122ND ST COURT E
TACOMA WA 98445

**Partnership's identifying number** ▶

Partnership's name, address, and ZIP code

CINEMA 84-REGISTRATION NO 84272000294
11 EAST 26TH STREET
NEW YORK, NY 10010

A This partner is a ☐ general partner ☒ limited partner ☐ limited liability company member

B What type of entity is this partner? ▶ INDIVIDUAL

C Is this partner a ☒ domestic or a ☐ foreign partner?

D Enter partner's percentage of:

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | % | .4083% |
| Loss sharing | % | .4083% |
| Ownership of capital | % | % |

E IRS Center where partnership filed return: HOLTSVILLE, NY

F Partner's share of liabilities (see instructions):
Nonrecourse $
Qualified nonrecourse financing $
Other $

G Tax shelter registration number ▶ 84272000294

H Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) ☐

I Check applicable boxes: (1) ☒ Final K-1 (2) ☐ Amended K-1

J **Analysis of partner's capital account:**

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| <83,917.> | 87,442. | <1,401.> | ( 2,124.) | 0. |

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| INCOME / LOSS | 1 | Ordinary income (loss) from trade or business activities | 1 | <1,416.> | See pages 5 and 8 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | 2 | Net income (loss) from rental real estate activities | 2 | | |
| | 3 | Net income (loss) from other rental activities | 3 | | |
| | 4 | Portfolio income (loss): | | | |
| | a | Interest | 4a | 15. | Sch. B, Part I, line 1 |
| | b | Dividends | 4b | | Sch. B, Part II, line 5 |
| | c | Royalties | 4c | | Sch. E, Part I, line 4 |
| | d | Net short-term capital gain (loss) | 4d | | Sch. D, line 5, col. (f) or (g) |
| | e | Net long-term capital gain (loss) | 4e | | Sch. D, line 13, col. (f) or (g) |
| | f | Other portfolio income (loss) | 4f | | Enter on applicable line of your return. |
| | 5 | Guaranteed payments to partner | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 | Net gain (loss) under section 1231 (other than due to casualty or theft) | 6 | | |
| | 7 | Other income (loss) | 7 | | Enter on applicable line of your return. |
| DEDUCTIONS | 8 | Charitable contributions | 8 | | Sch. A, line 15 or 16 |
| | 9 | Section 179 expense deduction | 9 | | See page 7 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 | Deductions related to portfolio income | 10 | | |
| | 11 | Other deductions | 11 | | |
| Investment Interest | 12a | Interest expense on investment debts | 12a | | Form 4952, line 1 |
| | b | (1) Investment income included on lines 4a, 4b, 4c and 4f above | b(1) | 15. | See page 7 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | | (2) Investment expenses included on line 10 above | b(2) | | |
| CREDITS | 13a | Low-income housing credit: | | | |
| | | (1) From section 42(j)(5) partnerships for property placed in service before 1990 | a(1) | | Form 8586, line 5 |
| | | (2) Other than on line 13a(1) for property placed in service before 1990 | a(2) | | |
| | | (3) From section 42(j)(5) partnerships for property placed in service after 1989 | a(3) | | |
| | | (4) Other than on line 13a(3) for property placed in service after 1989 | a(4) | | |
| | b | Qualified rehabilitation expenditures related to rental real estate activities (see instructions) | 13b | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c | Credits (other than credits shown on line 13a and 13b) related to rental real estate activities | 13c | | |
| | d | Credits related to other rental activities | 13d | | |
| | 14 | Other credits | 14 | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065. Cat. No. 11394R Schedule K-1 (Form 1065) 1995

