IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1041 T, consolidated with
No. 04-1598 T

(Judge George W. Miller)

LYMAN F. BUSH, et al.,

Plaintiffs

v.

UNITED STATES,

Defendant

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RCFC 56(h)(2), defendant, the United States, submits the following proposed findings of uncontroverted fact. These proposed findings are supported by the attached Declaration of Benjamin King and exhibits Dx. 1-33.

1. The Schedule E attached to the 1998 original return filed by plaintiffs Lyman F. Bush and Beverly J. Bush (hereinafter collectively, "Bush") reported a loss for Summer Lovers in the amount of $15.00, a loss for Lone Wolf McQuade (hereinafter, "LWM") in the amount of $38.00, and income for Cinema 84 in the amount of $2,338.00. (Dx. 1.) Bush did not claim any investment tax credit for that year. (Dx. 1.)



3352912.1

2. Pursuant to the closing agreements executed with regard to the LWM and Cinema 84 partnerships, on July 12, 2000, the IRS issued a Form 4549, Notice of Adjustment, with respect to Bush's 1988 tax year. (Dx. 15.) The IRS disallowed the $38.00 loss related to LWM and allowed plaintiffs to deduct $2,338.00 in previously-disallowed losses with respect to Cinema 84. There was no adjustment of the loss related to Summer Lovers. (Dx. 15.) Bush was allowed a refund in 1988 in the amount of $774.00. (Dx. 15.)

3. On November 24, 1999, Bush filed an amended return for 1988 seeking a refund of $1,021.00. (Dx. 9.) Bush's 1988 claim asserted that he was entitled to deduct in that year $2,338.00 in previously disallowed Cinema 84 losses, the same deduction that was allowed by the IRS in its subsequent notice of adjustment for 1988. (Dx. 9, 15.) The claim also asserted that Bush was entitled to claim $234.00 in previously-disallowed investment tax credits with respect to Cinema 84. (Dx. 9.)

4. The IRS allowed Bush to deduct in the 1988 year, $2,338.00 in previously- disallowed Cinema 84 losses. (Dx. 15.) The IRS disallowed Bush's 1988 claim for additional investment tax credits, on the basis that partnership income did not increase the at risk amount for credits. (Dx. 16.)

5. Attached to Bush's original return for 1990 was a Schedule E, "Supplemental Income Schedule." (Dx. 10.) The Schedule E reported in that year a net loss from the partnerships in which Bush had invested, in the amount of $281.00. Attached to the Schedule E was a Statement 3 which itemized the income and loss reported with respect to each partnership. (Dx. 10.) Statement 3 reported income from Summer Lovers in the amount of $12,418,00, a loss for LWM in the amount of $11.00, and a net loss for Cinema 84 in the amount of $626.00. (Dx. 11.)

Bush reported income for Cinema 84 in the amount of $1,459.00, which was offset by $4,540.00 in passive losses carried forward from 1989. (Dx. 10.) Bush did not claim any investment tax credit for that year. (Dx. 10.)

6. Pursuant to the closing agreements executed with regard to the LWM and Cinema 84 partnerships, on July 12, 2000, the IRS notified Bush that the adjustments pursuant to the closing agreements resulted in no change to Bush's 1990 tax liability. (Dx. 18.)

7. On November 24, 1999, Bush filed an amended return for 1990 seeking a refund of $5,847.00. (Dx. 10.) This is the claim for refund at issue here. This claim was filed before the IRS made any adjustment to Bush's 1990 tax year pursuant to the closing agreements. Bush's 1990 claim asserted that he was entitled to deduct in that year $12,418.00 in previously-disallowed Summer Lovers losses, due to the income reported by that partnership in that year, and $1,459.00 in previously disallowed Cinema 84 losses, due to the income reported by that partnership. (Dx. 10.) The 1990 claim did not seek any refund based on previously disallowed investment tax credits. (Dx. 10.)

8. The IRS allowed Bush to deduct in the 1990 year, $1,459.00 in previously-disallowed Cinema 84 losses as a loss in 1990. (Dx. 17.)

