IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1041, consolidated with,
No. 04-1598 T

(Judge George M. Miller)

LYMAN F. BUSH, et al.,
Plaintiffs
v.

UNITED STATES,
Defendant

**PLAINTIFFS' RESPONSE TO THE UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Although Plaintiffs have filed Plaintiffs' Motion for Partial Summary Judgment in Favor of the United States conceding the remaining claims in this case that are the subject of this response, out of an abundance of caution and because the Government has opposed Plaintiffs' Motion for Partial Summary Judgment in Favor of the United States, Plaintiffs file this response to the United States' Cross-Motion for Partial Summary Judgment.

With regard to claimed refunds arising from an increase in the amount at risk due to a 1995 capital contribution reflected on each of the partner's Schedule K-1s from each of their relevant partnerships, Plaintiffs have agreed to accept the Government's restrictive reading of Paragraph 7 of the Closing Agreements that provides that the amount at risk will be increased for the amount of any cash capital contribution. It was Plaintiffs' position that although the source and reason for the reported capital contribution is unknown to the Plaintiffs, because the Closing Agreements provided that there shall be no change to partnership items through 1995, and because capital contributions are, in fact, partnership items, the taxpayers were entitled to rely on the reported capital

contributions to increase their amount at risk. The Government's response has been that because the paragraph addressing that restricts the increase in amount at risk to capital contributions that are in fact "cash," that the nature of the capital contribution would have to be proven and that the nature of the capital contribution is not in and of itself a partnership item for which there has been any determination. Plaintiffs, on review of the Government's position, have agreed to concede that point to the Government and do not further seek refunds based on an increase in the amount at risk resulting from the 1995 reported capital contributions. It is a reasonable interpretation of the Closing Agreement contract that the word "cash" included in that paragraph is meaningful and does, in fact, limit the nature of the capital contributions for which credit would be given. Therefore, Plaintiffs do concede the claims to the extent based on an increase in the amount at risk arising out of the 1995 reported capital contributions.

With regard to the Bush refund claims, to the extent they are based on increases in the amount at risk relative to subsequent reported income from Summer Lovers Associates, Plaintiffs, upon review of facts brought to Plaintiffs' attention by the Government, acknowledge that because no assessments of liability were made related to Summer Lovers adjustments other than in the 1982 source year, that they would not be entitled to claim deferred losses in the subsequent years as income was reported. Plaintiffs agree with that position and acknowledge that the Bush claims to the extent based on the Summer Lovers reported income in subsequent years were in error based upon an erroneous understanding of the unique facts in his particular case regarding Summer Lovers Associates.

Just as the Plaintiffs believe that the terms restricting an increase in the amount at risk due to "cash" contributions should be respected and given meaning as written in the Closing Agreement, Plaintiffs argue that similarly the last two sentences of Paragraph 6 of each Closing Agreement

specifically provide that:

> Any losses disallowed under this agreement are suspended under I.R.C. §465. Such suspended losses may be used to offset the taxpayers' pro rata share of any income earned by the partnership and/or other income in accordance with the operation of I.R.C. §465.

That paragraph literally states that the suspended losses may be used to offset "**any** income earned by the partnership and/or other income" and should be given its literal meaning. [Dx. 7,8] Emphasis added. Therefore, the deduction for the loss should not be restricted to being taken only against passive income. Those were specific terms in the Closing Agreement and the term "any" modifies "other income" and should be given its clear unrestricted meaning. The terms of the Closing Agreement were drafted by the Government and if there is a question then under general contract principals they should be interpreted favorably to the taxpayer. *P.R. Burke Corp. v. United States,* 277 F.3d 1346, 1355-56 (Fed.Cir.2002). Closing Agreements are interpreted under contract law. *Marathon Oil Co. v. United States*, 42 Fed.Cl. 267, 274 and n.7 (1998).

With regard to the portion of each claim based on previously disallowed investment tax credits, Plaintiffs disagree with part of the Government's argument regarding the technical computation of the increase in the amounts at risk. However, as discussed above with regard to the appropriate interpretation of the Closing Agreements under general contract principals, Plaintiffs are persuaded by the Government's following argument set forth in its brief:

> The closing agreements provided that, pursuant to §465, the amount Bush was at risk with respect to partnership losses was increased to the extent the partnerships reported income or to the extent Bush made cash contributions to the partnerships. In that event, pursuant to §465, Bush could deduct losses previously disallowed to the extent of the partnership income or the cash contribution in the subsequent year. There is no provision in the closing agreements regarding increases in the at risk amount with regard to investment tax credits. (Dx. 6-8.)

Memorandum in Support of Defendant's Cross-Motion for Partial Summary Judgment, p. 4.

> Since the closing agreements make no allowance for any increase in the at risk amount with respect to investment tax credits, and those agreements state that they "finally determine" all items related to the partnerships in the years in issue, those agreements preclude Bush's claims based on additional investment tax credits in the years in issue. (Dx. 7, 8.)

*Id*. p.5.

Therefore, Plaintiffs concede the refund claims to the extent based on investment tax credits and do not respond to the Government's other argument regarding the investment tax credits, as they are now moot.

**PRAYER**

Plaintiffs ask that if this Court does not grant Plaintiffs' Motion for Partial Summary Judgment in Favor of the United States that it grant the Defendant's Cross-Motion for Partial Summary Judgment in part and deny it in part in accordance with this response denying Plaintiffs' claims to the extent based on the claimed investment tax credits, and increases in amounts at risk due to income of Bush from Summer Lovers or the 1995 reported capital contributions and finding that the passive loss restrictions on deductions resulting from the increases in amounts at risk due to subsequently reported income from the partnerships are not subject to the passive loss rules based on the specific provisions of the Closing Agreements. Plaintiffs further request that the Court issue an order granting the parties 60 days in which to submit a report reflecting the amounts of any refunds due based solely on the deductions arising from the subsequently reported income increases in the amount at risk, without regard to the passive loss restrictions argued by the Government.

Respectfully submitted,

July 17, 2008
Date

s/Thomas E. Redding

THOMAS E. REDDING
Redding & Associates, P.C.
2914 West T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (facsimile)
Attorney for Plaintiffs