IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1041 T, consolidated with
No. 04-1598 T

(Judge George W. Miller)

---

LYMAN F. BUSH, et al.,

Plaintiffs

v.

UNITED STATES,

Defendant

---

DEFENDANT'S REPLY BRIEF

---

INTRODUCTION

Plaintiffs have agreed that the only issue remaining for the Court to resolve in this case, and in the other related cases, is the question of whether the plaintiffs are entitled to any refund based on the deduction in 1988, 1990, 1991, and 1993, of losses reported by the Lone Wolf McQuade (hereinafter, "LWM") and Cinema 84 partnerships, which losses had been previously disallowed by operation of 26 U.S.C. § 465. In 1988, 1990, 1991, and 1993, the IRS allowed plaintiffs a deduction of suspended LWM and Cinema 84 losses to offset the income reported by those partnership in each of those years, pursuant to the closing agreement and § 465. As a result, plaintiffs received a refund of $774.00 for 1988, and there was no change to plaintiffs' tax

liability for 1990, 1991, and 1993. (D. Findings 2, 5, 6, 8, 13, 15, 21, 23, 25.)[1] The refund allowed by the IRS in 1988 was less than the amount sought in plaintiffs' claim for refund for that year, and plaintiffs were not entitled to any refund for 1990, 1991, and 1993, because of the limitation in 26 U.S.C. § 469 on the deduction of passive activity losses. Plaintiffs reported LWM and Cinema 84 as passive activities on their returns for each the years in issue. Therefore, any losses related to those partnerships were passive activity losses subject to § 469. (D. Findings 8, 10, 12, 14, 16, 18.)

Plaintiffs do not dispute the accuracy of the IRS computation of the § 469 limitation. Rather, plaintiffs contend that paragraph 6 in the closing agreements executed by plaintiffs and the IRS related to the LWM and Cinema 84 partnerships, preclude the application of § 469 in this case. (P. Response at 3.) There is no reference in that paragraph, or anywhere else in the closing agreements, to § 469. (Dx. 7, 8.) By its express terms, paragraph 6 of the closing agreements relates only to "the operation of I.R.C. § 465." (Dx. 7, 8; D Finding 34.) A closing agreement will preclude the application of a provision of the Internal Revenue Code only if there is a "specific waiver" to that effect in the agreement. *Spendthrift Farm, Inc. v. United States*, 931 F.2d 405, 407 (6th Cir. 1991). In this case there is clearly no "specific waiver" of the provisions of § 469 in the closing agreements. (Dx. 7, 8.) Therefore, plaintiffs have already received the full amount of refund they are entitled to for 1988, and are not entitled to any refund for 1990, 1991, and 1993. The Court should dismiss their claims for those years with prejudice.

---

[1]Plaintiffs have not objected to any of the defendant's proposed findings of uncontroverted fact filed on June 13, 2008. Therefore, pursuant to RCFC 56(h)(2), the matters set forth in the defendant's proposed findings are admitted by plaintiffs.

LEGAL ARGUMENT

Section 465 limits the deduction of partnership losses to the amount the taxpayer is at risk with respect to the partnership activity. In this case the parties entered into closing agreements specifying the amount that plaintiffs was at risk with respect to the LWM and Cinema 84 partnerships. (Dx. 7, 8.) All LWM and Cinema 84 partnership losses in excess of that amount were disallowed pursuant to § 465. Paragraph 6 of the LWM and Cinema 84 closing agreements provide (emphasis added):

> Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used to offset the taxpayers' pro rata share of any income earned by the partnership and/or other income *in accordance with the operation of I.R.C. § 465*.

In 1988, 1990, 1991 and 1993, either the Cinema 84 or LWM partnerships reported income. Pursuant to paragraph 6 of the closing agreements, in each of those years, the IRS allowed plaintiffs a deduction of suspended partnership losses to offset plaintiffs' pro rata share of the income earned by the partnerships in those years. (D. Findings 2, 4, 8, 12, 13, 15, 21, 23, 25.) In each of the years in issue plaintiffs reported the LWM and Cinema 84 partnerships as passive activities. (D. Findings 1, 5, 12, 21.) Therefore, the suspended partnership losses are passive activity losses subject to the limitation in § 469.