Schedule K-1 (Form 1065) (1995) Page 2

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| Self-employment | 15 a | Net earnings (loss) from self-employment | 15a | | Sch. SE, Section A or B |
| | b | Gross farming or fishing income | 15b | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c | Gross nonfarm income | 15c | | |
| Adjustments and Tax Preference Items | 16 a | Depreciation adjustment on property placed in service after 1986 | 16a | | See page 8 and 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | b | Adjusted gain or loss | 16b | | |
| | c | Depletion (other than oil and gas) | 16c | | |
| | d | (1) Gross income from oil, gas, and geothermal properties | d(1) | | |
| | | (2) Deductions allocable to oil, gas, and geothermal properties | d(2) | | |
| | e | Other adjustments and tax preference items | 16e | | |
| Foreign Taxes | 17 a | Type of income ▶ | | | Form 1116, check boxes |
| | b | Name of foreign country or U.S. possession ▶ | | | |
| | c | Total gross income from sources outside the U.S. (attach schedule) | 17c | | Form 1116, Part I |
| | d | Total applicable deductions and losses (attach schedule) | 17d | | |
| | e | Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued | 17e | | Form 1116, Part II |
| | f | Reduction in taxes available for credit (attach schedule) | 17f | | Form 1116, Part III |
| | g | Other foreign tax information (attach schedule) | 17g | | See Instructions for Form 1116 |
| Other | 18 | Section 59(e)(2) exenditures: a Type ▶ | | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | b | Amount | 18b | | |
| | 19 | Tax-exempt interest income | 19 | | Form 1040, line 8b |
| | 20 | Other tax-exempt income | 20 | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) |
| | 21 | Nondeductible expenses | 21 | | |
| | 22 | Distributions of money (cash and marketable securities) | 22 | 2,124. | |
| | 23 | Distributions of property other than money | 23 | | |
| | 24 | Recapture of low-income housing credit: | | | |
| | a | From section 42(j)(5) partnerships | 24a | | Form 8611, line 8 |
| | b | Other than on line 24a | 24b | | |

**Supplemental Information**

25 Supplemental information required to be reported separately to each partner (attach additional schedules if more space is needed):

Form **8271** (Rev. March 1993) Department of the Treasury Internal Revenue Service

# Investor Reporting of Tax Shelter Registration Number

▶ Attach to your tax return

▶ If you received this form from a partnership, S corporation, or trust, see the instructions.

OMB No. 1545-0881 Expires 3-31-96

Attachment Sequence No. 71

| Investor's name(s) shown on return | Investor's identifying number | Investor's tax year ended |
|---|---|---|
| LYMAN BUSH | | 12/31/95 |

**Part I** Tax Shelter Information

| | a. Tax Shelter Name | b. Tax Shelter Registration Number (11-digit number) | c. Tax Shelter Identifying Number |
|---|---|---|---|
| 1 | CINEMA 84-REGISTRATION NO 84272000294 | 84272000294 | 11-2678807 |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |

Dr 4/11/11

STRAUSS & COMAS, P.C.
462 SEVENTH AVENUE
NEW YORK, NY 10018

LYMAN BUSH
1217 122ND ST COURT E
TACOMA WA 98445

CINEMA 84-REGISTRATION NO 84272000294

Dear Partner:

The required partnership income tax returns have been filed for the period indicated. Please refer to the enclosed Schedule(s) K-1 for your distributive share of partnership income (or loss) and other tax information needed to complete your 1995 individual tax forms.

Analysis of Capital Account

| | | |
|---|---|---|
| Beginning Capital | | (83,917) |
| Capital Contributed | 87,442 | |
| Net Income | 0 | 87,442 |
| | | 3,525 |
| Withdrawals/Distributions | 2,124 | |
| Net Loss | 1,401 | (3,525) |
| Ending Capital | | 0 |

Sincerely,

STRAUSS & COMAS, P.C.

Lyman F. and Beverly J. Bush
Form 1040X, Amended U. S. Individual Income Tax Return
SSN

***Lone Wolf McQuade Associates***

Income or (Loss) Affecting At-Risk Amounts

| | | |
|---|---|---|
| 1983 Capital Contribution as on Closing Agreement | | 50,000 |
| 1983 Loss deemed up to At-Risk Amount as on Closing Agreement | | (50,000) |
| 1984 Partnership Income or (Loss) | *Disallowed* | (36,597) |
| 1985 Partnership Income or (Loss) | *Disallowed* | (33,442) |
| 1986 Partnership Income or (Loss) | *Disallowed* | (34,003) |
| 1987 Income Used Offsetting At-Risk Amount | | 398 |
| 1988 Income Used Offsetting At-Risk Amount | | 38 |
| 1989 Partnership Income or (Loss) | | (102) |
| 1990 Income Used Offsetting At-Risk Amount | | 43 |
| 1991 Partnership Income or (Loss) | | (56) |
| 1992 Partnership Income or (Loss) | | 0 |
| 1993 Income Used Offsetting At-Risk Amount | | 5,626 |
| 1994 Income Used Offsetting At-Risk Amount | | 5,046 |
| Unused At-Risk CarryForward into 1995 | | (93,049) |

Computation of Deduction for At-Risk Losses for 1995

| | |
|---|---|
| 1995 Additional Capital Contributed from Schedule K-1 | 96,987 |
| 1995 Partner's Income from Schedule K-1 | 10,219 |
| | 107,206 |
| ** ***** *1995 Deduction At-Risk Losses Limited to At-Risk Carryforward* | *93,049* |
| Unrecovered Basis as of December 31, 1995 | 14,157 |