9. The IRS disallowed Bush's 1990 claim for a deduction of previously-disallowed Summer Lovers losses, because no losses claimed with respect to that partnership were disallowed in any prior years. (Dx. 17, 19.)

10. The Summer Lovers closing agreement only covered 1982. (Dx. 6.) The IRS never adjusted Bush's 1982 return to disallow any Summer Lovers losses in that year. (Dx. 17.)

11. For the 1985 tax year Bush deducted $27,810.00 of Summer Lovers losses. (Dx. 20.) The IRS Notice of Adjustment for that year does not reflect any disallowance of those Summer Lovers losses. (Dx. 21.) Bush reported losses for Summer Lovers in 1988 and in 1992, that were also not disallowed. (Dx. 1, 3, 15, 24.)

12. Attached to Bush's original return for 1991 was a Schedule E, "Supplemental Income Schedule." (Dx. 2.) The Schedule E reported net partnership income in the amount of $1,082.00. (Dx. 2.) Attached to Schedule E is Statement 5 which provides a breakdown of income and loss for each passive activity. (Dx. 2.) Statement 5 reported income for Summer Lovers in the amount of $14,747.00, a loss for LWM in the amount of $56.00, and income for Cinema 84 in the amount of $1,272.00, which income was offset by a carryover of passive losses in the amount of $2,455.00. (Dx. 2.) Bush did not claim any investment tax credit for that year. (Dx. 2.)

13. Pursuant to the closing agreements executed with regard to the LWM and Cinema 84 partnerships, on July 12, 2000, the IRS notified Bush that the adjustments pursuant to the closing agreements resulted in no change to Bush's 1991 tax liability. (Dx. 22.) Since there was no change to Bush's 1991 tax liability, no Form 4549 notice of adjustment was issued for that year. On his original 1991 return, Bush reported $1,272,00 in income for Cinema 84, which was offset by a passive loss carry over in the amount of $2,455.00. (Dx. 2.) Therefore, allowing Bush to deduct the $1,272.00 of previously-disallowed Cinema 84 losses, only increased by $1,272.00 the amount of passive activity loss Bush could carry forward to 1992. (Dx. 23.)

14. On November 24, 1999, Bush filed an amended return for 1991 seeking a refund of $1,976.00. (Dx. 11.) Bush's 1991 claim asserted that he was entitled to deduct in that year

$1,272.00 in previously- disallowed Cinema 84 losses because of the Cinema 84 income reported in that year, and $14,747.00 in previously-disallowed Summer Lovers losses because of the income reported by that partnership for 1991. (Dx. 11.) The claim also asserted that Bush was entitled to claim $127.00 in previously-disallowed investment tax credits with respect to Cinema 84. (Dx. 11.)

15. The IRS allowed Bush to deduct in the 1991 year, $1,272.00 in previously-disallowed Cinema 84 losses for the 1991 tax year. (Dx. 23.)

16. The IRS disallowed Bush's 1991 claim for a deduction of previously-disallowed Summer Lovers losses because no such losses had been disallowed in prior years. (Dx. 23.) The IRS disallowed Bush's 1991 claim for additional investment tax credits, on the basis that partnership income did not increase the at risk amount for credits. (Dx. 23.)

17. Attached to Bush's original return for 1992 was a Schedule E, "Supplemental Income Schedule." (Dx. 3.) The Schedule E reported net income from partnership activities in the amount of $2.00. (Dx. 3.) Attached to Schedule E is Statement 15 which provides a breakdown of income and loss for each passive activity. (Dx. 3.) Statement 15 reported a loss for Summer Lovers in the amount of $1,448.00, no income or loss for LWM and no income or loss for Cinema 84. (Dx. 3.) Bush did not claim any investment tax credit in that year. (Dx. 3.)