Section 469 limits the deduction of passive activity losses to passive activity income. "The passive activity loss rules were designed to limit a taxpayer's ability to use deductions from one activity to offset income from another activity. In particular, under the section 469 passive activity loss rules, income generated from nonpassive activities cannot be offset by deductions generated form passive activities." *Hillman v. Commissioner*, 118 T.C. 323, 326 (2002). In accordance with § 469, in each of the years in issue, the IRS allowed the suspended LWM and

Cinema 84 losses to offset the income reported by the partnerships, which would have been passive activity income. (D. Findings 2, 4, 8, 12, 15, 21, 23.)

The provisions of §§ 465 and 469 are to be applied separately. The limitation on the deduction of passive activity losses in § 469 is applied after the at-risk limitation in § 465. Therefore, losses disallowed under § 465 are not subject to the passive loss rules in § 469. However, the deduction in a later year of losses suspended under § 465, is subject to the limitation in § 469. Treas. Reg. 1.469-2T(d)(6)(i) and (iii). The legislative history related to § 469 leaves no doubt that Congress intended that the limitation in § 469 on the deduction of passive activity losses applied to losses suspended pursuant to § 465. Senate Report No. 99-313, Tax Reform Act of 1986, P.L. 99-514, reprinted in 1986-3 C.B. 1, 723, states (emphasis supplied):

> The determination of whether a loss is suspended under the passive loss rules is made after the application of the at-risk rules, and the interest deduction limitation, as well as other provisions relating to the measurement of taxable income. A loss that would not be allowed for the year because the taxpayer is not at risk with respect to it is suspended under the at-risk provision, not the passive loss rule. Similarly, if an interest deduction is disallowed under the interest deduction limitation, it is not disallowed again under the passive loss rules. *Such amounts may become subject to the passive loss rule in subsequent years when they would be allowable under the at-risk or interest limitations*.

Plaintiffs argue that paragraph 6 of the closing agreements at issue here, quoted above, waive the application of the limitation in § 469. (P. Response at 3.) Paragraph 6 specifies that suspended losses are to "be used to offset the taxpayer's pro rata share of any income earned by the partnership." (Dx. 7, 8.) It is not disputed that in each of the years in issue the IRS used the suspended losses to offset plaintiffs' pro rate share of the Cinema 84 income. (D. Findings 2, 4, 8, 12, 15, 21, 23.) Plaintiffs point to the phrase "and/or other income" in paragraph 6 of the

closing agreements as support for his contention that the passive loss rules in § 469 were specifically waived by the closing agreement.

Plaintiffs' argument is without merit. There is nothing in paragraph 6 to specify which item of income is to be offset first, which means that either can be used. Therefore, the terms of that provision were satisfied when the IRS used the suspended losses to offset plaintiffs' pro rata share of partnership income. More significantly, plaintiffs would have the Court disregard the language that comes immediately after the phrase "and/or other income." The closing agreements state, "and/or other income *in accordance with the operation of I.R.C. § 465*." Paragraph 6, by its express language, only applies to the operation of § 465. Since the limitation in § 465 is applied separately from the limitation in § 469, paragraph 6 clearly does not relate to the provisions of § 469.

In order for a closing agreement to cut off the operation of a provision of the Internal Revenue Code, "there must be a specific waiver in the closing agreement." *Spendthrift Farm. See also*, *Marathon Oil Co. v. United States*, 42 Fed.Cl. 267, 275 (1998); *Smith v. United States*, 850 F.2d. 242, 245 (5th Cir. 1988). The language in the closing agreement waiving the operation of a particular Code section must be clear and specific. *Magarian v. Commissioner*, 97 T.C. 1. 7 (1991); *Zaentz v. Commissioner*, 90 T.C. 753, 766 (1988); *Spendthrift Farm*. In light of the specific reference in paragraph 6 to § 465, defendant submits that the paragraph applies only to that section, and clearly does not constitute a "specific waiver" of the provisions of § 469. Therefore, § 469 applies to limit the deduction of the suspended losses in this case, and plaintiffs are not entitled to any additional refund for any of the years in issue.

CONCLUSION

For the reasons set forth above, and in the defendant's memorandum in support of its cross-motion for summary judgment and its memorandum in opposition to plaintiffs' cross-motion, defendant submits that the Court should dismiss plaintiffs' claims for refund for 1988, 1990, 1991, and 1993, based on the deduction of suspended Cinema 84 losses, with prejudice.

Respectfully submitted,

s/Benjamin C. King, Jr.

BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/Mary M. Abate
Of Counsel

August 15, 2008