EXHIBIT "C"

Lyman F. and Beverly J. Bush
Form 1040X, Amended U. S. Individual Income Tax Return
SSN

***Cinema 84***

Income or (Loss) Affecting At-Risk Amounts

| | | |
|---|---|---|
| 1984 Capital Contribution as on Closing Agreement | | 50,000 |
| 1984 Income Used Offsetting At-Risk Amount | | (45,187) |
| 1985 Partnership Income or (Loss) | *Disallowed* | (21,553) |
| 1986 Partnership Income or (Loss) | *Disallowed* | (20,079) |
| 1987 Partnership Income or (Loss) | *Disallowed* | (25,733) |
| 1988 Income Used Offsetting At-Risk Amount | | 2,338 |
| 1989 Partnership Income or (Loss) | | (4,751) |
| 1990 Income Used Offsetting At-Risk Amount | | 1,459 |
| 1991 Income Used Offsetting At-Risk Amount | | 1,272 |
| 1992 Partnership Income or (Loss) | | 0 |
| 1993 Income Used Offsetting At-Risk Amount | | 4,389 |
| 1994 Income Used Offsetting At-Risk Amount | | (3) |
| Unused At-Risk CarryForward into 1995 | | (57,848) |

Computation of Deduction for At-Risk Losses for 1995

| | |
|---|---|
| 1995 Additional Capital Contributed from Schedule K-1 | 87,422 |
| 1995 Partner's Loss | (1,430) |
| | 85,992 |
| ** ***** *1995 Deduction At-Risk Losses Limited to At-Risk Carryforward* | *57,848* |
| Unrecovered Basis as of December 31, 1995 | 28,144 |

Bush 503303721

Form **1040X** (Rev. November 1998)

Department of the Treasury — Internal Revenue Service

# Amended U.S. Individual Income Tax Return

▶ See separate instructions.

OMB No. 1545-0091

**This return is for calendar year ▶ 1995, OR fiscal year ended ▶ , 19 .**

Please print or type

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| LYMAN F. | BUSH | |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| BEVERLY J. | BUSH | |
| Home address (no. and street) or P.O. box if mail is not delivered to your home: 1217 122nd Street Court East | Apt. no. | Telephone number (optional) |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions: Tacoma, Washington 98445 | | For Paperwork Reduction Act Notice, see page 6. |

NOV 24 '99 — ENVELOPE POSTMARK DATE

DEC 28 1999 — STATUTE CLEARED

A If the name or address shown above is different from that shown on the original return, check here . . . ▶ [X]

B Has the original return been changed or audited by the IRS or have you been notified that it will be? . . . [X] Yes [ ] No

C Filing status. Be sure to complete this line. **Note:** *You cannot change from joint to separate returns after the due date.*

On original return ▶ [ ] Single [X] Married filing joint return [ ] Married filing separate return [ ] Head of household [ ] Qualifying widow(er)

On this return ▶ [ ] Single [X] Married filing joint return [ ] Married filing separate return [ ] Head of household* [ ] Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

USE PART II ON THE BACK TO EXPLAIN ANY CHANGES

| | Line | A. Original amount or as previously adjusted (see page 2) | B. Net change — amount of increase or (decrease) — explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2 - 5)** | | | | |
| 1 Adjusted gross income (see page 3) | 1 | 74,240 | (161,118) | (86,878) |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | 17,508 | 5,739 | 23,247 |
| 3 Subtract line 2 from line 1 | 3 | 56,732 | (166,857) | (110,125) |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | 5,000 | 0 | 5,000 |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | 51,732 | (166,857) | (115,125) |
| **Tax Liability** | | | | |
| 6 Tax (see page 4). Method used in col. C Tax Table | 6 | 9,413 | (9,413) | 0 |
| 7 Credits (see page 4) | 7 | | 1,948 | 1,948 |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 9,413 | (9,413) | 0 |
| 9 Other taxes (see page 4) | 9 | 5,115 | 0 | 5,115 |
| 10 Total tax. Add lines 8 and 9 | 10 | 14,528 | (9,413) | 5,115 |
| **Payments** | | | | |
| 11 Federal income tax withheld and excess social security and RRTA tax withheld. If changing, see page 4 | 11 | 2,553 | 0 | 2,553 |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | 8,262 | 0 | 8,262 |
| 13 Earned income credit | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | | | |
| 15 Credits from Form 4136 or Form 2439 | 15 | | | |
| 16 Amount paid with Form 4868, 2688, or 2350 (applications for extension of time to file) | 16 | | | |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 3,713 |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | 14,528 |
| **Refund or Amount You Owe** | | | | |
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | | | |
| 20 Subtract line 19 from line 18 (see page 4) | 20 | | | 14,528 |
| 21 **AMOUNT YOU OWE.** If line 10, column C, is more than line 20, enter the difference and see page 4 | 21 | | | 0 |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | | | 9,413 |
| 23 Amount of line 22 you want **REFUNDED TO YOU** | 23 | | | 9,413 ** |
| 24 Amount of line 22 you want **APPLIED TO YOUR 19 ESTIMATED TAX** | 24 | | | |