18. On November 24, 1999, Bush filed an amended return for 1992, seeking a refund of $16,199.00. (Dx. 13.) Bush's 1992 claim asserts that he was entitled to deduct in that year a net operating loss carry back from 1995 in the amount of $107,206.00 with respect to LWM, and $87,442.00 with respect to Cinema 84. (Dx. 13.) The claim also asserts that Bush is entitled to

claim in that year $1,022.00 in investment tax credits previously disallowed as a result of the capital contribution reported on the K-1 issued by LWM in 1995. (Dx. 13.)

19. Bush's 1992 refund claim is based solely on the contention that the additional $87,442.00 capital contribution reported on the Cinema 84 K-1 for that year, and the additional $107,206.00 capital contribution reported on the LWM K-1 for that year, increased his at risk amount to that extent, allowing him to deduct previously-disallowed losses pursuant to § 465. (Dx. 13.)

20. The IRS disallowed Bush's 1992 claim because there was no evidence the capital contributions reported on the partnership's 1995 K-1's were *cash* contributions, and, pursuant to the closing agreements only *cash* contributions would increase the at risk amount, allowing the deduction of previously- disallowed losses. (Dx. 7, 8, 25.)

21. Attached to Bush's original return for 1993 was a Schedule E, "Supplemental Income Schedule." (Dx. 4). The Schedule E reports net passive activity income in the amount of $6.00. (Dx. 4.) Attached to Schedule E is Statement 18 which provides a breakdown of income and loss for each passive activity. (Dx. 4.) Statement 18 reports income for Summer Lovers in the amount of $3,284.00, which was offset by a passive loss carryover in the amount of $1,413.00, income for LWM in the amount of $5,626.00, which income was offset by a passive loss carryover in the amount of $75.00, and income for Cinema 84 in the amount of $4,389.00, which income was offset by a carryover of passive losses in the amount of $892.00. (Dx. 4.) Bush did not claim any investment tax credit for the 1993 tax year. (Dx. 4.)

22. Pursuant to the closing agreements executed with regard to the LWM and Cinema 84 partnerships, on July 12, 2000, the IRS notified Bush that the adjustments pursuant to the closing agreements resulted in no change to Bush's 1993 tax liability. (Dx. 26.) Since there was no change to Bush's 1993 tax liability, no Form 4549 notice of adjustment was issued for that year.

23. The IRS work papers related to Bush's 1993 tax year explain why there was no change to Bush's 1993 tax liability. (Dx. 27.) On his original 1993 return, Bush reported passive activity income of only $6.00. (Dx. 4.) Therefore, the passive activity income reported in that year had already been almost totally offset by passive activity losses reported on the original return. (Dx. 4.) Allowing Bush to deduct in 1993, $5,626.00 of the previously-disallowed LWM losses and $4,389.00 of the previously-disallowed Cinema 84 losses, only increased by $4,389.00 the amount of passive activity loss Bush could carry forward to 1994. (Dx. 27.)

24. On November 24, 1999, Bush filed an amended return for 1993, seeking a refund of $11,099,00. (Dx. 12.) This is the claim for refund at issue here. Bush's 1993 claim for refund was filed before the IRS made the adjustments to that year pursuant to the closing agreements. Bush's 1993 claim asserted that he was entitled to deduct in that year $5,626.00 in previously-disallowed LWM losses because of partnership income reported in that year, $4,389.00 in previously-disallowed Cinema 84 losses, and $3,284.00 in previously-disallowed Summer Lovers losses. (Dx. 12.) The claim also asserted that Bush was entitled to claim $563.00 in previously-disallowed investment tax credits with respect to LWM, $310.00 in previously-disallowed Cinema 84 credits, and $328.00 in previously-disallowed Summer Lovers investment tax credits. (Dx. 12.)

25. The IRS allowed Bush to deduct in the 1993 year previously-disallowed LWM and Cinema 84 losses to the extent of each partnerships income in that year. (Dx. 27.) However, because those losses were passive activity losses, allowing those deductions did not change Bush's 1993 tax liability, so there was no overpayment as a result of that adjustment. Bush's 1993 claim does not raise any issue with regard to § 469, or the IRS's adjustments to the passive activity loss or income reported on Bush's 1993 original return. (Dx. 12.)