CONSIDERED IN EXAMINATION 7/13/2000 Date — T. 218 Initials

RECEIVED NOV 29 1999 OGDEN, UT — IRS-OSC

RECEIVED — JAN 13 2000 — [SERVICE CENTER]

**Sign Here** Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

Lyman F Bush — 11-24-99 — Your signature — Date

Lyman F Bush Personal Representative of the Estate of Beverly J Bush deceased — 11-24-99 — Spouse's signature. If a joint return, BOTH must sign. Date

**Paid Preparer's Use Only**

Preparer's signature: Brett A Thompson CPA — Date 11/23/99 — Check if self-employed [X] — Preparer's social security no.

Firm's name (or yours if self-employed) and address: Brett A. Thompson, CPA, 20214 Kingsland Blvd., Katy, Texas — EIN — ZIP code 77450

*** or such greater amount as is legally refundable, plus interest.*

Form **1040X** (Rev. 11-98)

ISA STF FED3171F.1

Bush



**Part I** **Exemptions.** See Form 1040, Form 1040A, or Form 1040-T instructions.

If you are **not changing your exemptions,** do not complete this part.
If claiming **more exemptions,** complete lines 25 - 31 and, if applicable, line 32.
If claiming **fewer exemptions,** complete lines 25 - 30.

| | | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|---|
| 25 | Yourself and spouse<br>**Caution:** *If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself.* | 25 | | | |
| 26 | Your dependent children who lived with you | 26 | | | |
| 27 | Your dependent children who did not live with you due to divorce or separation | 27 | | | |
| 28 | Other dependents | 28 | | | |
| 29 | Total number of exemptions. Add lines 25 through 28 | 29 | | | |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | |

| Tax year | Exemption amount | But see page 3 if the amount on line 1 is over: |
|---|---|---|
| 1998 | $2,700 | $93,400 |
| 1997 | 2,650 | 90,900 |
| 1996 | 2,550 | 88,475 |
| 1995 | 2,500 | 86,025 |

31 Dependents (children and other) not claimed on original (or adjusted) return:
**Note:** *For tax year 1998, do not complete column (e) below. For tax years before 1998, do not complete column (d) below.*

| (a) First name | Last name | (b) Dependent's social security number. If born in the tax year you are amending, see page 5. | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) | (e) No. of months lived in your home |
|---|---|---|---|---|---|
| | | | | ☐ | |
| | | | | ☐ | |
| | | | | ☐ | |
| | | | | ☐ | |
| | | | | ☐ | |
| | | | | ☐ | |

No. of your children on line 31 who:
- lived with you ▶ ☐
- **did not** live with you due to divorce or separation (see page 5) ▶ ☐

Dependents on line 31 not entered above ▶ ☐

32 For tax year 1995, if your child listed on line 31 did not live with you but is claimed as your dependent under a pre-1985 agreement, check here ▶ ☐

**Part II** **Explanation of Changes to Income, Deductions, and Credits**

**Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.**

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 1 of the instructions. Also, check here ▶ ☐

***** *PLEASE SEE EXPLANATION ATTACHED* *****

**Part III** **Presidential Election Campaign Fund.** Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here ▶ ☐

STF FED3171F.2

Form **2848** (Rev. December 1997) Department of the Treasury Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only
Received by:
Name
Telephone
Function
Date

**Part I** **Power of Attorney** (Please type or print.)

**1 Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Lyman F. and Beverly J. Bush<br>1217 122nd Street Court East<br>Tacoma, WA 98445 | | |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| Thomas E. Redding<br>P.O. Box 924328<br>Houston, Texas 77292-4328 | CAF No.<br>Telephone No.<br>Fax No.<br>Check if new: Address ☐ Telephone No. ☐ |
| Sallie W. Gladney<br>P.O. Box 924328<br>Houston, Texas 77292-4328 | CAF No.<br>Telephone No.<br>Fax No.<br>Check if new: Address ☐ Telephone No. ☐ |
| | CAF No.<br>Telephone No.<br>Fax No.<br>Check if new: Address ☐ Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income | 1040 | Tax Periods Ending: December 31, 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994 and 1995. |
| | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. (See instruction for **Line 4 — Specific uses not recorded on CAF.**) . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see instruction for **Line 5 — Acts authorized**).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: This power includes but is not limited to authorization to exercise the taxpayer's rights under I.R.C. Section 6103(e)(1)(C) relative to Forms 1065 for partnerships in which the taxpayer(s) was a partner.