26. The IRS did not allow the deduction of any additional losses with respect to Summer Lovers since there were no losses previously disallowed. (Dx. 27.) The IRS disallowed Bush's claim for additional investment tax credits, on the basis that partnership income did not increase the at risk amount for credits. (Dx. 25, 27.)

27. Attached to Bush's original return for 1995 was a Schedule E, "Supplemental Income Schedule." (Dx. 5.) The Schedule E reported a net partnership loss in the amount of $1,409.00. (Dx. 5.) Attached to Schedule E is Statement 16 which sets forth the separate items of passive activity income and loss for 1995. (Dx. 5.) Statement 16 reports income for Summer Lovers in the amount of $9,262.00, income for LWM in the amount of $10,219.00, and a loss for Cinema 84 in the amount of $1,416.00. (Dx. 5.) Bush did not claim any investment tax credit in that year. (Dx. 5.)

28. Attached to his 1995 return were forms K-1 for the LWM and Cinema 84 partnerships, which indicate that 1995 was the final year of those partnerships. (Dx. 28, 29.) The 1995 K-1 for LWM reported a capital contribution in the amount of $96,987.00. (Dx. 28.) The 1995 K-1 for Cinema 84 reported a capital contribution in the amount of $87,442.00. (Dx. 29.)

29. Pursuant to the Closing agreements executed with regard to the LWM and Cinema 84 partnerships, on July 12, 2000, the IRS issued a Notice of Adjustment for Bush's 1995 tax year which indicated that Bush owed an additional $406.00 in tax for that year. (Dx. 30.) The additional tax liability was based on the disallowance of the $1,430.00 deduction for Cinema 84 losses reported on the return for that year. (Dx. 30.) The IRS work papers show that because of the passive loss rules in § 469, the allowance of the previously-disallowed LWM losses would not affect Bush's 1995 income tax liability since Bush had already claimed all the passive losses he was entitled to in that year. (Dx. 30.)

30. On November 24, 1999, Bush filed an amended return for 1995, seeking a refund of $9,413.00. (Dx. 14.) This is the claim for refund at issue here. Bush's 1995 claim for refund was filed before the IRS made the adjustments for that year pursuant to the closing agreements. Bush's 1995 claim asserted that he was entitled to deduct in that year $57,848.00 in previously-disallowed Cinema 84 losses because of the additional capital contribution reported on the 1995 K-1 for that partnership. (Dx. 14.) Bush's 1995 claim also asserted he was entitled to deduct in that year $93,049.00 in previously-disallowed LWM losses, and $1,022.00 in previously-disallowed investment tax credits related to that partnership, because of the capital contribution reported on the 1995 K-1 for that partnership. (Dx. 14.)

31. The IRS disallowed Bush's 1995 claim for refund because paragraph 7 of the Cinema 84 and LWM closing agreements specify that only a *cash* contribution to the partnerships would increase Bush's at risk amount. (Dx. 25.)

32. The IRS disallowed Bush's 1995 claim based on additional investment tax credits because a capital contribution does not increase the at risk amount for investment tax credits,

unless the contribution is used to pay the principal on non-recourse partnership debt, a fact not alleged in the claim. (Dx. 25.)

34. On August 18, 1994, Bush and the IRS executed a closing agreement to finally determine all items related to the Summer Lovers partnership. (Dx. 6.) On August 7, 1999, Bush and the IRS executed a closing agreement "to determine, with finality, the taxpayers' [Shelton] income, gains, losses, deductions and credits" with respect to the LWM and Cinema 84 partnerships. (Dx. 7, 8.)

35. The first year of the Summer Lovers partnership was 1982. The first year of the LWM partnership was 1983, and the first year of the Cinema 84 partnership was 1984. (Dx. 6-8.)

Respectfully submitted,

s/Benjamin C. King, Jr.

BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/Mary M. Abate

June 13, 2008 Of Counsel