**Note:** *In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.*

**Note:** *The tax matters partner of a partnership is not permitted to authorize representatives to perform certain acts. See the instructions for more information.*

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here LFB and list the name of that representative below.

Name of representative to receive refund check(s) ▶ Thomas E. Redding

**For Paperwork Reduction and Privacy Act Notice, see the separate instructions.** Form **2848** (Rev. 12-97)

ISA
STF FED4676F.1

**7 Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box ▶ ☐

b If you also want the second representative listed to receive a copy of such notices and communications, check this box ▶ ☐

c If you do not want any notices or communications sent to your representative(s), check this box ▶ ☐

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do **not** want to revoke a prior power of attorney, check here ▶ ☒

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

Lyman F Bush — 9-30-99

Signature — Date — Title (if applicable)

Lyman F. Bush

Print Name

Lyman F Bush — 9-30-99 — EXECUTOR OF THE ESTATE OF BEVERLY J BUSH

Signature — Date — Title (if applicable)

LYMAN F. BUSH

Print Name

**Part II Declaration of Representative**

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:
  - a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
  - b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  - c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  - d Officer — a bona fide officer of the taxpayer's organization.
  - e Full-Time Employee — a full-time employee of the taxpayer.
  - f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  - g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
  - h Unenrolled Return Preparer — an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation — Insert above letter (a - h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| A | Texas | Thomas E. Redding (signed) Thomas E. Redding | 10/1/99 |
| A | Texas | Sallie W. Gladney (signed) Sallie W. Gladney | 10-1-99 |
| | | | |

STP FED4675F.2

**LYMAN F. BUSH and BEVERLY J. BUSH**
**(SSN and SSN )**
**EXPLANATION - 1995 REFUND CLAIM**

The taxpayer and the Commissioner entered into a Closing Agreement ("Agreement") on July 22, 1999 regarding the taxpayer's partnership interest in Cinema 84 and Lone Wolf McQuade Associates, copies of which are attached hereto as Exhibit "A."

This refund claim is being filed and is timely based on Paragraph 15 of the Agreement which provides that "[a]ny refund claim attributable to the operation of this agreement ***shall*** be deemed to be timely filed and ***shall*** be allowed if it is filed with the IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue."

Further, pursuant to Paragraph 15 of the Agreement, "[a]ny refund claim so submitted within 120 days of this agreement shall be allowed as an offset pursuant to I.R.C. §§6402(a) and 6601(f) against any tax deficiencies resulting from this agreement." Therefore, the refund due under this claim must be applied as an offset to the tax deficiencies arising from the settlement. The refund should be applied first to any deficiency determined for 1983 and thereafter any balance to any subsequent year deficiencies.

This refund claim results from application of the portion of the §465 suspended losses allowable in this year as a consequence of the increase in the amount at risk resulting from net partnership income reported in this year, based on Agreement Paragraph 8 and capital contributions based on Agreement Paragraph 7 as reported on the K-1 attached as Exhibit "B.".

This refund claim also results from application of the portion of the §465 suspended investment tax credits allowable in this year as a consequence of the increase in the amount at risk resulting from net partnership income reported in this year, based on Agreement Paragraph 8.

Based upon the Agreement, the suspended losses and ITC allowable in this year as a consequence of Paragraph 8 of the Agreement are determined as follows:

| | Cinema 84 | Lone Wolf McQuade |
|---|---|---|
| Increase of amount at risk due to net partnership income and capital contributions in current year per K-1 | $87,442.00 | $107,206.00 |
| Portion of losses previously suspended under §465 allowable in current year per Closing Agreement | $57,848.00 | $93,049.00 |
| Portion of ITC suspended under §465 allowable due to increase in amount at risk | $-0.00- | $1,022.00 |

***<u>Please process this claim immediately and apply the refund as an offset under §6402 as required above.</u>***

Exhibit:

A - Copy of Closing Agreement
B - Copy of K-1
C - Computation of Deduction Amounts

C:\DOCS\CORRESP.Q\REFUND.CLM\qsten169.bu1